BEFORE THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE BENJ. FRANKLIN<br>SHAREHOLDERS LITIGATION FUND,<br>BY ITS SOLE TRUSTEE, DON S. WILLNER<br>621 S.W. MORRISON ST. – SUITE 1415<br>PORTLAND, OREGON 97205<br><br>                Plaintiff,<br><br>        v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION<br>AS RECEIVER FOR THE BENJ. FRANKLIN<br>FS&LA, PORTLAND, OREGON<br>550 17TH STREET, N.W.<br>WASHINGTON, DC 20429<br><br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

The Benj. Franklin Shareholders Litigation Fund ("BFS Lit. Fund"), acting by and through its sole trustee Don S. Willner, hereby brings suit against the Federal Deposit Insurance Corporation in its capacity as the Receiver for The Benj. Franklin Federal Savings & Loan Association, Portland, Oregon (hereafter "FDIC-Receiver"). Plaintiff, by its attorneys, alleges the following for its complaint:

### The Nature of this Case

1.      This suit is brought pursuant to 12 U.S.C. § 1821(d)(6)(A), which expressly authorizes this Court (or the U.S. District Court where the financial institution's principal place of business was located) to hear the complaint of any entity or person who has filed a monetary "claim" with an FDIC receivership but whose claim has been disallowed.

2.      The BFS Lit. Fund filed a claim with the FDIC-Receiver in 2005, seeking a return of the principal amount of approximately $3 million contributed to the BFS Lit. Fund by thousands of shareholders of Benj. Franklin FS&LA. The claim also sought interest on the same amount, calculated from the dates that the monies were contributed to the BFS Lit. Fund by those many shareholders. A copy of the BFS Lit. Fund's original claim is attached as Exhibit A.

3.      In two letters sent by BFS Lit. Fund's counsel to the FDIC on June 22, 2005 and January 4, 2006, the plaintiff supplemented the arguments contained in its original claim about why interest should be paid on the $3 million. Copies of these two letters are attached as Exhibit B.

4.      The BFS Lit. Fund trustee also responded to requests by the FDIC-Receiver for additional information and updated documentation relative to the BFS Lit. Fund's claim, and the trustee timely provided such information to the FDIC-Receiver.

5.      The FDIC-Receiver officially acknowledged the BFS Lit. Fund claim and considered it "filed on November 18, 2005," as stated in the FDIC-Receiver's letter dated February 22, 2006. A copy of this letter is attached as Exhibit C.

6.      By letter dated May 24, 2006, the FDIC-Receiver granted the BFS Lit. Fund's claim for the total principal amount of money ($3,067,159.77) contributed to the Fund by shareholders of Benj. Franklin FS&LA as of that date. A copy of this FDIC letter is attached as Exhibit D.

7.      On May 31, 2006, the BFS Lit. Fund trustee received $3,067,159.77 from the FDIC-Receiver pursuant to the Exhibit D approval of that claim. The BFS Lit. Fund trustee is now in the process of distributing that money back to the shareholders who contributed it to the fund.

8.      By letter dated May 11, 2006, however, the FDIC-Receiver denied the claim of the BFS Lit. Fund for interest on the $3 million principal amount.  A copy of this letter is attached as Exhibit E.  This suit requests that the Court review *de novo* the plaintiff's claim for interest and order the FDIC to calculate and pay it without further delay.  Plaintiff believes the amount of interest will total between $1.5 million and $3 million.

## Jurisdiction and Venue

9.      This action arises under the laws of the United States including 12 U.S.C. § 1821(d)(6) which is part of the Federal Deposit Insurance Act, as amended.  The legislative history of this section confirms that the plaintiff is entitled to a *de novo* review of its claim by the Court rather than a simple review of FDIC's prior disallowance of the claim.  *See* H.R. Rep. No. 54, 101st Cong., 1st Sess., pt. 1 at 418-419, *reprinted in* U.S.C.C.A.N. 86, at 214-215.

10.     Venue is proper in this Court under 12 U.S.C. § 1821(d)(6).

## The Parties

11.     The plaintiff BFS Lit. Fund is a trust established in the state of Oregon.  The sole trustee of the BFS Lit. Fund is Don S. Willner, an attorney who practices law in Portland, Oregon, and in Trout Lake, Washington.

12.     The BFS Lit. Fund was created in 1990 shortly after the Benj. Franklin FS&LA was placed in federal receivership with the FDIC's predecessor in interest, the Resolution Trust Corporation ("RTC").  The BFS Lit. Fund collected contributions made by the shareholders of Benj. Franklin FS&LA to fund litigation on behalf of Benj. Franklin FS&LA and its shareholders.

13.     Approximately 4,200 shareholders of Benj. Franklin FS&LA contributed money to the BFS Lit. Fund starting in1990.  By December 2004, a little more than $3 million had been

contributed to the Fund. *See* the Exhibit A claim at p. 1 and the Affidavit of Jerry Young

(attached to the Exhibit A claim form) at Paragraph 7. All of this money was used to fund

litigation on behalf of the Benj. Franklin FS&LA and its shareholders. *See* the Affidavit of Don

S. Willner (also attached to the Exhibit A claim form), explaining the extensive litigation history

since 1990.

14.     The defendant FDIC is an independent agency of the U.S. Government, which

assumed responsibility for the receivership of Benj. Franklin FS&LA at the end of 1995 when its

predecessor RTC ceased to exist. *See* 12 U.S.C. § 1441a(m)(1).

### Additional Pertinent Facts

15.     After the RTC and FDIC had supervised the Benj. Franklin FS&LA receivership

from 1990 to early 2006, the FDIC advised this Court in a related proceeding that the

receivership surplus was approximately $94 million. *See* FDIC's Unopposed Motion for a

Fairness Hearing filed on February 3, 2006, in *United States v. FDIC*, No. 02-1427 (EGS), p. 5.

16.     On May 2, 2006, this Court approved the settlement of an alleged tax liability of

the Benj. Franklin FS&LA receivership for a payment of $50 million to the IRS. The FDIC-

Receiver subsequently paid that amount to the IRS, leaving approximately $44 million surplus in

the Benj. Franklin receivership.

17.     Under the FDIC receivership priority system that is applicable to the Benj.

Franklin FS&LA receivership, the common shareholders of a financial institution in receivership

are entitled to receive a distribution of the receivership surplus only after all creditors of the

institution and/or the receivership have been paid. *See* 12 C.F.R. § 360.3 (setting out the order in

which unsecured claims against a receivership will be paid if surplus funds exist to do so).

18.    The surplus in the Benj. Franklin FS&LA receivership is sufficient to pay the BFS Lit. Fund's claim for interest as well as all other claims pending against the receivership and still have a corpus of more than $35 million for distribution to the shareholders of Benj. Franklin FS&LA.

### The Amount of Interest Claimed

19.    Based on informal discussions between counsel to the BFS Lit. Fund and FDIC staff, the plaintiff initially understood that interest would be calculated and paid – if it was approved by the FDIC-Receiver – at the same rate that FDIC was earning on its nationwide receivership activities (*i.e.*, at FDIC's reported liquidation rates of return) on a monthly basis. Plaintiff further understood that FDIC would share these historical liquidation rates of return with the claimant BFS Lit. Fund.  Accordingly, on p. 4 of the BFS Lit. Fund's original claim form (Exhibit A), the plaintiff stated that it would calculate the interest due to each shareholder claimant using the liquidation rates of return provided by the FDIC.

20.    Subsequent research and discussions between counsel to the BFS Lit. Fund and FDIC staff disclosed that FDIC should instead calculate and pay interest on the BFS Lit. Fund principal at the same rates paid on 90-day U.S. Treasury bills (as adjusted monthly), which rates had been authorized and used by one of FDIC's predecessor agencies when paying interest to receivership claimants. *See* p. 4 of the plaintiff's Exhibit B letter dated July 22, 2005.  The FDIC pays a similar rate of interest on post-insolvency interest paid to creditors with proven claims in FDIC receiverships established after 2002. *See* 12 C.F.R. § 360.7 (this regulation does not apply to the Benj. Franklin FS&LA receivership established in 1990).

21.    The FDIC has not disagreed that interest should be calculated under the method described in the preceding Paragraph 20 for interest due to receivership claimants.  Instead, the

FDIC now disagrees that any interest is due to the BFS Lit. Fund under applicable regulations. *See* Exhibit E containing FDIC's two-sentence explanation for its denial of interest.

### First Cause of Action
### Against FDIC-Receiver

22.    Plaintiff repeats and realleges the statements made above in Paragraphs 1-21 as if fully set forth herein.

23.    The FDIC-Receiver is obliged to pay all valid claims presented to it if sufficient funds exist in the receivership to do so.  The FDIC-Receiver has wrongfully declined to pay the plaintiff's claim for interest.

24.    The FDIC-Receiver based its denial of interest on a technical and strained interpretation of FDIC's receivership regulation, which interpretation is not mandated by the regulation or by statute or public policy.

### Second Cause of Action
### Against FDIC-Receiver

25.    Plaintiff repeats and realleges the statements made above in Paragraphs 1 through 24 as if fully set forth herein.

26.    As a matter of equity, the FDIC-Receiver's denial of interest to the contributing shareholders is unfair and inequitable because:

a.    It results in preferential treatment to the shareholders who did not fund the litigation on behalf of Benj. Franklin FS&LA and its shareholders because the amount of unpaid interest will be added to the receivership surplus to be distributed *pro rata* to all shareholders of Benj. Franklin (including those who made no contributions to the Lit. Fund);

b. It penalizes all shareholders who contributed to the Lit. Fund by denying them the benefit of their contributed funds and particularly penalizes those who contributed in earlier years because they have not had the benefit of their contributed funds for a much longer period of time; and

c. It fails to recognize that FDIC's reimbursing the approximately $3 million of payments made by shareholders to the Lit. Fund cannot constitute or achieve a true "reimbursement" to such individuals without also including interest on their funds contributed between 1990 and 2006.

### Requests for Relief

Based on the above described facts and charges, the BFS Lit. Fund hereby requests that judgment be entered against the defendant as follows:

(a)    Ordering the FDIC to calculate the interest on the $3,067,159.77 principal amount contributed by Benj. Franklin shareholders and to pay that amount to the BFS Lit. Fund for distribution to the contributing shareholders;

(b)    Directing that such interest be calculated by the FDIC using rates (adjusted monthly) that reflect the average rate for U.S. Treasury bills with maturities of not more than 91 days during the preceding three months, and calculated from the date of each shareholder's contribution to the date the total amounts of interest are paid by the FDIC-Receiver;

(c)    Awarding attorneys' fees, costs, and expenses related to the Lit. Fund's preparation and filing of its claim with the FDIC-Receiver as well as the attorneys' fees, costs, and expenses related to bringing and maintaining this case; and

(d)    Awarding the estimated expenses that will be required for the BFS Lit. Fund

trustee to distribute the awarded interest to the individual shareholder contributors.

Dated: June 2 , 2006                                    Respectfully submitted,


*Rosemary Stewart*

Rosemary Stewart
Spriggs & Hollingsworth
1350 I Street, N.W.
Washington, DC  20005
(202) 898-5888 (Phone)
(202) 682-1639 (Facsimile)

Counsel to the Benj. Franklin
Shareholders Litigation Fund

399813v1

BEFORE THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE BENJ. FRANKLIN<br>SHAREHOLDERS LITIGATION FUND,<br>BY ITS SOLE TRUSTEE, DON S. WILLNER<br>621 S.W. MORRISON ST. – SUITE 1414<br>PORTLAND, OREGON  97205<br><br>        Plaintiff,<br><br>      v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION<br>AS RECEIVER FOR THE BENJ. FRANKLIN<br>FS&LA, PORTLAND, OREGON<br>550 17TH STREET, N.W.<br>WASHINGTON, DC  20429<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **VERIFICATION**

My name is Don S. Willner and I am the sole trustee of the Benj. Franklin Shareholders Litigation Fund.  I am also an attorney licensed to practice in the states of Oregon and Washington, and I am a member in good standing of the bar of this Court as well as numerous other courts around the country.

I have reviewed the attached complaint filed this same day by the Benj. Franklin Shareholders Litigation Fund and I hereby verify that the factual statements contained therein are correct to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on June 1, 2006.

Don S. Willner
DON S. WILLNER & ASSOCIATES P.C.
621 S.W. Morrison Street
Portland, OR 97205
(503) 228-4000 (Phone)
(503) 273-8842 (Facsimile)

400128v1

2

# EXHIBIT A

**Federal Deposit Insurance Corporation as Receiver for:**
**Benj. Franklin Federal Savings & Loan Association**
**Portland, Oregon**

---

(Name of Bank/Financial Institution and Location)

## PROOF OF CLAIM

SSN/Tax ID # (1)  __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__

The undersigned, (2)  _____Don S. Willner, as Trustee_____
(Name of person making the claim)

says that the  _____Benj. Franklin Fed. Sav. & Loan Ass'n_____  now in liquidation is
(Name of Bank/Financial Institution)

justly indebted to (3)  _____The Benj. Franklin Shareholders Litigation Fund_____  in the sum of

(4)  __$3,026,919 of contributions (principal amounts) made by Benj. Franklin shareholders and___

$_____  of interest on those contributed amounts, based on the following Claim:

**SEE ADDITIONAL PAGE(S) FOR LISTING AND EXPLANATION OF CLAIMS.**

The undersigned further states that he/she makes this claim on behalf of

(7)  _____The Benj. Franklin Shareholders Litigation Fund_____

that no part of said debt has been paid, that

(8)  ____The Benj. Franklin Shareholders Litigation Fund and/or its Trustee Don S. Willner____
(Individual/Joint/Corporation/Partnership/Firm/Agency)

has given no endorsement or assignment of the same or any part thereof, and that there is no set-off or

counterclaim, or other legal or equitable defense to said claim or any part thereof.

NAME (9)_____  ____Trustee____
(Signature of Person Making Claim)          (Title)

FIRM_____Don S. Willner & Associates, P.C._____

ADDRESS (10)_____621 S.W. Morrison St. – Suite 1414_____

CITY/STATE/ZIP_____Portland, Oregon  97205_____

TELEPHONE NUMBER____(503) 228-4000 (Portland)_____

_____(509) 395-2000 (Wash. State)_____

The penalty for knowingly making or inviting reliance of any false, forged, or counterfeit statement, document, or thing for the purpose of influencing in any way the action of the Federal Deposit Insurance Corporation is a fine of not more than $1,000,000 or imprisonment for not more than thirty years, or both (18 U.S.C. Section 1007).



**Federal Deposit Insurance Corporation as Receiver for:**
**Benj. Franklin Federal Savings & Loan Association**
**Portland, Oregon**

### PROOF OF CLAIM EXPLANATION

This claim is being filed by the Benj. Franklin Shareholders Litigation Fund (hereafter "Lit. Fund") for which Don S. Willner is the sole trustee. The claim seeks reimbursement from the Benj. Franklin receivership estate for the total amount of all shareholder contributions made to the Lit. Fund between 1990 and the date this claim is paid as well as interest on the same amount calculated from the date of each shareholder's contribution to the date that the Lit. Fund's claim is paid.

**The Benj. Franklin Shareholders Litigation Fund**

The Lit. Fund was created in 1990 to collect and maintain funds for legal fees and expenses (and related expenditures) necessary to pursue claims brought on behalf of Benj. Franklin FS&LA and its shareholders in the U.S. Court of Federal Claims ("CFC"). In 1995, the CFC confirmed the standing of the named shareholder plaintiffs to pursue a derivative action on behalf of Benj. Franklin FS&LA. *Suess v. United States*, 33 Fed. Cl. 89 (1995). This meant that any damages awarded in the case would be paid to the Benj. Franklin receivership with the effect of increasing its assets. Because the Benj. Franklin receivership was determined by the FDIC to have a surplus (rather than a deficit), it was understood that any such damages awarded by the CFC would increase the receivership surplus on a dollar-for-dollar basis.

Over the years, the Lit. Fund also was used to fund other litigation that sought to preserve and protect the assets in the Benj. Franklin receivership estate, including an injunctive action in the U.S. District Court in Portland, Oregon, and a shareholders' motion to intervene in the federal income tax collection lawsuit brought in 2002 by the U.S. Department of Justice (Tax Division) against the FDIC-Receiver in the U.S. District Court for the District of Columbia. That suit alleged that the Benj. Franklin receivership owed federal income taxes in an amount that far exceeded the reported surplus in the receivership estate.

**The Claims Bar Date and Priority of Claims**

Although the subject receivership was instituted in 1990 and its "claims bar date" for most claims would therefore have expired some years ago, this claim by the Lit. Fund qualifies for an exception from the typical claims bar date. This is because the Lit. Fund did not perform services for Benj. Franklin FS&LA prior to its receivership in 1990, but rather has funded legal services that inured to the benefit of the Benj. Franklin receivership from 1990 to the present. The Lit. Fund was created as a trust and the balance of deposits made to the Lit. Fund has risen and fallen many times over the last 15 years, with all of its funds being used to fund the litigation described above.

Based on a comprehensive settlement that is now being considered between the Department of Justice (Tax Division) and the Internal Revenue Service (on the one hand) and the FDIC as Receiver of Benj. Franklin and representatives of the Benj. Franklin shareholders (on the other hand), it appears that the Lit. Fund's work regarding the tax-related litigation may soon be concluded. If the proposed tax settlement is approved by the parties and by the U.S. District Court (D.C.), this tax payment will be made by the Receiver, after which a partial distribution of the receivership surplus can finally be made by the FDIC-as-Receiver to the Benj. Franklin shareholders. Because shareholders are at the lowest level of "priority" under FDIC's receivership distribution system, it is appropriate that this reimbursement to the Lit. Fund be made before the distribution to shareholders.

**Supporting Documentation**

An affidavit from the Lit. Fund's sole trustee, Don S. Willner, is attached as Exhibit A. Mr. Willner's affidavit provides more detail about the Lit. Fund and about the litigation that he and his colleagues have handled on behalf of Benj. Franklin and its shareholders, which was funded in large part by the Lit. Fund.

Exhibit B is an affidavit prepared by Jerry J. Young, a CPA from Portland, Oregon, who has maintained the books about and for the Lit. Fund. Mr. Young's affidavit explains how many Benj. Franklin shareholders have contributed to the Lit. Fund and the total principle amount of their contributions. (These figures will be updated at the time that this claim is ready for final approval and payment.) Mr. Young also will provide the calculations of the amount of interest each such contributor

should receive upon approval of this claim after FDIC approves the rates and procedure to be used in calculating such interest due to each contributing shareholder.

**<u>Interest Payments</u>**

The Lit. Fund seeks interest on the amount of each contributor's cash payments made to the Lit. Fund calculated from the date of each such contribution (*i.e.*, calculated from the first day of the next month beginning after the date of each contribution), and based on an interest rate that is the same as FDIC's reported liquidation rates of return, as reported on a monthly basis from 1990 through the date of payment of this claim. These rates of return have been provided to the claimant by the FDIC and will be used to calculate the interest due to each shareholder contributor.

Exhibit A to the Lit.
Fund's Claim Form

**AFFIDAVIT OF
DON S. WILLNER, TRUSTEE
THE BENJ. FRANKLIN SHAREHOLDERS
LITIGATION FUND**

1.      My name is Don S. Willner.  I am an attorney licensed to practice law in the State

of Oregon.  My office address is Don S. Willner & Associates, P.C., 621 S.W. Morrison Street,

Suite 1414, Portland, Oregon  97205.  I am over the age of 21 years and am competent to make

the statements in this Affidavit.

<u>Background Facts</u>

2.      On February 21, 1990, Benj. Franklin Federal Savings and Loan Association

("Benj. Franklin") was seized by the government and placed first in conservatorship and then in

receivership under the Resolution Trust Corporation ("RTC").  Later the Federal Deposit

Insurance Corporation ("FDIC") replaced the RTC as Receiver and has served in this capacity to

the present.

3.      In 1990, I was retained by several shareholder plaintiffs to file a suit on behalf of

the approximately 6,500 shareholders of Benj. Franklin.  The suit was filed on September 14,

1990, and alleged claims for derivative, class action and/or direct claims in what is now the

United States Court of Federal Claims ("CFC").  I was and remain the sole attorney of record for

that case in the CFC.  The suit alleged, *inter alia*, that the government's enactment of FIRREA in

1989 had breached earlier contracts made with Benj. Franklin, which promised that goodwill

would count as regulatory capital on the books of the institution.

4.      In 1995, then CFC Chief Judge Smith ruled that the shareholder plaintiffs had standing to bring the claim as derivative plaintiffs on behalf of Benj. Franklin. 33 Fed. Cl. 89, 92-94 (1995). In a 1997 decision, Judge Smith rejected a series of government defenses raised in our case (and three other selected *Winstar*-related cases; *see CalFed v. United States*, 39 Fed. Cl. 753 (1997)). In 1998, summary judgment on contract liability was granted in favor of the Benj. Franklin derivative plaintiffs. The damages case was tried in 1999; and judgment was granted for approximately $35 million of damages in 2002, although the case has been subject to a "hold" since that time. The FDIC became a co-plaintiff in the CFC case on my motion in 1999 (shortly after trial had commenced) based upon the agreement, a copy of which is Attachment 1 to this Affidavit. The attorneys for the shareholder plaintiffs had the laboring oar in the litigation, and FDIC counsel assisted and supported our presentation of damages claims at trial.

5.      In the damages decision by the CFC, the Court specifically concluded that "the breaching provisions of FIRREA were the 'substantial factor' leading to the demise of [Benj.] Franklin. . . ." 52 Fed. Cl. 221, 231 (2002). The Court also found "that the breach rendered [Benj.] Franklin massively insolvent and in immediate distress, which would not have been the case had the goodwill been recognized." *Id.* at 230.

6.      Throughout the time of pretrial discovery and the time of the damages trial before the CFC, the FDIC reported that the Benj. Franklin receivership had a surplus (rather than a deficit) in its financial condition and financial reports. This surplus was reported to be approximately $73 million at the end of 1988, approximately $88 million at the end of 2001, and approximately $91 million at the mid-year 2004.

7.      Based on the surplus and income in the Benj. Franklin receivership, it was recognized that some federal taxes would be owed by the receivership. However, the

2

shareholders and their counsel and consultants believed such taxes were insignificant in amount. In contrast, we learned that the IRS claimed that taxes were owed in an amount that far exceeded the entire surplus in the Benj. Franklin receivership, even including the $35 million damage award made by the CFC.

8.     In early 2002, FDIC counsel notified me that FDIC planned to pay the pending federal tax claim against the receivership, which would have depleted the reported surplus in the receivership. I obtained a temporary restraining order against FDIC in the U.S. District Court for the District of Oregon, and FDIC thereafter agreed to wait before making any payment to the IRS.

9.     In July 2002, the United States (on behalf of the IRS) sued the FDIC in the U.S. District Court for the District of Columbia for approximately $1.2 billion of taxes allegedly owed by the Benj. Franklin receivership. I filed a motion to intervene and transfer the case to the District of Oregon. My motion was thereafter stayed by agreement of both parties to the litigation, with FDIC inviting the shareholders' counsel to discuss the tax dispute with the parties. Two and a half years of discussion followed between the Department of Justice Tax Division, the IRS, the FDIC and the shareholders' counsel. In November 2004, with the concurrence of the shareholder plaintiffs whom I represent, the FDIC submitted a tax settlement proposal to the DOJ and IRS, which is now pending. That settlement, if approved, will permit a substantial surplus to remain in the Benj. Franklin receivership and thus be available for distributions to shareholders and others in accordance with FDIC's priority scheme for making distributions from receiverships.

3

## The Litigation Fund

10.     In 1990, at the request of my clients, I established the Benj. Franklin Shareholders

Litigation Fund ("The Lit. Fund"), with myself as sole trustee.  Money received from the

shareholders was placed in an interest bearing account in the name of the Lit. Fund in the

Portland, Oregon branch of the Union Bank of California.  No other money has been put into that

account except shareholder contributions, plus a small payment by the FDIC in connection with

our agreed sharing of trial costs.

11.     Originally, one of the shareholder derivative plaintiffs, Mr. Leo Sherry, who is

both an attorney and a CPA, developed and operated a computer program for administering the

fund.  When this became too burdensome for Mr. Sherry, an independent CPA, Jerry Young, was

retained by me to maintain the records for the Lit. Fund, and Mr. Young has continued with this

responsibility to the present.  As money was contributed to the fund, documentation was

submitted to Mr. Young.  As I received notifications of changes of address or deaths of

shareholders, this information also was transmitted to Mr. Young.

12.     Payments were made by me from the fund to pay the expenses of the litigation

described above and to pay a reduced portion of my normal billing rates for legal work.  Regular

reports on receipts and disbursements from the fund have been made to some or all of the

derivative plaintiffs.  They received copies of billings and, in exercising their fiduciary

responsibility, occasionally questioned expenditures and these questions were resolved.

13.     Jerry Young, CPA, has submitted an affidavit attached as Exhibit B to the Proof

of Claim form, which describes his role in connection with the fund.  He has recently reported to

me at my request that as of December 6, 2004, 4,212 shareholders have contributed to the Lit.

4

297838v1

Fund a total of $3,026,944. In all probability there will be additional contributions and additional expenditures from the fund prior to this claim being paid.

The Benefits of the Lit. Fund Expenditures

14.    My knowledge of the related cases described above, which was gained over 14 ½ years as lead counsel as well as the knowledge of my attorney colleagues and consultants all have been invaluable in developing the evidence that was presented to the government during the last 2 ½ years of discussions that resulted in the tax settlement offer. Examples include providing information and documentation about the 1982 merger of Benj. Franklin and Equitable Savings and Loan; about the treatment of the goodwill acquired in that transaction; about the financial and asset situation of Benj. Franklin before the seizure; about the substantial FHLBank of Seattle advances to Benj. Franklin; and about the acquisition of Benj. Franklin assets and liabilities by Bank of America, which was an issue in the damages trial. Many other examples could be provided. In addition, I have often needed to request information or research from former employees of Benj. Franklin with whom fortunately I have developed a close relationship during the same 14-½ years. The shareholder contributions to the Lit. Fund enabled all of this knowledge and information to be known and to be accessible to me and to my co-counsel.

15.    I personally have devoted over 6,000 hours to the Benj. Franklin cases, and other attorneys and paralegals under my direction have devoted thousands of additional hours. The law firm of Winston and Strawn assisted substantially in the CFC litigation and in the tax settlement discussions, and the law firm of Spriggs and Hollingsworth had been involved in all of the above-described litigation and discussions since 2002. All three of our firms have worked together in connection with the tax settlement discussions over the last 2-½ years. Our

participation in these discussions was cooperative with FDIC and assisted in the development of

the pending tax settlement proposal.

_____
Don S. Willner                                     (Date)

Subscribed and sworn to before
me this _____ day of _____ 2005.


_____
Notary Public

My Commission expires: _____

6

297838v1

## AFFIDAVIT OF
## JERRY J. YOUNG, CPA

1.      My name is Jerry J. Young.  I am a certified public accountant and I maintain my

business office at 9400 S.W. Barnes Road, Suite 310, Portland, Oregon  97225, I am over the age

of 21 years and am competent to make the statements in this Affidavit.

2.      I was retained in 1997 by Don S. Willner to do two things:  (1) to maintain the

database of the names and addresses of all known Benj. Franklin Federal Savings and Loan

Association ("Benj. Franklin") shareholders, which had been developed earlier by Leo Sherry,

and (2) to record and maintain an accurate record of all financial contributions made to the Benj.

Franklin Shareholders Litigation Fund ("Lit. Fund") by Benj. Franklin shareholders.

3.      When I agreed to do these things, I understood that Mr. Willner was the sole

trustee of the Benj. Franklin Shareholders Litigation Fund and that he was the principal counsel

for the shareholder plaintiffs in the case pending before the U.S. Court of Federal Claims.  I am

not affiliated with Mr. Willner and I have no involvement, direct or indirect, in any of the

litigation being funded by the Lit. Fund.  I am compensated for my work on these matters based

on periodic billings to the Lit. Fund based on the amount of my time expended.

4.      With respect to my maintenance of the list of all known Benj. Franklin

shareholders, I began with the original data developed by Leo Sherry from a list provided by

Manufacturers Hanover Trust Company of California, which was the stock transfer agent for

Benj. Franklin prior to its receivership in 1990.  I have then updated the original list of

shareholders with address changes, ownership changes due to shareholder deaths and/or due to

purchases and sales of Benj. Franklin stock. I have done this as and when these changes have been brought to my attention by Mr. Willner's office.

5.    With respect to my maintaining a record of all cash contributions to the Lit. Fund, I began by receiving copies of all bank deposits made to the Lit. Fund's bank account since 1990. I then hired a former bank auditor to assist me in cross-checking these deposits against the original shareholder list to verify that proper credit had been given to each shareholder who made a contribution to the Lit. Fund. In addition, the bank deposits were cross-checked against all individual shareholder deposits from October 1990 to March 4, 1997. Since 1997, my office has periodically updated the information about which shareholders have paid into the Lit. Fund and how much each has paid. We do this by recording the information from each bank deposit slip provided to us by Mr. Willner's office to whom the individual contributions are mailed. Mr. Willner provides these documents to us after deposits of the contributions are made to the Lit. Fund's bank account.

6.    The database that contains the above-described information uses Microsoft's Access 95 program. We currently back-up the data onto 3-1/2 inch floppies. The information is presently being maintained in a computer in my office, which was purchased solely for this purpose.

7.    Attachment 1 to this affidavit is the list of all shareholders who have made contributions to the Lit. Fund and the amount of each shareholder's contributions to date. As of December 6, 2004, there were 4,212 shareholders who have contributed, and their contributions totalled $3,026,944.

2

8.     I am prepared to calculate the interest owed to each contributing shareholder based on using the same rates of return that FDIC earned on its bank and thrift liquidation monies, which rates have been published on a monthly basis and will be provided by the FDIC for this purpose. Each contributor's interest calculation will be prepared from the date of his/her/its contribution(s) to the Lit. Fund.


_____
Jerry J. Young, CPA               (Date)


Subscribed and sworn to before me
this _____ day of _____ 2005.


_____
Notary Public

My commission expires: _____

# EXHIBIT B



# Spriggs&Hollingsworth

1350 I Street, NW
Washington, DC 20005

tel. 202.898.5800
fax 202.682.1639
www.spriggs.com

Rosemary Stewart
202.898.5888
rstewart@spriggs.com

July 22, 2005

**By Hand-Delivery**

Richard Gill, Esq.
Federal Deposit Insurance Corporation
1717 H Street, N.W.
Washington, D.C. 20006

    Re:  Benj. Franklin Receivership
        Portland, Oregon

Dear Richard:

  This letter addresses the request by the Benj. Franklin Shareholders Litigation Fund ("Lit. Fund") for interest to be paid on the total amount of contributions made by Benj. Franklin shareholders to the Lit. Fund. Pursuant to the letters dated November 8 and 9, 2004, exchanged between Don S. Willner and FDIC Senior Counsel Robert G. Clark, the FDIC-Receiver will reimburse the principal amount of all of the shareholders' contributions made to the Lit. Fund if the pending tax settlement is approved by the Department of Justice and the U.S. District Court for the District of Columbia. This payment will be processed by the FDIC-Receiver pursuant to a claim to be filed by the Lit. Fund (a draft of which I sent to you earlier).[1] The above-referenced letter agreement also stated that "interest" on the amount of these contributions "will be determined under the applicable provisions of the receivership priority system." *See* Mr. Willner's November 8, 2004 letter at paragraph 5.b.

  This letter will demonstrate that interest on the principal amount of the Lit. Fund contributions should be paid by the FDIC-Receiver because (assuming the tax settlement is finalized), the Benj. Franklin receivership will have a sufficient surplus to pay all pending claims – including this claim for interest – and still make a sizable distribution of the net surplus to the Benj. Franklin shareholders. Applicable law provides for the payment of interest when such a surplus exists in a receivership estate.

---

[1] I am attaching another copy of the Lit. Fund's draft claim form because it contains background information about the creation of the Lit. Fund and how it has been maintained for the last 15 years to fund litigation on behalf of Benj. Franklin and its shareholders. As you know, Mr. Willner is the sole trustee of the Lit. Fund.

Sprigg & Hollingsworth

Richard Gill, Esq.
July 22, 2005
Page 2

## The Receivership Distribution Priority System

The priority system that applies in this instance is the FDIC's regulation at 12 C.F.R. § 389.11 (1990) because this regulation applied to all thrift receiverships at the time of Benj. Franklin's receivership in 1990. The 1990 version of Section 389.11 was the successor to a Federal Savings & Loan Insurance Corporation ("FSLIC") receivership regulation at 12 C.F.R. § 569c.11 (1989). Both of these regulations set out the following order of priority for all "unsecured claims against an association or the receiver that are proved to the satisfaction of the receiver:"

(1)     Administrative expenses of the receiver, including the costs, expenses and debts of the receiver;

(2)     Administrative expenses of the association . . .;

(3)     Claims for wages and salaries . . . by an employee of the association whom the receiver determines . . . to retain . . .;

(4)     [C]laims for wages and salaries . . . by an employee . . . not retained . . . ;

(5)     Claims . . . for unpaid taxes, other than Federal income taxes . . .;

(6)     Claims for withdrawable accounts, including those of the Corporation as subrogee or transferee and all other claims which have accrued and become unconditionally fixed on or before the date of default . . .;

(7)     Claims other than those that have accrued and become unconditionally fixed on or before the date of default, including claims for interest after the date of default on claims under paragraph (a)(6) of this section . . .;

(8)     Claims . . . for unpaid Federal income taxes;

(9)     Claims that have been subordinated . . . to general creditor claims . . . ;

(10)    Claims by holders of nonwithdrawable accounts, including stock . . . .

**Sprigg & Hollingsworth**

Richard Gill, Esq.
July 22, 2005
Page 3

12 C.F.R. § 389.11(a) (1990); 12 C.F.R. § 569c.11(a) (1989).[2]  This regulation did not expressly reference interest on claims except for the Level 7 statement about "interest after the date of default" on Level 6 claims.  And on this subject, subsection (b) of the same regulation provided:

> (b) Interest after the date of default on claims under paragraph (a)(6) of this section shall be at a rate or rates adjusted monthly to reflect the average rate for U.S. Treasury bills with maturities of not more than ninety-one (91) days during the preceding three (3) months.

12 C.F.R. § 389.11(b) (1990); 12 C.F.R. § 569c.11(b) (1989).  Nothing in the text of this regulation prohibited claims for interest on *other* kinds of receivership claims if they were filed by a claimant pursuant to the government's receivership procedures.

In 1993, Congress amended FDIC's receivership statute and added, for the first time, a *statutory* priority scheme to 12 U.S.C. 1821(d)(11), but it was clearly stated that such amendments would apply only to receivers appointed after the date of enactment, which was August 10, 1993.  Pub. L. No. 103-66, Sec. 3001(c) (1993).  (This same clarification was added to the end of 12 C.F.R. § 360.3, which was the renumbered location of the FDIC's priority regulation applicable to thrifts, per n.2 below.)

---

[2] Following the adoption of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), which abolished the FHLBB and FSLIC, the formal process of identifying the functions and regulations of FHLBB/FSLIC that would be transferred to other agencies occurred in the fall of 1989.  The above-quoted FSLIC priority regulation was identified as a surviving regulation for which FDIC would assume responsibility.  54 Fed. Reg. 41,359 (10/6/89).  Shortly thereafter, the FDIC formally transferred it to FDIC's own regulations and re-numbered it as 12 C.F.R. § 389.11 without changing its text.  54 Fed. Reg. 42,799 (10/18/99).  The following year in 1990, the FDIC adopted a final rule that removed most of the old FSLIC receivership regulations because they were stated to be superseded by provisions in FIRREA or redundant or inconsistent with other FDIC regulations.  55 Fed. Reg. 46,495 (11/5/90).  But the former FSLIC priority regulation was retained in large part, with subsections (a) and (b) retained exactly as they appeared in the former FSLIC regulation, with the FDIC clarifying that: "Part 389 [old FSLIC rule 569c] which also applied to receivership rules, is also removed, except section 389.11 (Priorities) . . . which sets forth the order in which unsecured claims [against failed thrifts] . . . or the receiver . . . have priority . . . ."  *Id.* at 46,496.  At the same time, FDIC redesignated § 389.11 as § 360.2 where it remained through 1993 after which it was redesignated as § 360.3.  58 Fed. Reg. 67,664 (12/23/93) (the designation as § 360.3 was effective on 1/21/94).

Sprigg**&**Hollingsworth

Richard Gill, Esq.
July 22, 2005
Page 4

Thus, because it is clear that the 10-Level priority system (quoted above) applies in this case, the next issue is whether claims for interest can fit into one or more of the ten levels. The regulatory history of this priority system indicates that the answer is "Yes." When 12 C.F.R. § 569c.11 was enacted by the FHLBB in 1988, the agency explained that the rule would make interest available to both creditors and depositors:

> New § 569c.11(b) specifically addresses the right of *general creditors* and depositors *to receive interest after the date of default if a surplus is available* and provides that this interest be paid at rates adjusted monthly to reflect the average rate for U.S. Treasury Bills with maturities of not more than 91 days during the preceding three months. The new uniform rate of interest will avoid any uncertainty about the rate to be paid and will eliminate disputes about the possible applicability of State law concerning *interest due to creditors or depositors* under certain circumstances.

53 Fed. Reg. 25,129,  25,131 (7/5/88) (emphasis added). [3]  A nearly identical explanation had been published by the FHLBB when the same regulation was proposed for public comment in 1985:

> Section 569c.11(b) would specifically address the right of all *general creditors* and depositors *to receive interest after the date of default if a surplus is available* and would provide that this interest be paid at rates adjusted monthly to reflect the average rate for U.S. Treasury Bills with maturities of not more than 91 days during the preceding three months. . . . The new uniform rate of interest will avoid any uncertainty about the rate to be paid and will eliminate disputes about the possible applicability of state law concerning interest due to creditors or depositors under certain circumstances.

---

[3] This regulation was adopted by the Federal Home Loan Bank Board ("FHLBB") in 1988 pursuant to its general rulemaking authority under the Home Owners Loan Act ("HOLA") (12 U.S.C. § 1464) and the National Housing Act (12 U.S.C. §§ 1725, 1729). While those statutes referenced the agency's authority to make rules and regulations for both federal and state-chartered savings associations in receivership, they did not create or reference any kind of *statutory* priority scheme for creditor claims made to a receiver (except for one reference in the HOLA to all savings accounts having the same priority upon liquidation).

Sprigg&Hollingsworth

Richard Gill, Esq.
July 22, 2005
Page 5

50 Fed. Reg. 48,970, 48,981 (11/27/85) (emphasis added).[4]

Traveling even further back in time, the FSLIC receivership regulation that preceded the 1988 rule also recognized the availability of interest on claims made by creditors of all kinds. The 1968 FSLIC regulation at 12 C.F.R. § 569a.7 (1969) entitled "Priority of Claims" set out five levels of priority – with level 3 covering "All claims of general creditors . . . ," – and then stated:

> (6) Interest at the rate of 5 per centum per annum from the date of default on the outstanding principal amount of all claims which qualify under subparagraphs [*i.e.,* levels] (3), (4), and (5) of this paragraph; and if the surplus is not sufficient to pay such post-default interest in full on all claims specified in this subparagraph, the payment of interest shall be made pro rata on all such claims without regard to any priorities as to the payment of principal on said claims.

33 Fed. Reg. 14,366, 14,368 (9/24/68), quoting new 12 C.F.R. § 569a.7(a)(6). As noted above, the formula for interest calculations changed in 1988, but the logic of this earlier regulation about interest being available – separate from the principal amount of a receivership claim – has not changed as long as the surplus is "sufficient to pay such post-default interest in full." *Id.*[5]

**FIRREA's Enactment**

Although FIRREA did not alter the priority distribution regulation discussed above (which governs distributions from the Benj. Franklin receivership), it did provide two new directions to FDIC Receivers. *See* Pub. L. No. 101-73, § 212 (1989), amending 12 U.S.C. § 1821(d)(11) to read as follows:

---

[4] The FSLIC "Priority" regulation at 12 C.F.R. § 569c.11 was proposed in late 1985 and not adopted until August 1988. Thus, it may not be said that it was "rushed" to enactment or that the FHLBB/FSLIC had not clearly stated its intention as to paying interest on creditor claims as well as on depositor claims – if a surplus was available to do so.

[5] In 1981, the FSLIC priority regulation was amended twice. The first amendment eliminated the 5% interest rate in favor of the FSLIC's "current investment opportunity rate" determined on a quarterly basis. 46 Fed. Reg. 29,246 (6/1/81) (retaining the language about paying "interest in full" only if a sufficient surplus existed to do so). The second amendment adjusted the interest rate further "to reflect market sensitivity in investments" and set it to follow the 91-day U.S. Treasury bill rate for each preceding quarter. 46 Fed. Reg. 54,922 (11/5/81).

**Spriggs & Hollingsworth**

Richard Gill, Esq.
July 22, 2005
Page 6

    (11)    <u>Distribution of Assets.</u>

        (A)    Subrogated Claims; Claims of Uninsured Depositors *and Other Creditors.* – The receiver shall –

            (i) retain for the account of the Corporation [amounts due to FDIC from] . . . the subrogation of the claims of depositors; and

            (ii) pay to depositors *and other creditors* the net amounts available for distribution to them

        (B)    Distribution to shareholders of amounts remaining after payment of all other claims and expenses –

            In any case in which funds remain after all depositors, *creditors, other claimants* and administrative expenses are paid, the receiver shall distribute such funds to the depository institution's shareholders . . . .

(Emphasis added.)  This language remained until 1993 when it was replaced by a new § 1821(d)(11) that prioritized the order of payment for unsecured claims.  Pub. L. No. 103-66, § 3001(a) (1993).  But because the 1989 language still applies to the Benj. Franklin receivership, it is noteworthy that FIRREA placed "depositors and other creditors" on an equal footing in subsection 1821(d)(11)(A) for receiving distributions of surplus funds after FDIC's own subrogated claims were satisfied.  And in subsection (d)(11)(B), Congress placed "all depositors, *creditors* [and] *other claimants*" ahead of the final distribution to shareholders.  The Lit. Fund contributors who seek both a return of the principal amount of their contributions and the interest on such amounts are certainly "creditors" or "other claimants" under this statutory provision.

    Moreover, in the *Winstar*-related litigation spawned by FIRREA over the last decade, FDIC counsel have frequently pointed out that creditor claims are specifically provided for in the priority distribution system.[6]  And, FIRREA mandated that FDIC was to collect and preserve

---

[6] *See e.g.,* FDIC's Combined Petition for Panel Rehearing and Rehearing *en Banc*, filed on September 7, 2001 in *Glass v. United States*, No. 00-5137 (Fed. Cir.) at 13 ("[T]he statute relating to receivership distributions in effect in 1990 did not distinguish among the subrogated claim, uninsured depositor claims or third party creditor claims, 12 U.S.C. § 1821(d)(11)(A) (1990).  Likewise, the FDIC's implementing regulation included depositor claims and (non-contingent) third party creditor claims together in the same priority of claim as the subrogated claim.  12 C.F.R. § 389.11(a)(6) (1990).").

Sprigg&Hollingsworth

Richard Gill, Esq.
July 22, 2005
Page 7

receivership funds for the benefit of all creditors and other claimants as well as for shareholders if any surplus remained. 12 U.S.C. § 1821(d)(11) (as quoted above). It is also noteworthy that FDIC counsel in the *Winstar* cases have consistently pointed out the FDIC-Receiver's entitlement to interest on its subrogated depositor claims, which arises from the Level 7 reference to interest on Level 6 claims in the same priority regulation discussed above. This Level 7 is the same "all other claims" category in which the Benj. Franklin shareholders' claim for interest may properly be placed.

## Case Law and Other Support

While it is often stated that interest is not allowed on receivership claims, the clear exception to this rule is where the receivership has an adequate surplus to pay all of its expenses and debts as well as the interest on those same sums. 16 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 7937 (perm. ed. rev. vol. 2004). Because a receivership surplus is not common, this exception is often lost to a casual observer. However, in *Waterview Management Co. v. Fed. Deposit Ins. Corp.* 257 F. Supp.2d 31, 35 (D.D.C. 2003), the Court noted that FDIC had conceded that there were exceptions to its "ratable distribution rule," including "where the assets of the receivership are sufficient to pay all provable claims in full. . . ."

Before any statutory or regulatory provisions assisted financial institution receivers with such issues, case law clarified that interest could be paid on receivership claims if a surplus existed to do so. In *Stein v. Delano*, 121 F.2d 975, 976-79 (3d Cir. 1941), the Court declared that creditors of a national bank in receivership were entitled to interest on their claims before the distribution of any surplus to the bank's shareholders. During these early years, it was often the FDIC as receiver that sought to clarify its right to interest on its own claims. *See Fed. Deposit Ins. Corp. v. Citizens State Bank*, 130 F.2d 102, 104 (8th Cir. 1942) (FDIC was found entitled to interest on its claim for the deposits it paid when the bank failed "where there is a surplus for this purpose"); *Bates v. Farmers Sav. Bank of Ankeny*, 231 Iowa 1151, 1158, 3 N.W. 2d 517, 520 (1942) (rejecting the shareholders' argument that because FDIC's federal statutes did not provide for interest on claims, none should be paid even though there was a surplus in the receivership after the payment of the principal amount of all claims).[7]

---

[7] In *Bates*, the Iowa Supreme Court outlined a series of decisions applying to bank receiverships as well as to the receiverships of other corporations in which the same reasoning was consistently applied *when a surplus existed to make such interest payments. Id.* at 1155-1159. *See also Ticonic Nat'l Bank v. Sprague*, 303 U.S. 406, 413 (1938) ("[I]nterest will be denied the unsecured creditors [of a company in receivership] if the assets are insufficient to pay all claims in full.") And, in *Robbins v. Mitchell*, 107 F.2d 56, 57 (9th Cir. 1939), the Court noted in passing that the national bank's receiver had "wound up the receivership, *paid all* depositors and

Sprigg&Hollingsworth

Richard Gill, Esq.
July 22, 2005
Page 8

In *Jamison v. Fed. Deposit Ins. Corp.*, 149 F.2d 199, 200 (5th Cir. 1945), the Court similarly explained:

> The general rule is that where the assets of an insolvent bank in receivership are more than sufficient to pay all debts, then the creditors are allowed dividends to pay the interest due from the debtor bank, but where the assets are not sufficient to pay the principal of all debts, interest on the general claims will not be computed for the period after the receiver took control.

*See also Mitsuo Tagawa v. Clarence K. Karimoto*, 1958 WL 9939 *9 (Hawaii 1958) (under applicable law of the territory, a failed bank in liquidation should pay interest "where there is a sufficient surplus after payment of the principal."). And even before FDIC was created, Courts were explaining "well-established law that, where there is a surplus remaining in the hands of a receiver after the payment of claims as allowed," interest is also to be paid on such claims. *Ohio Sav. Bank & Trust Co. v. Willys Corp.*, 8 F.2d 463, 466 (2nd Cir. 1925).

In *Bailey v. United States*, 53 Fed. Cl. 251 (2002), the U.S. Court of Federal Claims considered the post-1993 statutory priority system at 12 U.S.C. § 1821(d)(11)(A) (not the regulatory priority system that applies to Benj. Franklin). The Court observed that the receiver's payment of its administrative expenses as well as its payments to satisfy the FDIC's subordinated depositor claims would include *interest on both amounts* before the receiver could determine if it had a surplus remaining for distribution to the thrift's shareholders. *Id.* at 254. This is significant because the referenced statute at § 1821(d)(11)(A) does not include any statement about interest being paid on either type of claim. The *Bailey* Court also cited 12 C.F.R. § 360.3(a)(1) for the receiver's reimbursement of administrative expenses and § 360.3(a)(6) about reimbursing the FDIC for paying off the thrift's depositors. *Bailey*, 53 Fed. Cl. at 254. But interest is stated explicitly in this regulation only for the (a)(6) payments (subrogated depositor claims) – not the (a)(1) payments (administrative expenses). But the Court concluded that if sufficient surplus existed, the FDIC would pay principal and interest for *both categories*. *Id.* We agree.

**The Claim for Interest by the Lit. Fund**

The claim for interest by the Benj. Franklin Shareholders Litigation Fund may properly be considered as a Level 7 claim:

---

creditors of the association, both principal and interest in full, [and] paid all expenses of the receivership . . . ." after which the receiver was discharged. (Emphasis added.)

Sprigg&Hollingsworth

Richard Gill, Esq.
July 22, 2005
Page 9

> (7) Claims *other than those that have accrued and become*
> *unconditionally fixed on or before the date of default* . . . .

12 C.F.R. § 389.11(a)(7) (1990). As noted above, Level 7 is an "all other claims" kind of category except for the specific claims of lower priority set out in Levels 8, 9, and 10. In *Waterview Management Co.*, 257 F. Supp. at 34, damages were awarded against the FDIC for its repudiation of a real estate option contract. The FDIC advised the Court that the damages would be treated as a Priority 6 claim and the prejudgment interest on that amount would be a Priority 7 claim under 12 C.F.R. § 360.3, which was for "Claims other than those that have accrued . . . on or before the date of default . . . ." *Id.* at 33. (As noted previously, this is identical to the Level 7 set out in § 389.11(a)(7).) Surely the Benj. Franklin shareholders' claim for interest on dollars spent to bolster the receivership estate is entitled to the same priority level as prejudgment interest on a damage award under these circumstances.

Alternatively, the Lit. Fund's claim for interest may properly be considered as a Level 1 claim:

> (1) Administrative expenses of the receiver, including the
> costs, expenses and debts of the receiver.

12 C.F.R. § 389.11(a)(1) (1990). The Lit. Fund paid for litigation in the U.S. Court of Federal Claims that was a shareholders' derivative claim on behalf of Benj. Franklin Savings. The institution was in federal receivership when the shareholders' action was filed in 1990 as well as when the action was found to be derivative in nature in 1995. *See Suess v. United States*, 33 Fed. Cl. 89, 93-94 (1995) ("[P]laintiff-shareholders in [this] derivative suit bring their claims not on their own behalf, but on behalf of the corporation itself."). The same derivative shareholder plaintiffs filed a tax-related action in the U.S. District Court in Portland, Oregon in 2002 and filed a motion to intervene and transfer in the U.S. District Court in the District of Columbia later in 2002 after the government filed its tax collection suit against the Benj. Franklin receivership. And more recently, the Lit. Fund has financed the expenditure of time by the shareholders' counsel in working closely with FDIC, IRS, and the Department of Justice Tax Division to settle the billion dollar tax claim pending against the receivership.

All of the foregoing actions had and continue to have the goal of maximizing the Benj. Franklin receivership's surplus so that it then may be distributed to all appropriate creditors and claimants, and then to the Benj. Franklin shareholders. We believe the FDIC-Receiver had and continues to have the same goal, thus making the Lit. Fund's expenditures – and interest on these expenditures – appropriate "administrative expenses of the receiver."

Finally, the interest payment to Benj. Franklin shareholders who contributed to the Lit. Fund should not, of course, be viewed as a bonus to them or as a detriment to the receivership.

**Spriggs** & **Hollingsworth**

Richard Gill, Esq.
July 22, 2005
Page 10

*See Motion Picture Ass'n of Am., Inc. v. Oman*, 969 F.2d 1154, 1157 (D.C. Cir. 1992) ("[I]nterest compensates for the time value of money, and thus is often necessary for full compensation.").

We would appreciate the concurrence of FDIC's legal and receivership personnel with the views stated herein, and we would be happy to have this letter included as part of the Benj. Franklin Lit. Fund's "claim" if this would be appropriate.

Thank you for your consideration.

Sincerely,

*Rosemary Stewart*

Rosemary Stewart

Co-Counsel to the Benj.
Franklin Shareholders
Represented by Don S. Willner

cc:    Don S. Willner, Esq.

340362v1

# Spriggs&Hollingsworth

1350 I Street, NW
Washington, DC 20005

tel. 202.898.5800
fax 202.682.1639
www.spriggs.com

Rosemary Stewart
202.898.5888
rstewart@spriggs.com

January 4, 2006

Catherine Ribnick, Esq.
Legal Division
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, DC 20429

     Re:    Benj. Franklin Receivership, Portland Oregon

Dear Catherine:

     Please consider this letter as a supplement to my letter sent to Richard Gill on July 22, 2005. That earlier correspondence urged the payment of interest on the contributions made by shareholders of Benj. Franklin Savings to the Benj. Franklin Shareholders Litigation Fund ("Lit. Fund") over a fifteen-year period (from 1990 to 2005). As you know, the Lit. Fund has filed a claim with the FDIC-Receiver for the total amount of shareholder contributions made to the Lit. Fund as well as interest on the same amount. My July 22, 2005 letter demonstrated that the regulatory history of the thrift receivership regulations clarified that interest would be paid on claims by general creditors *if* a surplus was available to do so. Caselaw and other authorities cited in the letter support the same conclusion about the payment of interest where a sufficient surplus exists to do so after all of the claimants' principal amounts have been paid.

     I would like to add to that analysis the fact that the regulatory provisions quoted in my July 22nd letter all referenced the *timing* of such interest calculations to be triggered by "the date of default." As used in these regulations, "default" meant the date of the receivership appointment, and it was after this date that most claimants could legitimately view the receivership as retaining *the claimants' funds* and thus it was fair that the receiver should be obligated to pay interest on the funds from that same date. *See e.g.,* 12 C.F.R. § 389.11(b) (1990) ("Interest after the date of default . . . shall be paid at [the specified rate]," as quoted on p. 3 of my 7/22/05 letter). The Federal Home Loan Bank Board ("FHLBB") also explained the right of general creditors "to receive interest *after the date of default* if a surplus is available . . .," also signaling that the date of receivership would commence any calculation of interest on claims that were pending at that time. *See* the FHLBB quotations on p. 4-5 of my 7/22/05 letter).

Sprigg**&**Hollingsworth

Catherine Ribnick, Esq.
January 4, 2006
Page 2

For claims such as the one filed by the Lit. Fund that did not exist as of the date of Benj. Franklin's "default," the applicable regulatory priority scheme identifies as "Level 7," the "Claims other than those that have accrued and become unconditionally fixed on or before the date of default." By the same logic applied to claims and interest that became due on the date of default, the date applicable to Level 7 claims would necessarily be the date that the claimants' funds were no longer available to the claimants such that they began losing interest on that money from that same date. For the contributors to the Lit. Fund, that date was actually a whole series of multiple dates when each shareholder sent money to the Lit. Fund to be used to press legal claims and positions on behalf of Benj. Franklin Savings in receivership. (As we discussed, the Lit. Fund trustee is willing to be flexible in calculating these dates and amounts to reduce the administrative burden of making the interest calculations.)

Moreover, the priority distribution regulation applicable to the Benj. Franklin receivership (originally at 12 C.F.R. § 389.11 (1990) and now at 12 C.F.R. § 360.3 (2005)) does not contain any contrary restrictions about the *timing* of post-insolvency interest calculations. And the FDIC's current regulation on post-insolvency interest at 12 C.F.R. § 360.7, by its express terms, applies only to receiverships established after June 13, 2002, so its provisions about interest calculations clearly do not apply to the Lit. Fund's pending claim.

Finally, this particular claim for interest to the Lit. Fund contributors should cause little or no concern to FDIC from a precedent-setting perspective because the number of receiverships still governed by 12 C.F.R. § 360.3 is a small universe and the number of receiverships within that universe that have surplus funds available for interest payments on claims is smaller still. Paying both principal and interest to the Benj. Franklin Lit. Fund contributors is thus likely to have little or no impact on other pending or potential claims arising from other FDIC receiverships.

Thank you for you consideration.

Sincerely,

Rosemary Stewart

Rosemary Stewart

Co-Counsel to the
Benj. Franklin Shareholders
represented by Don S. Willner

cc:    Don S. Willner, Esq.
       Richard Gill, Esq.

373271v1

# EXHIBIT C

# FDIC

**Federal Deposit Insurance Corporation**
1910 Pacific Avenue Room 9040 Dallas TX 75201                    Division of Resolutions and Receiverships

February 22, 2006

The Benj. Franklin Shareholders Litigation Fund
%Don S. Willner & Associates, P.C.
621 S.W. Morrison St. – Suite 1414
Portland, Oregon 97205

SUBJECT:  The Benj. Franklin Federal Savings & Loan Association
          Portland, OR – In Receivership
          <u>Receipt of Proof of Claim</u>

Dear Mr. Willner:

On September 7, 1990, the Office of Thrift Supervision closed The Benj. Franklin Savings and Loan Association, Portland, OR, and the Resolution Trust Corporation ("RTC") was appointed Receiver. As of January 1, 1996, the Federal Deposit Insurance Corporation ("FDIC") succeeded the RTC as Receiver.

We have received your Proof of Claim with accompanying documentation in the amount of $3,026,919.00. Please be advised that your claim has been neither allowed nor disallowed at this time.

The FDIC is continuing to evaluate your claim and the documents contained therein. The FDIC is to complete their review of your claim and render a determination within 180 days after the date the claim was filed. **Your claim was filed on November 18, 2005 and, accordingly, the 180-day period will expire on May 17, 2006.**

If you do not receive a notice of disallowance of your claim within 180 days of its filing with the Receiver, your claim will be deemed disallowed, pursuant to 12 U.S.C. 1821 (d)(6)(A). If this occurs you have the right to file a lawsuit on your claim (or continue any lawsuit commenced before the appointment of the Receiver), in the United States District Court (or Territorial Court) for the District within which the failed institution's principal place of business was located or the United States District Court for the District of Columbia within 60 days from May 17, 2006.

**IF YOU DO NOT FILE A LAWSUIT** (or continue any lawsuit commenced before the appointment of the Receiver) **BEFORE THE END OF THE 60-DAY PERIOD, THE DISALLOWANCE WILL BE FINAL, YOUR CLAIM WILL BE FOREVER BARRED AND YOU WILL HAVE NO FURTHER RIGHTS OR REMEDIES WITH RESPECT TO YOUR CLAIM.** 12 U.S.C. Section 1821(d)(6)(B).

February 22, 2006

If you have any questions, please contact me at 800-568-9161, extension 2666.

Sincerely,

Glenn Glinsmann
Resolution and Receiverships Specialist

cc: Richard Gill

# EXHIBIT D

# FDIC

**Federal Deposit Insurance Corporation**
1810 Pacific Avenue, Dallas, TX 75201

Division of Resolutions and Receiverships

May 24, 2006

The Benj. Franklin Shareholders Liquidation Fund
% Don Willner & Associates, P.C.
621 S.W. Morrison Street – Suite 1414
Portland, OR  97205

SUBJECT:     7166 – The Benj. Franklin Federal Savings and Loan Association
             Portland, OR  - In Receivership
             <u>NOTICE OF ALLOWANCE OF CLAIM OF PRINCIPAL</u>

Dear Sir or Madam:

On September 07, 1990, the Benj. Franklin Federal S&LA, Portland, Oregon, was closed by the
Office of Thrift Supervision, and the Federal deposit Insurance Corporation was appointed
Receiver.

Your claim of principal has been reviewed, and the Receiver has determined that it should be
allowed.  Enclosed you will find a check in the amount of $3,067,159.77.

If you have any questions, please contact Glenn Glinsmann at 972-761-2666.

Very truly yours,

*Glenn Glinsmann*

Glenn Glinsmann
Claims

Enclosure

THIS IS A WATERMARKED PAPER-PRINTED WITH BLUE INK-DO NOT ACCEPT WITHOUT VERIFYING WATERMARK-HOLD TO LIGHT TO VERIFY

**FEDERAL DEPOSIT INSURANCE CORPORATION**    Date: 5/30/2006    500000244

Field Finance Center    P.O.Box 130476    JPMorgan Chase Bank, N.A.  Chicago, IL    62-28/311
Dallas, TX  75313    Payable Through Chase Manhattan Bank USA, N.A.    0924720

Pay  **THREE MILLION SIXTY-SEVEN THOUSAND ONE HUNDRED FIFTY-NINE AND 77/100 DOLLARS**

Pay Amount: $3,067,159.77***

To The
Order Of

BENJAMIN FRANKLIN SHAREHOLDER LITIGATION
621 SW MORRISON
SUITE 1415
PORTLAND, OR 97205

Susan Brown
Authorized Signature

VOID SIX MONTHS FROM DATE OF ISSUE

⑆500000244⑆ ⑈031100283⑈        0924720⑈

## FEDERAL DEPOSIT INSURANCE CORPORATION

| Check Date: 5/30/2006 | | Vendor Number: | 0000032422 | | | Check No.500000244 | |
|---|---|---|---|---|---|---|---|
| Invoice Number | Invoice Date | Voucher ID | Gross Amount | Discount Taken | Late Charge | Paid Amount |
| 3067159.77-052406 | 5/24/2006 | 00008860 | 3,067,159.77 | 0.00 | 0.00 | 3,067,159.77 |

| Check Number | Date | Total Gross Amount | Total Discounts | Total Late Charges | Total Paid Amount |
|---|---|---|---|---|---|
| 500000244 | 5/30/2006 | $3,067,159.77 | $0.00 | $0.00 | $3,067,159.77 |

210445        PLEASE DIRECT ALL QUESTIONS REGARDING THIS PAYMENT TO: (972) 761-8098

# EXHIBIT E



## FDIC
**Federal Deposit Insurance Corporation**
1910 Pacific Ave. Dallas TX, 75201

*Division of Resolutions and Receiverships*

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

May 11, 2006

The Benj. Franklin Shareholders Litigation Fund
% Don Willner & Associates, P.C.
621 S.W. Morrison St. - Suite 1414
Portland, OR 97205

SUBJECT:       7166—The Benj. Franklin Federal S&LA
                   Portland, OR – In Receivership
                   <u>NOTICE OF DISALLOWANCE OF CLAIM for Interest</u>

Dear Sir or Madam:

The Receiver of The Benj. Franklin Federal S&LA has reviewed your claim against the receivership insofar as it requests interest on your claim for the principal that the receiver is also reviewing. After a thorough review of your claim for interest, along with your supporting documentation, the Receiver has determined to disallow your claim for the following reason(s):

> No interest is due on the Fund's claim because the most appropriate characterization of the Fund's claim is as an administrative claim and, as such, no interest is authorized under the applicable priority of claim, formerly 12 CFR § 569c-11, now found at 12 CFR § 360.3. Under that priority of claim, only depositors and general creditors are entitled to interest, in the event of a surplus, and the Fund is neither a depositor nor a general creditor.

Pursuant to 12 U.S.C. Section 1821 (d) (6), if you do not agree with this disallowance, you have the right to file a lawsuit on your claim (or continue any lawsuit commenced before the appointment of the Receiver), in the United States District (or Territorial) Court for the District within which the failed institution's principal place of business was located or the United States District Court for the District of Columbia within 60 days from the date of this notice.

**IF YOU DO NOT FILE A LAWSUIT (or continue any lawsuit commenced before the appointment of the Receiver) BEFORE THE END OF THE 60-DAY PERIOD, THE DISALLOWANCE WILL BE FINAL, YOUR CLAIM WILL BE FOREVER BARRED AND YOU WILL HAVE NO FURTHER RIGHTS OR REMEDIES WITH RESPECT TO YOUR CLAIM. 12 U.S.C. Section 1821(d)(6)(B).**

However, if a portion of your claim is for an insured deposit, your claim is not against the Receiver but rather is against the FDIC in its "corporate" capacity as deposit insurer. An insured depositor's rights are prescribed in 12 U.S.C. Section 1821(f) and differ from the rights described in the preceding paragraphs. [Glenn, do we need this? I realize it's part of a standard form, but it is clearly not applicable.]

If you have any questions about this letter, please contact the undersigned at (972) 761-2666.

Sincerely,

*Glenn Glinsmann*

Glenn Glinsmann
Claims Department

RLS7218