BEFORE THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                )
THE BENJ. FRANKLIN                               )
SHAREHOLDERS LITIGATION FUND,                    )
BY ITS SOLE TRUSTEE, DON S. WILLNER              )
                                                )
            Plaintiff,                           )   Civil Action  No. 06-01025 (EGS)
                                                )
        v.                                       )
                                                )
FEDERAL DEPOSIT INSURANCE CORPORATION            )
AS RECEIVER FOR THE BENJ. FRANKLIN               )
FS&LA, PORTLAND, OREGON                           )
                                                )
            Defendant.                           )
_____)


**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT INCLUDING
STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**


Filed :    November 30, 2006              Rosemary Stewart
                                          Spriggs & Hollingsworth
                                          1350 I Street, N.W.
                                          Washington, DC 20005
                                          202-898-5888 – (Telephone)
                                          202-682-1639 – (Fax)
                                          D.C. Bar No. 204438

                                          Counsel for Plaintiff The Benj. Franklin
                                          Shareholders Litigation Fund

## Table of Contents

**Page**

TABLE OF AUTHORITIES ................................................................................................ii-v

I.     BACKGROUND FACTS .......................................................................................... 2

       A.   Benj. Franklin FS&LA ................................................................................... 2

       B.   The BFS Lit. Fund .......................................................................................... 2

       C.   The Receivership Surplus ............................................................................... 3

       D.   The 2004 Letter Agreement ............................................................................ 5

       E.   The FDIC's Actions on the BFS Lit. Fund's Claims ...................................... 6


II.    LEGAL ARGUMENT ............................................................................................. 7

       A.   The standards for summary judgment .............................................................. 7

       B.   Receivership case law is clear that interest should be
            paid on claims when a surplus exists to do so. ............................................... 8

       C.   The background of FDIC's receivership law
            confirms the appropriateness of paying interest here. ................................... 14

            1.   Regulatory history supports the Plaintiff's claim. ............................... 17

            2.   The Plaintiff's Level 7 claim is ripe for payment. ............................. 19

            3.   FIRREA's guidance also supports the Plaintiff's claim. .................... 22

       D.   Paying the claimed interest is fair and equitable. ......................................... 24

            1.   Repaying principal without interest does not make
                 the contributors whole. ........................................................................ 24

            2.   Denying interest is inequitable to the contributing
                 shareholders. ........................................................................................ 26

            3.   The award of interest should not be reduced by
                 attorneys fees and costs. ...................................................................... 26


III.   CONCLUSION ...................................................................................................... 28

i

## Table of Authorities

## Cases

*American Iron Co. v. Seaboard Air Line,*
    233 U.S. 261 (1913).................................................................................................. 13

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................................. 7

*Bailey v. United States*,
    341 F.3d 1342 (Fed. Cir. 2003)................................................................................ 20

*Bailey v. United States*,
    53 Fed. Cl. 251 (2002), *aff'd*
    341 F.3d 1342 (Fed. Cir. 2003)................................................................................ 20

*Bates v. Farmers Sav. Bank of Ankeny,*
    3 N.W. 2d 517 (Iowa 1942) ..................................................................................... 12

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980)................................................................................................. 27

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)................................................................................................. 7

*Citizens State Bank of Lometa v. FDIC,*
    946 F.2d 408 (5th Cir. 1991) ................................................................................... 11

*Coit Independence Joint Venture v. Fed. Sav. & Loan Ins. Corp.*,
    489 U.S. 561 (1989)................................................................................................. 8

*Democratic Cent. Comm. v. Wash. Metro. Transit Comm'n,*
    3 F.3d 1568 (D.D.C. 1993) ...................................................................................... 28

*Dist. of Columbia v. Green,*
    381 A.2d 578 (D.C. 1977) ........................................................................................ 28

*Everett v. Perez,*
    30 F.3d 1209 (9th Cir. 1994) ............................................................................ 24, 25

*FDIC v. Citizens State Bank of Niangua,*
    130 F.2d 102 (8th Cir. 1942) ................................................................................... 10

*FDIC v. De Jesus Velez,
    514 F. Supp. 829 (D.P.R. 1981), aff'd,
    678 F.2d 371 (1st Cir. 1982) ................................................................ 11

FDIC v. George-Howard,
    153 F.2d 591 (8th Cir. 1946) ................................................................ 10

*FDIC v. Iowa Growthland Fin. Corp.,
    523 N.W. 2d 591 (Iowa 1994) ........................................................ 11, 12

Fed. Mktg. Co. v. Virginia Impression Prod. Co., Inc.,
    823 A.2d 513 (D.C. 2003) ..................................................................... 25

George v. Leavitt,
    407 F.3d 405 (D.C. Cir. 2005) ................................................................ 7

*Golden Pacific Bancorp v. FDIC,
    375 F.3d 196 (2d Cir. 2004), cert. denied,
    126 S. Ct. 621 (2005) .............................................................. 9, 10, 15

Huston v. FDIC,
    800 S.W. 2d 845 (Tex. 1990) ........................................................... 12, 13

In re McCall, No. 93-00632,
    1997 Bankr. LEXIS 1135
    (Bankr. D.D.C. 1997) ............................................................................ 25

In re Milwaukee Cheese Wisconsin, Inc.,
    112 F.3d 845 (7th Cir. 1997) ............................................................. 25, 26

In the Matter of Continental Ill. Sec. Litig.,
    962 F.2d 566 (7th Cir. 1992) ................................................................ 24

Johnson v. Ashcroft,
    445 F. Supp. 2d 45 (D.D.C. 2006) ......................................................... 7

Kiyoichi Fujikawa v. Sunrise Soda Water Works Co.,
    158 F.2d 490 (9th Cir. 1946) ................................................................ 13

Lawson v. FDIC,
    3 F.3d 11 (1st Cir. 1993) ..................................................................... 11

Mills v. Elec. Auto-Lite Co.,
    396 U.S. 375 (1970) .............................................................................. 27

\*_Mitsuo Tagawa v. Clarence K. Karimoto_,
   43 Haw. 1 (Haw. 1958) ........................................................................ 12

_Motion Picture Assn. of America, Inc. v. Oman,_
   969 F.2d 1154 (D.C. Cir. 1992) ......................................................... 24, 26

_Resolution Trust Corp. v. Western Technologies, Inc.,_
   877 P.2d 294 (Ariz. Ct. App. 1994) ........................................................ 27

\*_Rosa v. Resolution Trust Corp.,_
   938 F.2d 383 (3d Cir. 1991) ................................................................. 8

_Stein v. Delano,_
   121 F.2d 975 (3d Cir. 1941) ................................................................ 11

_Suess v. United States,_
   33 Fed. Cl. 89 (1995) ..................................................................... 2, 19

_Suess v. United States,_
   52 Fed. Cl. 221 (2002) ...................................................................... 2

_Swedish Hosp. Corp. v. Shalala,_
   1 F.3d 1261 (D.C. Cir. 1993) ............................................................. 28

_United States v. Winstar Corp.,_
   518 U.S. 839 (1996) ......................................................................... 2

\*_Waterview Management Co. v. Federal Deposit Insurance Corp.,_
   257 F. Supp. 2d 31 (D.D.C. 2003) ......................................... 21, 22, 25, 26

\*_Wilhoit v. FDIC,_
   143 F.2d 14 (6th Cir. 1943) ............................................................... 10

iv

## Statutes and Regulations

11 U.S.C. § 1129(b) .................................................................................................... 24

12 C.F.R. § 360.2 ............................................................................................... 14, 17

*12 C.F.R. § 360.3 ........................................................................................... *passim*

12 C.F.R. § 360.7 ..................................................................................................... 12

12 C.F.R. § 389.11 ............................................................................................ 14, 15

12 C.F.R. § 569a.7 ............................................................................................ 18, 19

12 C.F.R. § 569c.11 ................................................................................... 16, 17, 18

12 U.S.C. § 1441a(b)(4) ............................................................................................ 8

12 U.S.C. § 1813(x)(1) ........................................................................................... 14

*12 U.S.C. § 1821(d) ................................................................................ 8, 9, 22, 23

Financial Institutions Reform, Recovery, and Enforcement Act,
  Pub. L. No. 101-73, 103 Stat. 183 (1989) ................................................ 16, 22, 23

Pub. L. No. 103-66 (1993) ...................................................................................... 23

Tex. Fin. Code Ann.
  § 36.311 (Vernon 1998) ....................................................................................... 12

## Other Authorities

11 Am. Jur. 2d *Banks and Financial Institutions,*
  § 1140 (2006) ..................................................................................................... 11

Aristotle, *Politics* ................................................................................................... 24

H.R. Rep. No. 101-54 (I),
  101st Cong., 1st Sess. (1989) ................................................................................ 8

Moses, *Exodus* ...................................................................................................... 24

Plato, *Treatise de Legibus* .................................................................................... 24

v

BEFORE THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                               )
THE BENJ. FRANKLIN                             )
SHAREHOLDERS LITIGATION FUND,                  )
BY ITS SOLE TRUSTEE, DON S. WILLNER            )
                                               )
              Plaintiff,                        )     Civil Action  No. 06-01025 (EGS)
                                               )
     v.                                        )
                                               )
FEDERAL DEPOSIT INSURANCE CORPORATION          )
AS RECEIVER FOR THE BENJ. FRANKLIN             )
FS&LA, PORTLAND, OREGON                         )
                                               )
              Defendant.                        )
_____)

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT INCLUDING
STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

The Plaintiff in this case, The Benj. Franklin Shareholders Litigation Fund (hereafter

"BFS Lit. Fund") hereby files its motion for summary judgment in the Plaintiff's favor.  As

demonstrated in the accompanying Statement of Uncontroverted Material Facts, there are no

significant facts in dispute here.[1]  The sole issue is whether Plaintiff is legally entitled to *interest*

on the principal amount of a receivership claim that the FDIC approved and paid earlier this

year.  Plaintiff respectfully moves that the Court find that Plaintiff is entitled to the interest that it

seeks and order the Defendant FDIC to pay it without further delay.

_____

[1] Plaintiff's Statement of Uncontroverted Materials Facts (hereafter "Pl. St. Facts") and Plaintiff's
Appendix Containing Affidavit and Documents in Support of Plaintiff's Motion for Summary
Judgment (hereafter "Pl. App.") are being filed this same day.

## I.     BACKGROUND FACTS

### A.     Benj. Franklin FS&LA

The Benj. Franklin Federal Savings & Loan Association, Portland, Oregon ("Benj. Franklin") was a large financial institution that served the borrowing and saving needs of its Pacific Northwest customers for nearly 65 years before it was placed into federal receivership in September 1990.  A 2002 ruling by the U.S. Court of Federal Claims ("CFC") found that a government breach of contract had caused Benj. Franklin to be placed in federal receivership. *Suess v. United States*, 52 Fed. Cl. 221, 225, 230-31 (2002).[2]

### B.     The BFS Lit. Fund[3]

The Plaintiff BFS Lit. Fund was formed shortly after Benj. Franklin was placed in federal receivership in 1990.  It was created to be the repository of cash contributions made by shareholders of Benj. Franklin to fund litigation on behalf of the institution and its shareholders. Don S. Willner, an attorney who practices law in the states of Oregon and Washington, became the sole trustee of the BFS Lit. Fund.  At that time, Mr. Willner had already been hired by several Benj. Franklin shareholders to bring suit against the government based on the government actions that led to the receivership of Benj. Franklin.  *See* n. 2 below.

---

[2]  The *Suess* case was commenced in 1990 when a group of Benj. Franklin shareholders filed suit in the CFC with Don S. Willner as their attorney of record.  In 1995, the CFC confirmed that these plaintiffs were entitled to bring a shareholders' derivative action for damages based on the government's conduct.  *Suess v. United States*, 33 Fed. Cl. 89, 94 (1995).  In 1996, the U.S. Supreme Court found government breaches of contract in three similar cases involving other savings and loan associations.  *United States v. Winstar Corp.,* 518 U.S. 839 (1996).  In 1998, the government's liability for breach of contract was established in the *Suess* case involving Benj. Franklin, and a damages trial was held in 1999.  This resulted in the above-cited 2002 decision, which is not yet final due to pending motions for reconsideration.

[3]  The pertinent facts in this section are uncontroverted as demonstrated in Pl. St. Facts ¶¶ 1-4.

2

After its 1990 creation, the BFS Lit. Fund collected shareholder contributions and paid legal expenses related to the aforementioned shareholder derivative action in the CFC.  In addition, when the IRS aggressively pressed a tax claim against the Benj. Franklin receivership in 2002, Mr. Willner filed suit in the U.S. District Court in Portland, Oregon, seeking to enjoin the FDIC-Receiver from paying the alleged tax.  And when the IRS sued the FDIC in this Court later in 2002 for the allegedly overdue tax, Mr. Willner filed a motion to intervene in that action, again on behalf of the same shareholder derivative plaintiffs.  The Plaintiff BFS Lit. Fund paid bills for legal work performed by Mr. Willner and by other attorneys, consultants, experts, and staff supervised by Mr. Willner from 1990 to 2006.

By mid-2006, approximately 4200 shareholders of Benj. Franklin had contributed a little over $3 million to the BFS Lit. Fund.  These contributors represented nearly two-thirds of the total number of Benj. Franklin shareholders (6500) as of September 1990 when the institution was placed in receivership.

### C.    <u>The Receivership Surplus</u>[4]

It is significant in this case that the Benj. Franklin receivership has a surplus – both because surplus receiverships for closed financial institutions are rare and because the surplus enables the FDIC to pay the interest sought by the Plaintiff if the Court determines that FDIC should do so.  Moreover, as discussed below, both case law and the history of the receivership regulations and statutes demonstrate that the existence of a surplus is directly relevant to whether interest may and should be paid to a receivership claimant.

---

[4] *See* Pl. St. Facts ¶¶ 6-10.

3

As of the spring of 2006, the Benj. Franklin receivership reported a surplus in the amount of approximately $94 million although the IRS at that time asserted a tax liability against the receivership for approximately $1.2 billion.  As a result of lengthy and ultimately successful settlement negotiations, on May 2, 2006, this Court approved the settlement of the alleged tax liability of the Benj. Franklin receivership for a payment of $50 million to the IRS, which the FDIC Receiver paid immediately after the Court's approval.   This left an approximately $44 million surplus in the receivership.  Since then, the FDIC Receiver has made a *pro rata* distribution of most of the surplus funds to the shareholders of Benj. Franklin, but FDIC has reserved sufficient funds to pay in full all of the remaining pending claims against the receivership, including this claim for interest.[5]  The FDIC has also paid post-insolvency interest to the entire depositor class of Benj. Franklin (including to FDIC itself) and to all trade creditors. *See* Pl. App. at 35-38 (disclosing post-insolvency interest payments to other claimants in the Benj. Franklin receivership and to claimants in other bank and thrift receiverships).

Based on the receivership surplus, it is undisputed that the effect of FDIC's paying the interest sought by the BFS Lit. Fund will simply be to reduce the next surplus distribution to *all* Benj. Franklin shareholders so that two-thirds of the same shareholders (*i.e.,* those who contributed to the BFS Lit. Fund) may be paid interest on their contributions.  No payment of

---

[5] FDIC's partial distribution to shareholders in the summer of 2006 was approximately $31 million.  The FDIC Receiver kept approximately $6 million in reserve for other smaller claims pending against the Benj. Franklin receivership, including this claim by the BFS Lit. Fund. Although the amount of interest due to Plaintiff has not yet been calculated, it is estimated to be between one and two million dollars.

government money or taxpayer funds is sought here – just a finding that the contributing

shareholders are entitled to receive this small portion of the remaining surplus, *as interest,* before

the remainder of the surplus is distributed to all of the shareholders.

### D.  The 2004 Letter Agreement[6]

In 2004, representatives of the FDIC, the Tax Division of the U.S. Department of Justice

("DOJ"), the Internal Revenue Service ("IRS"), and several attorneys for Benj. Franklin

shareholders (including Mr. Willner) were working together in an effort to settle the alleged tax

liability of the Benj. Franklin receivership.  Mr. Willner (for his Benj. Franklin shareholder

clients) and FDIC representatives also engaged in separate discussions apart from the IRS and

the DOJ.  In a letter dated November 8, 2004, Mr. Willner set out points of agreement that had

been reached between the FDIC and himself.  Pl. App. at 29-30.  FDIC Senior Counsel Robert

Clark concurred completely with Mr. Willner's letter in Mr. Clark's November 9, 2004 reply.

Pl. App. at 31.

This letter agreement between Mr. Willner and the FDIC included their mutual

understanding about how the Benj. Franklin shareholders would be notified about the proposed

tax settlement and how a fairness hearing would be requested from the Court to give

shareholders an opportunity to respond to the proposed tax settlement.  Pl. App. at 29 ¶¶ 1 - 4.  It

also set out the procedure that would be followed to make distributions from the receivership

surplus "before a partial distribution is made to all Benj. Franklin shareholders."  Pl. App. at 29-

30 ¶ 5.  As to the BFS Lit. Fund, the November 2004 letter agreement provided that FDIC and

---

[6] *See* Pl. St. Facts ¶¶ 11-16.

the Benj. Franklin shareholders represented by Mr. Willner would recommend the following

distribution from the Benj. Franklin receivership surplus:

> A distribution to the Benj. Franklin Shareholders Litigation Fund [ ]
> to reimburse all contributions to that fund.  (This is approximately $3
> million of contributions by about 4,200 shareholders . . . .)  This
> matter will be handled as a claim and will be determined through the
> receivership process.  The Litigation Fund will submit its claim in the
> near future.  *Interest will be determined under the applicable
> provisions of the receivership priority system;*

*Id.* at ¶ 5(b) (emphasis added).  In accordance with this agreement, in 2005, the BFS Lit. Fund

filed its receivership claim for all shareholder contributions made to the BFS Lit. Fund and for

interest on that amount.  (A copy of that claim is attached as Exhibit A to the Plaintiff's

Complaint.)

### E.    The FDIC's Actions on the BFS Lit. Fund's Claims[7]

By letter dated May 24, 2006, the FDIC-Receiver allowed and approved the BFS Lit.

Fund's claim for the principal amount of all shareholder contributions made to the Fund in the

amount of $3,067,159.77 and sent a check in that amount to the BFS Lit. Fund's Trustee Don S.

Willner.  Pl. App. at 33-34.  Mr. Willner immediately distributed this money to the shareholders

who had contributed to the BFS Lit. Fund.

However, by letter dated May 11, 2006, the FDIC-Receiver *disallowed* the BFS Lit.

Fund's claim for interest on the $3,067,159.77 of principal, stating the following as FDIC's

reason for the disallowance:

> No interest is due on the Fund's claim because the
> most appropriate characterization of the Fund's claim

---

[7] *See* Pl. St. Facts ¶¶ 17-20.

> is as an administrative claim and, as such, no interest is authorized under the applicable priority of claim, formerly 12 CFR § 569c-11, now found at 12 CFR § 360.3. Under that priority of claim, only depositors and general creditors are entitled to interest, in the event of a surplus, and the fund is neither a depositor nor a general creditor.

Pl. App. at 32. In response, the Plaintiff BFS Lit. Fund timely filed suit in this Court on June 2, 2006.[8]

## II.   LEGAL ARGUMENT

### A.   The standards for summary judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); D.D.C. Civ. R. 56(c). A dispute over a material fact is "genuine" if the evidence is "such that a reasonable jury could return a verdict for the non-moving party." *George v. Leavitt*, 407 F.3d 405, 410 (D.C. Cir. 2005). Disputes about facts that are not outcome determinative do not preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *See also Johnson v. Ashcroft*, 445 F. Supp. 2d 45, 48-49 (D.D.C. 2006) (summarizing and applying the standards described by the Supreme Court in *Anderson* and in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Based on the factual admissions in the FDIC's Answer and the uncontroverted documents contained in the Plaintiff's Appendix, this motion is the appropriate vehicle to resolve the Plaintiff BFS Lit. Fund's claim for relief.

---

[8] The FDIC's letter denying the claim for interest specifically stated that the BFS Lit. Fund could file a lawsuit on the same claim in this Court. Pl. App. at 32. And FDIC's Answer acknowledges that this Court has both jurisdiction and venue to hear and resolve this claim under 12 U.S.C. § 1821(d)(6). Answer at ¶¶ 9-10.

Moreover, the FDIC's prior disallowance of Plaintiff's claim in its administrative review process is not entitled to deference by this Court. In enacting 12 U.S.C. § 1821(d) (6) – the statute under which Plaintiff brings its action – Congress confirmed that a receivership claimant is entitled to a *de novo* review of its claim by a U.S. District Court, rather than a simple review of FDIC's prior disallowance. *See* H.R. Rep. No. 101-54 (I), 101st Cong., 1st Sess. (1989), reprinted in 1989 U.S.C.C.A.N. 86, 214-15.[9] *See also Rosa v. Resolution Trust Corp.,* 938 F.2d 383, 396 (3d Cir. 1991) (the receivership claims procedure "gives a claimant the opportunity to sue in a *de novo* court action a maximum of six months after it files its claim [with FDIC or RTC]").[10]

**B.    Receivership case law is clear that interest should be paid on claims when a surplus exists to do so.**

The FDIC's powers as a receiver are set out in statute at 12 U.S.C. § 1821(d) and in FDIC's regulations at 12 C.F.R. Part 360. These include the power to "determine claims," 12 U.S.C. § 1821(d)(3)(A), and to "pay creditor claims which are allowed by the receiver . . . or determined by the final judgment of any court of competent jurisdiction," but only "*to the extent*

---

[9] Just prior to the 1989 enactment of the cited statute, the Supreme Court had declared that another banking agency did not have statutory authority to "adjudicate" creditor claims in receivership and thus the government could not "preclude claimants from resorting to the courts for a determination of the validity of their claims." *Coit Independence Joint Venture v. Fed. Sav. & Loan Ins. Corp.*, 489 U.S. 561, 573 (1989). The same 1989 House Report cited above noted that the new claims procedures set out in FIRREA were responsive to the constitutional and statutory concerns outlined in *Coit*.

[10] Case law about the Resolution Trust Corporation ("RTC") is equally applicable to the FDIC because the RTC operated under the same statutory authority as FDIC during RTC's temporary (six-year) existence. *See* 12 U.S.C. § 1441a(b)(4) (granting RTC the same powers and rights that FDIC possessed under the federal receivership statutes applicable to financial institutions).

*funds are available.*" 12 U.S.C. § 1821(d)(10) (emphasis added). It is undisputed that surplus

funds "are available" in the Benj. Franklin receivership. Pl. St. Facts ¶¶ 6-10.

In *Golden Pacific Bancorp v. FDIC*, 375 F.3d 196, 203-204 (2d Cir. 2004), *cert. denied,*

126 S. Ct. 621 (2005), the Court affirmed the lower court's conclusion that the receivership

surplus in the Golden Pacific National Bank was appropriately used by the FDIC Receiver to pay

post-insolvency interest to the FDIC itself on its subrogated claim acquired after FDIC paid off

the insured depositors of the bank. In that case (as here), the FDIC had repaid all of the principal

owed to the bank's creditors and had surplus funds remaining, so "*FDIC then began to make*

*interest payments to creditors," including to FDIC itself and to "hundreds of non-FDIC*

*creditors . . . ." Id.* at 199 (emphasis added). After paying such interest, the FDIC Receiver had

no funds remaining for distribution to the bank's holding company shareholder so the

shareholder sued, alleging, *inter alia*, that FDIC lacked authority to pay the post-insolvency

interest to itself. The Second Circuit disagreed:

> [T]he Supreme Court has long since recognized the general
> proposition that creditors to a liquidation are entitled to
> interest, just as any other judgment creditor, *even absent*
> *specific statutory authorization.*

*Id.* at 203 (emphasis added) (internal citations omitted).[11]

---

[11] Interestingly, by distributing all of the Golden Pacific National Bank's receivership surplus as interest payments on creditor claims, the FDIC Receiver also "eliminated any possible surplus that might exist . . . to the benefit of the IRS," as well as eliminating any surplus for distribution to the bank's shareholder. *Golden Pacific*, 375 F.3d at 205. Here, the Benj. Franklin Receiver has already paid depositors and claimants as well as the IRS *and* a preliminary distribution has already been made to Benj. Franklin's shareholders. Thus, there is no one left to complain if FDIC pays the interest sought by the Plaintiff here.

In this case, the FDIC's sole reason for not paying the BFS Lit. Fund's claim for interest is that "no interest is authorized under the applicable priority of claim . . . at 12 C.F.R. § 360.3." Pl. App. at 32. But an express authorization for interest to be paid to claimants in an FDIC receivership did not appear in FDIC regulations until 1989 (as discussed in detail below) – and such an authorization has never appeared in an FDIC statute. But, as *Golden Pacific* held, this fact does not prevent FDIC's paying claims for interest to itself and to other claimants. Indeed, for many decades before FDIC's 1989 regulation first mentioned interest payments, bank receivers *were paying interest*, which federal courts consistently approved. *See Wilhoit v. FDIC*, 143 F.2d 14, 18 (6th Cir. 1943) (affirming the Receiver's interest payments to FDIC even though its statute "neither expressly prohibits nor expressly allows interest to the [FDI] Corporation"); *FDIC v. George-Howard,* 153 F.2d 591 (8th Cir. 1946) (setting aside the lower court's order authorizing the distribution of a closed bank's surplus to its sole shareholder because interest had not yet been paid to the allowed claimants, including the FDIC itself); *FDIC v. Citizens State Bank of Niangua*, 130 F.2d 102, 103 (8th Cir. 1942) (noting that FDIC has a right to interest on its "claim as subrogee of the amount paid depositors . . . out of a surplus remaining in the [liquidator's] hands after payment of the principal amount of all claims against the Bank"). The *Citizens State Bank* decision also concluded that if interest were not permitted to FDIC, its payments to protect the bank's depositors would become "a source of profit to stockholders of a defaulting bank, at the expense of the [FDI] Corporation." 130 F.2d at 104, n.6.[12]

---

[12] The First Circuit explained FDIC's subrogated insurance claims in plain English: "when the FDIC has paid an insurance claim to a [bank] depositor or arranged for a healthy insured bank to take over the deposits, then the FDIC in its corporate capacity is subrogated to – *i.e.,* takes over – the depositor's claims against the failed bank that it has just paid. [This] . . . allows the FDIC as

10

Similarly, in *FDIC v. De Jesus Velez*, 514 F. Supp. 829, 836 (D.P.R. 1981), the Court noted that payment of a subordinated debt holder's claim against a failed bank's receiver must follow the receiver's payment of all depositors and creditors, including FDIC, "*plus interest* and the [FDIC's] cost of collecting," (emphasis added), *aff'd on other grounds*, 678 F.2d 371 (1st Cir. 1982).  *See also Stein v. Delano*, 121 F.2d 975 (3d Cir. 1941) (affirming the right of creditors in a national bank receivership to receive interest on their debt from the receivership's surplus – even if this reduced or eliminated the surplus that would remain for distribution to the shareholders);  *Citizens State Bank of Lometa v. FDIC*, 946 F.2d 408, 416-17 (5th Cir. 1991) (noting that courts deny post insolvency interest when "such an award would violate the rules of 'ratable' distribution  . . . . [However, an] exception[ ] to this rule [is] where the assets of the receivership are sufficient to pay all provable claims in full . . . .").  *See also* 11 Am. Jur. 2d *Banks and Financial Institutions,* § 1140 (2006): "If . . . the assets of the insolvent bank do in fact turn out to be sufficient to meet all demands and leave a surplus over, interest on *all claims* will . . . be allowed out of the surplus to the creditors . . . ."  (Emphasis added.)

State court decisions also have generally favored FDIC's requests to pay interest to itself. *See FDIC v. Iowa Growthland Fin. Corp.,* 523 N.W. 2d 591, 594 (Iowa 1994) (rejecting the shareholders' contention "that the FDIC is barred from collecting interest in the absence of specific statutory authorization" and noting that interest on a receivership debt owed to FDIC

---

insurer to share in whatever assets (held custodially by the FDIC as receiver) may be left over for creditors."  *Lawson v. FDIC*, 3 F.3d 11, 16 (1st Cir. 1993).

"turns on consideration of justice and equity, not explicit statutory authorization");[13] *Bates v. Farmers Sav. Bank of Ankeny*, 3 N.W. 2d 517 (Iowa 1942) (finding FDIC entitled to interest on its own claim where the receiver had paid all other claims in full and declaring (at p. 521) that the interest payment "shall have priority in payment before any distribution is made to the preferred stockholders"). *See also Mitsuo Tagawa v. Clarence K. Karimoto*, 43 Haw. 1, 9 (Haw. 1958) (noting that under applicable law, a failed bank in liquidation should pay interest "where there is a sufficient surplus after payment of the principal," and "the payment of interest is made because it is equitable to do so once there is a surplus").

Contrary to the foregoing decisions, the Supreme Court of Texas held in 1990 that the FDIC was not entitled to interest on its subrogated depositor claims because the Texas "Priority of Claims" statute did not expressly identify interest payments. *Huston v. FDIC,* 800 S.W. 2d 845, 849 (Tex. 1990). However, the Texas statute at issue was amended in 1993 to provide that insured Texas banks in liquidation would utilize the same priority of claims procedures applicable to "national banks under federal law."[14] Moreover, in 2002, the FDIC made clear in a new regulation that post-insolvency interest could be paid on all proven claims (in post-2002 receiverships) if surplus funds existed to do so. 67 Fed. Reg. 34,386 (May 14, 2002), as codified at 12 C.F.R. § 360.7. Thus, the holding in *Huston v. FDIC* was superceded by

---

[13] In *Iowa Growthland*, the Court reduced the rate of interest sought by FDIC. 523 N.W. 2d at 595-96. But there is no dispute here about the rate of interest sought by the Plaintiff BFS Lit. Fund because the parties have agreed to use the interest calculation set out in 12 C.F.R. § 360.7 (the same as § 360.3(b)) if the Court determines that interest should be paid. Pl. St. Facts ¶ 21.

[14] *See* Texas Code, Title 16, Chapter 8, Art. 342-804a (1994), later recodified in 1995 as Title 16, Chapter 7, Art. 342-7.311 (1996) and recodified again in 1997 as Title 3, Chapter 36, § 36.311 (1998). *See* Tex. Fin. Code Ann. § 36.311 (Vernon 1998).

both legislative and regulatory amendments.  More importantly for this motion, the dissenting

opinion in *Huston* persuasively declared:  "Like the federal courts, every state court which has

ever considered whether interest should be paid on the claims of creditors of a bank in

liquidation has held interest allowable.  800 S.W. 2d at 851 (listing over 20 state court decisions

approving interest payments to receivership claimants!).

        Returning to the federal courts, the Ninth Circuit also ruled that a bank in receivership in

Hawaii should pay interest on all claims previously made to the receiver after it became clear

that there were ample surplus funds to pay the interest.  *Kiyoichi Fujikawa v. Sunrise Soda Water*

*Works Co.,* 158 F.2d 490 (9th Cir. 1946).  The Court noted that:

> [I]f, as a result of good fortune or good
> management, the estate proved sufficient
> to discharge the claims in full, interest as
> well as principal should be paid.

*Id.* at 494, quoting *American Iron Co. v. Seaboard Air Line,* 233 U.S. 261, 266-67 (1913)

(internal citations omitted).  This quotation is particularly apt here because surplus receiverships

for savings and loan associations have been rare over the years, but due to "good management"

before Benj. Franklin's closure and "good fortune" with FDIC's management and investment of

the receivership's liquidated assets, there is a significant surplus in the Benj. Franklin

receivership so that "interest as well as principal should be paid" here as well.  *Kiyoichi*, 158

F.2d at 494.

13

**C.    The background of FDIC's receivership law confirms the appropriateness of paying interest here.**

The FDIC regulation that was in effect in September 1990 when Benj. Franklin was placed in federal receivership, set out the following order of priority for unsecured claims against the institution or the receiver:

(1)    Administrative expenses of the receiver, including the costs, expenses and debts of the receiver;

(2)    Administrative expenses of the association . . . ;

(3)    Claims for wages and salaries . . . by an employee of the association whom the receiver determines . . . to retain . . . ;

(4)    [C]laims for wages and salaries . . . by an employee . . . not retained . . .;

(5)    Claims . . . for unpaid taxes, other than federal income taxes . . .;

(6)    Claims for withdrawable accounts, including those of the Corporation as subrogee or transferee and all other claims which have accrued and become unconditionally fixed on or before the date of default . . .; [15]

(7)    Claims other than those that have accrued and become unconditionally fixed on or before the date of default, including claims for interest after the date of default on claims under paragraph (a)(6) of this section . . .;'

(8)    Claims . . . for unpaid federal income taxes;

(9)    Claims that have been subordinated . . . to general creditor claims . . . ; and

(10)    Claims by holders of nonwithdrawable accounts, including stock . . . .

12 C.F.R. § 389.11 (1990).  This regulation was redesignated as 12 C.F.R. § 360.2 in November 1990, and redesignated as 12 C.F.R. § 360.3 effective in January 1994, where it remains today.[16]

---

[15] The "date of default" means the date the institution was placed in federal receivership.  12 U.S.C. § 1813(x)(1).

[16]  In 1993, Congress enacted a *statutory* priority system for claims made in bank and thrift receiverships established after that date, so the FDIC amended the above quoted priority

14

Two other provisions in the regulation are pertinent.  Subsection (b) provides:

> (b) Interest after the date of default on claims under
> paragraph (a)(6) of this section shall be at a rate
> or rates adjusted monthly to reflect the average
> rate for U.S. Treasury bills with maturities of
> not more than ninety-one (91) days during the
> preceding three (3) months.

12 C.F.R. § 389.11(b)(1990); 12 C.F.R. § 360.3(b) (2006).  Although this subsection addressed

interest on Level 6 claims in particular (which include FDIC's subrogated depositor claims),

nothing in the text of the regulation prohibits claims for interest on *other* levels of receivership

claims as well, so long as they were filed by a claimant pursuant to the government's

receivership procedures. *Golden Pacific*, 375 F.3d at 203 ("creditors to a liquidation are entitled

to interest . . . even absent specific statutory authorization").

Finally, subsection (d) of the regulation recognizes that each level of claim is to be paid

in full before the receiver moves to the next lower level:

> All unsecured claims of any category or class or
> priority described in [Levels 1 through 10] . . . of
> this section shall be paid in full, or provision made
> for such payment, before any claims of lesser
> priority are paid.  If there are insufficient funds to
> pay all claims of a category or class in full,
> distribution to claimants in such category or class
> shall be made *pro rata*.

12 C.F.R. § 389.11(d)(1990); 12 C.F.R. § 360.3(d) (2006).  Although Plaintiff's claim here is

likely to be Level 7 rather than Level 6 (as addressed in more detail below), there is no reason

---

regulation to clarify that its provisions apply only to receiverships established before August 10,
1993.  12 C.F.R. § 360.3(f) (2006).  Because Benj. Franklin was placed in receivership in
September 1990, there is no dispute that § 360.3 continues to apply to the Benj. Franklin
receivership.

15

not to apply the same interest provisions to Plaintiff's claim as long as the Level 6 claims have already been satisfied.  In this case, the Level 6 claims were, in fact, all satisfied many years ago and post-insolvency interest has already been paid to the Level 6 claimants.  Thus, Plaintiff's Level 7 claim for interest is next in line.[17]

Moving backward in time, the same priority regulation had been on the books of the Federal Home Loan Bank Board ("FHLBB") in 1988 and 1989 before that agency and its insurance arm, the Federal Savings & Loan Insurance Corporation ("FSLIC") were abolished in legislation known as the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA").[18]  When the priority regulation belonged to FHLBB/FSLIC, it was codified at 12 C.F.R. § 569c.11 (1989).  Following FIRREA, the former FHLBB/FSLIC regulations pertaining to insurance of accounts and receiverships were transferred to the FDIC in late 1989.  By late 1990, FDIC decided which of the former FHLBB/FSLIC regulations it would keep and which

---

[17] In fact, the FDIC Receiver for Benj. Franklin has already paid other claimants in even *lower* levels of priority.  "Claims . . . for unpaid federal income taxes" are Level 8 under 12 C.F.R. § 360.3(a)(8).  The tax settlement payment to the IRS by the Benj. Franklin Receiver was made in May 2006 and more than 75% of the amount was designated to be treated as interest on the alleged tax liability, with the remainder to be treated as payment of the tax.  Pl. App. at 23.  Thus, both principal and interest were paid on the IRS's Level 8 claim, while the BFS Lit. Fund's Level 7 claim remains unpaid.

[18] Pub. L. No. 101-73, 103 Stat. 183 (1989).  Prior to FIRREA's enactment, the FHLBB was the principal regulator of Benj. Franklin and the FSLIC insured the qualifying savings accounts of the institution.  When FIRREA abolished those agencies, it expressly provided that their regulations would be transferred to the agencies that would succeed the FHLBB and FSLIC.  FIRREA ¶¶ 401-402.  The FDIC succeeded to all of the FHLBB and FSLIC's regulations about receiverships and deposit insurance.

would be discarded.  As noted above, the receivership priority regulation was renumbered and kept by the FDIC.[19]

As a result of these facts, the "regulatory history" of the priority rule may be found in the predecessor regulations and public statements made about them by the FHLBB.  This is important in understanding how those regulations were meant to address claims for interest, as described in the following section.

1.      Regulatory history supports the Plaintiff's claim.

When the 10-Level priority system was first enacted by the FHLBB in 1988 – as 12 C.F.R. § 569c.11 – the agency explained that the rule would make interest available to creditors as well as depositors:

> New § 569c.11(b) specifically addresses the right of *general creditors* and depositors *to receive interest after the date of default if a surplus is available* and provides that this interest be paid at rates adjusted monthly to reflect the average rate for U.S. Treasury Bills with maturities of not more than 91 days during the preceding three months.  The new uniform rate of interest will avoid any uncertainty about the rate to be paid and will eliminate disputes about the possible applicability of State law concerning *interest due to creditors* or depositors under certain circumstances.

53 Fed. Reg. 25,129, 25,131 (July 5, 1988) (emphases added).  The FHLBB's explanation did not suggest that Level 6 creditors (whose claims arose before default) were intended to be treated differently than Level 7 creditors (whose claims arose after default) *if a surplus was available to*

---

[19] The formal allocation to the FDIC of the FHLBB/FSLIC rules about receivership may be found at 54 Fed. Reg. 41,359 (Oct. 6, 1989).  FDIC's initial transfer and renumbering of these rules is reported at 54 Fed. Reg. 42,799 (Oct. 18, 1989).  FDIC published a notice about which regulations it would keep and which would be terminated at 55 Fed. Reg. 34,281 (Aug. 22, 1990), and FDIC finalized these decisions at 55 Fed. Reg. 46,495 (Nov. 5, 1990) (which retained the priority distribution rule at 12 C.F.R. 389.11, but renumbered it as 12 C.F.R. § 360.2).

*satisfy both.*   A nearly identical explanation had been published by the FHLBB when the same regulation was proposed for public comment in 1985:

> Section 569c.11(b) would specifically address the right of *all general creditors* and depositors *to receive interest after the date of default if a surplus is available* and would provide that this interest be paid at rates adjusted monthly to reflect the average rate for U.S. Treasury Bills with maturities of not more than 91 days during the preceding three months. . . . The new uniform rate of interest will avoid any uncertainty about the rate to be paid and will eliminate disputes about the possible applicability of state law concerning *interest due to creditors* or depositors under certain circumstances.

50 Fed. Reg. 48,970, 48,981 (Nov. 27, 1985) (emphases added).

Traveling even further back in time, the FHLBB/FSLIC receivership regulation that preceded the 1988 rule also recognized the availability of interest on claims made by creditors of all kinds.  The 1968 FSLIC regulation at 12 C.F.R. § 569a.7 (1969) entitled "Priority of Claims" set out five levels of priority – with Level 3 covering "All claims of general creditors . . ." – with no distinction made for creditors before default and creditors after default.  And consistent with its later versions, this rule also encouraged the payment of interest if there was a sufficient surplus to do so:

> (6) Interest at the rate of 5 per centum per annum from the date of default on the outstanding principal amount of all claims which qualify under subparagraphs [*i.e.,* levels] (3), (4), and (5) of this paragraph; and *if the surplus is not sufficient to pay such post-default interest in full* on all claims specified in this subparagraph, *the payment of interest shall be made pro rata on all such claims* without regard to any priorities as to the payment of principal on said claims.

33 Fed. Reg. 14,366, 14,368 (9/24/68), quoting new 12 C.F.R. § 569a.7(a)(6) (emphases added).[20]

While the formula for interest calculations changed over time, the logic of this earlier regulation

about interest being available – separate from the principal amount of a receivership claim – has

not changed as long as a surplus is "sufficient to pay such post-default interest in full." *Id.*

Moreover, in none of the subsequent amendments to the regulation did the FHLBB or the FDIC

indicate any intention to eliminate interest payments to all claimants in surplus receiverships.

           2.     <u>The Plaintiff's Level 7 claim is ripe for payment.</u>

As quoted above, the priority rules do not expressly reference interest on claims except

for Level 7's statement about "claims for interest after the date of default on [Level 6]

claims . . . ." This language is clearly illustrative and does not exclude *other claims* for interest

that might be sought at any of the other priority levels. Indeed, the FDIC's conclusion that the

BFS Lit. Fund's claims should be viewed as "an administrative claim" – which is what FDIC's

denial letter (Pl. App. at 32) stated – would make it a Level 1 Claim.[21] But based on the case

---

[20] In 1981, the FHLBB/FSLIC priority regulation was amended twice. The first amendment
eliminated the 5% interest rate in favor of the FSLIC's "current investment opportunity rate"
determined on a quarterly basis. 46 Fed. Reg. 29,246 (June 1, 1981) (retaining the language
about paying "interest in full" only if a sufficient surplus existed to do so). The second
amendment adjusted the interest rate further "to reflect market sensitivity in investments" and
established a new rate to follow the 91-day U.S. Treasury bill rate for each preceding quarter. 46
Fed. Reg. 54,922 (Nov. 5, 1981). This rate for interest calculations remains the same today in
the FDIC's rule at 12 C.F.R. § 360.3(b) (2006).

[21] Administrative expenses of the receiver (Level 1 claims) cover things such as payments to the
attorneys, accountants, and other consultants hired by the Receiver to assist with the receivership
and liquidation of assets. These claimants' invoices are typically paid without delay so that
requests for interest on unpaid Level 1 claims are probably a rare occurrence. But the Receiver
did not hire Mr. Willner to bring the shareholders derivative case in the CFC in 1990. Indeed,
that case was filed only after FDIC's predecessor RTC declined to file such an action itself.
*Suess*, 33 Fed. Cl. at 96-97. Moreover, it was not until the 2004 letter agreement between
Mr. Willner and the FDIC that FDIC agreed to repay part of the costs of the Benj. Franklin

law and regulatory history discussed above, there is no reason that Level 1 claims (or any other level of claims) should not be entitled to interest in surplus receiverships just as Level 6 claimants are. Indeed, the FDIC's only reason for denying interest on what FDIC perceived as the BFS Lit. Fund's Level 1 administrative claim is that "no interest is authorized under the applicable priority of claim . . . at 12 C.F.R. § 360.3." Pl. App. at 32. But we have previously demonstrated that a lack of regulatory authorization has never prevented FDIC from paying interest on its own receivership claims, and we have also demonstrated that the regulatory history of the provision does not support such a restrictive view. Moreover, in *Bailey v. United States*, 53 Fed. Cl. 251, 254 (2002), the U.S. Court of Federal Claims concluded that an FDIC Receiver *would* pay interest on its Level 1 receivership expenses if it had sufficient funds to do so:

> [T]he FDIC would first pay the . . . expenses it incurred . . . such as attorneys fees and any advances . . . *including any interest* [citing] . . . 12 C.F.R. § 360.3(a)(1).

(Emphasis added.) The *Bailey* decision also referenced § 360.3(a)(6) and (7) – Priority Levels 6 and 7 – and noted that interest also would be paid from "excess monies" on the advances "incurred by paying off [the failed bank's] depositors." *Id.* at 254. The Court of Appeals affirmed this decision on other grounds. *Bailey v. United States*, 341 F.3d 1342 (Fed. Cir. 2003).

Plaintiff believes that its interest claim here more properly falls into Level 7 for "Claims other than those that have accrued and become unconditionally fixed on or before the date of default . . . ." 12 C.F.R. § 360.3(a)(7). Plaintiff's claim did not accrue before default (*i.e.,* before

---

shareholders' litigation by refunding the BFS Lit. Fund for the shareholders' contributions to the Fund. And it was not until May 2006 that the FDIC Receiver did reimburse the Lit Fund's principal to the Plaintiff. It is therefore difficult to categorize these costs as "administrative expenses of the receiver" under 12 C.F.R. § 360.3(a)(1).

receivership) because the BFS Lit. Fund was not created until after Benj. Franklin was in receivership. *See also* n.21 *supra*. And by filing its claim in 2005 (following FDIC's invitation that Plaintiff do so in the 2004 letter agreement), the BFS Lit. Fund became a general creditor of the receivership.

Moreover, the interest sought by the Plaintiff may be viewed as a separate claim in and of itself because the 2004 letter agreement between Mr. Willner and the FDIC dealt with principal and interest separately. *See* Pl. App. at 29-31. In that agreement, FDIC acquiesced to the reimbursement of the approximately $3 million principal amount of contributions made by Benj. Franklin shareholders to the BFS Lit. Fund; but as to interest, FDIC agreed only that "Interest will be determined under the applicable provisions of the receivership priority system." Pl. App. at 30 ¶ 5(b). Thus, the Plaintiff's claim for interest may be viewed as a separate claim under the receivership priority system and not just part of the BFS Lit. Fund's claim for reimbursement of its $3 million of principal.

In *Waterview Management Co. v. Federal Deposit Insurance Corp.,* 257 F. Supp. 2d 31, 33-35 (D.D.C. 2003), the same ten-level priority system (as quoted *supra* at p. 14) was described in connection with a previous jury award of damages against the FDIC based on its predecessor RTC's repudiation of a contract. Judgment was entered against FDIC for $2.5 million of compensatory damages and approximately $736,000 of prejudgment interest. FDIC advised the Court that the "claim for damages was a priority six claim, while the claim for prejudgment interest constituted a priority seven claim." *Id.* at 33. The Court quoted FDIC's reasoning for the prejudgment interest being categorized as a Priority seven claim: "because it

is a claim for interest accrued after the date of default" and because it fit the plain language of

Level 7:

> and thus is "a claim [ ] other than those that have accrued
> and become unconditionally fixed on or before the date of
> default, including [but not limited to] claims for interest
> after the date of default on claims under paragraph (a)(6) of
> this section."  12 C.F.R. § 360.3(a)(7).

*Waterview,* 257 F. Supp. 2d at 34.  In the *Waterview* case, the *pro rata* distribution by the

receiver had paid only part of the Level 6 claims and there was nothing left for Level 7

claimants.  *Id.*  But FDIC conceded that there were "*exceptions to its ratable distribution rule . . .*

[including] *where the assets of the receivership are sufficient to pay all provable claims in full*

*. . . .*"  *Id.* at 35 (emphasis added).  The same logic should be used to identify the BFS Lit.

Fund's claim for interest as a Level 7 claim, and the same exception applied (because of the

surplus here) to pay Plaintiff's claim "in full."  *Id.*

> 3. <u>FIRREA's guidance also supports the Plaintiff's claim.</u>

Although the 1989 enactment of FIRREA did not alter the priority regulation that

governs distributions from the Benj. Franklin receivership, FIRREA did provide two new

statutory directions to FDIC Receivers.  *See* Pub. L. No. 101-73, § 212, 103 Stat. 183, 231-32

(1989), amending 12 U.S.C. § 1821(d)(11) to read as follows:

> (11) <u>Distribution of Assets.</u>
>
> (A) Subrogated Claims; Claims of Uninsured Depositors *and Other
> Creditors*.  – The receiver shall –
>
> (i) retain for the account of the Corporation [amounts due to
> FDIC from]  . . .  the subrogation of the claims of
> depositors; and
>
> (ii) pay to depositors *and other creditors* the net amounts

22

available for distribution to them

(B)    Distribution to shareholders of amounts remaining after payment of all other claims and expenses –

In any case in which funds remain after all depositors, *creditors, other claimants* and administrative expenses are paid, the receiver shall distribute such funds to the depository institution's shareholders . . . .

(Emphases added.)  This language remained until 1993 when it was replaced by a new § 1821(d)(11) that prioritized the order of payment for unsecured claims.  Pub. L. No. 103-66, § 3001(a) (1993).  But because the 1989 language still applies to the Benj. Franklin receivership, it is noteworthy that FIRREA placed "*other creditors*" on an equal footing with depositors in subsection 1821(d)(11)(A) for receiving distributions of surplus funds after FDIC's own subrogated claims were satisfied.  And this provision of FIRREA made no distinction between creditors whose claims arose before default (*i.e.,* receivership) and those arising after default.

Moreover, in subsection (d)(11)(B), Congress placed "all depositors, *creditors* [and] *other claimants*" ahead of the final distribution to shareholders – adding the even more general category of "other claimants" to the list of depositors and creditors who could seek to collect from a financial institution receivership.  The BFS Lit. Fund claimed both a return of the principal amount of its shareholders' contributions and the interest on such amounts, and thus Plaintiff became one of the "other claimants" under this statutory provision.  Plaintiff has filed its claim for interest and "funds remain" to pay that interest, thus satisfying the statutory guidance set out in FIRREA.

23

**D.    Paying the claimed interest is fair and equitable.**

1.    Repaying principal without interest does not make the contributors whole.

FDIC's reimbursement of only the principal sum of the shareholders' contributions does not compensate completely because the value of a dollar decreases over time. Indeed, when the BFS Lit. Fund Trustee reimbursed each shareholder's contributions earlier this year, each person received only a fraction of the real value of his/her payments made to the Lit. Fund since 1990. An award of interest will provide the missing value. *See Motion Picture Assn. of America, Inc. v. Oman,* 969 F.2d 1154, 1157 (D.C. Cir. 1992) ("[I]nterest compensates for the time value of money and thus is often necessary for full compensation."); *In the Matter of Continental Ill. Sec. Litig.,* 962 F.2d 566, 571 (7th Cir. 1992) ("The cost of delay in receiving money to which one is entitled is the loss of the time value of money, and interest is the standard form of compensation for that loss.").[22]

An analogy to bankruptcy law may be helpful in considering what is fair and equitable to the BFS Lit. Fund contributors for whom the Plaintiff is acting. In bankruptcy, a reorganization plan cannot be imposed unless it is "fair and equitable," which is tied to the absolute priority rule providing that a subordinate claim cannot be paid until all superior claims are paid in full. 11 U.S.C. § 1129(b). In *Everett v. Perez*, 30 F.3d 1209, 1212-13 (9th Cir. 1994), the Court held that a proposed reorganization plan that paid $30,000 to an unsecured creditor over 67 months *without interest* was insufficient to satisfy the absolute priority rule because it did not account for the time value of money. *Everett*, 30 F.3d at 1213. The Court accepted Everett's argument that

---

[22] While hostility to paying interest may be historical, it is ancient history. *See e.g.,* Plato, *Treatise de Legibus,* v. 742; Aristotle, *Politics*, 1, 4, 23; Moses, *Exodus*, XXII, 25. The modern world recognizes the necessity of interest.

"[s]ince a dollar five and a half years from now is worth much less than a dollar today, . . . [the proposed plan] does not pay the unsecured creditors in full because it does not compensate them for the lost time value of their money." *Id.* at 1213, 1215. The 9th Circuit thus interpreted the "absolute priority rule" – *the text of which says nothing about entitlement to interest* – to require that debtors pay the full present value of the debt, including interest. *See also In re McCall*, No. 93-00632, 1997 Bankr. LEXIS 1135 at * 33 (Bankr. D.D.C. 1997) (approving a plan as "fair and equitable" that included deferred payments to note-holders with interest at a rate determined by the Court to represent the "present value of the claims").

Another analogy may be found in prejudgment interest, which is routinely imposed in civil actions to ensure that a plaintiff is made whole. Although courts have discretion, it "must be exercised according to law, which means that prejudgment interest should be awarded unless there is a sound reason not to do so." *In re Milwaukee Cheese Wisconsin, Inc.*, 112 F.3d 845, 849 (7th Cir. 1997) (noting that if a creditor had been reimbursed immediately, he or she could have reinvested the money). The Seventh Circuit explained this further: "If the proceeds had been returned to [the debtor] and distributed to the creditors, they would have been able to earn interest on it during the last decade. That is why prejudgment interest is an ingredient of full compensation." *Id.*

Under District of Columbia law, "the court has ample discretion to include prejudgment interest . . . if necessary to fully compensate the plaintiff." *Fed. Mktg. Co. v. Virginia Impression Prod. Co., Inc.,* 823 A.2d 513, 531-32 (D.C. 2003) (noting that the inquiry should be whether "plaintiff has been deprived of the use of money withheld and should be compensated for the loss" (internal citations omitted)). In *Waterview Management Co. v. FDIC,* 257 F. Supp. 2d 31,

35-36 (D.D.C. 2003), the Court noted that because prejudgment interest simply compensates for the time value of money, citing the D.C. Circuit's *Motion Picture Ass'n,* 969 F.2d at 1157, prejudgment interest does not actually increase the recovery of a successful litigant. Here, many of the BFS Fund contributors wrote multiple checks to the BFS Lit. Fund between 1990 and 2006 and therefore lost the use of their contributed funds from the dates they wrote each of their checks to the Lit. Fund's Trustee. The contributors will not be made whole without interest from the dates of their contributions to the date their principal was returned in 2006.

2.    Denying interest is inequitable to the contributing shareholders.

The FDIC's denial of interest to the contributing shareholders results in preferential treatment for the Benj. Franklin shareholders who *declined* to contribute to the BFS Lit. Fund because any unpaid interest will be added to the receivership surplus to be distributed *pro rata* to all shareholders. Moreover, the shareholders who contributed in earlier years are penalized even more because they have been without the benefit of their contributed funds for a much longer period of time. *See Milwaukee Cheese*, 112 F.3d at 849 ("the longer the case lasts, the more of the stakes the defendant keeps even if it loses (and the less the victorious plaintiff receives) *unless interest is added"*) (emphasis added).

3.    The award of interest should not be reduced by attorneys fees and costs.

The Plaintiff BFS Lit. Fund also requests that it be awarded its attorneys fees and costs for bringing this claim, which amount should be ordered paid from the receivership surplus. This will allow the full amount of interest calculated to be owed to each contributing shareholder to be reimbursed *in full* by the BFS Lit. Fund Trustee without the necessity of deducting the costs

26

and fees related to this litigation before such a distribution is made.  The contributing shareholders are entitled to such full relief.

This final request does not seek to have FDIC pay the attorneys fees from its own funds, but would simply clarify that the award of interest should constitute 100% of the interest to which the shareholders are entitled.  This will be accomplished by the FDIC Receiver's reimbursement of the BFS Litigation Fund for its reasonable fees and costs related to bringing this lawsuit in addition to the Receiver's reimbursement of the interest due to each contributing shareholder.[23]  This is very similar to awarding attorneys fees where a "common fund" has been created based on work paid for by some – but not all – of the fund's beneficiaries.  Such fees are appropriately paid from the common fund to prevent the unjust enrichment of the fund beneficiaries who did not contribute to the litigation expenses.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("the doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense"); *Mills v. Elec. Auto-Lite Co.,* 396 U.S. 375, 391-92 (1970) ("To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly . . . ."); *Swedish Hosp. Corp. v.*

---

[23] In *Resolution Trust Corp. v. Western Technologies, Inc.,* 877 P.2d 294, 299-303 (Ariz. Ct. App. 1994), the Court held that an award of legal fees in connection with litigation to which RTC was a party was *not* subject to the FDIC/RTC's receivership claims process – unlike attorneys fees for work performed for an institution before its failure or for legal work performed for the Receiver after the bank's failure – both of which *are* subject to the FDIC/RTC's claims process.  Accordingly, this request for the Plaintiff's reasonable attorneys fees is not itself subject to the FDIC's claims procedures.  *See also* n.24 *infra*.

27

*Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993) ("Unless the costs of litigation are spread to the beneficiaries of the fund they will be unjustly enriched by the attorney's efforts.").

In *Dist. of Columbia v. Green*, 381 A.2d 578, 580-81 (D.C. 1977), the Court discussed the criteria to be applied in making "common fund" awards, including whether "there was reason for confidence that the costs could be shifted with some exactitude to those benefitting." Here, if the attorneys fees related to collecting interest for the contributors are paid from the Receivership surplus and *not* from the amount of interest paid to the contributors, then all Benj. Franklin shareholders will pay those legal fees equally and the contributors to the Lit. Fund will not be penalized. The Plaintiff's proposed procedure for the Court to award reasonable attorneys fees and costs to Plaintiff is set out in the proposed Order accompanying this motion.[24] As the D.C. Circuit has held, "jurisdiction over [a common fund] case also carries with it the equitable jurisdiction to award reasonable attorneys' fees in appropriate circumstances." *Democratic Cent. Comm. v. Wash. Metro. Transit Comm'n,* 3 F.3d 1568, 1573 (D.D.C. 1993).

## III.    <u>CONCLUSION</u>

It would frustrate the purpose of the receivership priority scheme to allow the FDIC-Receiver to selectively pay interest only on some debts, particularly when the post-insolvency

---

[24] Plaintiff does not seek to avoid filing a motion for attorneys' fees under Fed. R. Civ. P. 54(d)(2) if judgment is entered in Plaintiff's favor. But this Court's Local Rule 54.2(a) authorizes the Court to "direct[ ] the parties to confer and to attempt to reach agreement on fee issues." D.D.C. Civ. R. 54.2(a). Accordingly, the Plaintiff's proposed Order references this Local Rule and directs the parties to confer on legal fees. Plaintiff's counsel is optimistic that agreement could and would be reached here about the reasonable fees and costs related to Plaintiff's bringing this action if the Plaintiff prevails.

interest already paid here includes interest that FDIC paid to itself, to the IRS, and to other general creditors of the Benj. Franklin receivership.

For all of the reasons set out above, the FDIC Receiver should be ordered to pay the BFS Lit. Fund's claim for interest as well as the Plaintiff's reasonable attorneys fees and costs for this action. In addition, because the interest calculation will be based on quarterly U.S. Treasury bill rates since 1990 and therefore will be complicated to calculate for each of the 4,200 shareholder contributors, the Plaintiff requests that the Court order the defendant FDIC to prepare the interest calculation and then share it with Plaintiff for its review, after which the parties will jointly advise the Court of the appropriate amount of interest to be awarded. The Plaintiff's recommended procedure for doing this is set out in the proposed Order accompanying this motion.

Oral argument on this motion is requested if the Court believes an oral hearing would be helpful to resolution of the Plaintiff's claim.

Date: November 30, 2006                    Respectfully submitted,


                                           /s/_____
                                           Rosemary Stewart
                                           Spriggs & Hollingsworth
                                           1350 I Street, N.W.
                                           Washington, DC 20005
                                           202-898-5888 – (Telephone)
                                           202-682-1639 – (Fax)
                                           D.C. Bar No. 204438

                                           Counsel to Plaintiff The Benj. Franklin
                                           Shareholders  Litigation Fund

29

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
THE BENJ. FRANKLIN                                )
SHAREHOLDERS LITIGATION FUND,                     )
BY ITS SOLE TRUSTEE, DON S. WILLNER               )
                                                  )
                Plaintiff,                        )    Civil Action  No. 06-01025 (EGS)
v.                                                )
                                                  )
FEDERAL DEPOSIT INSURANCE CORPORATION             )
AS RECEIVER FOR THE BENJ. FRANKLIN                )
FS&LA, PORTLAND, OREGON                           )
                                                  )
                Defendant                         )
_____)

## ORDER

Having considered the Plaintiff's Motion for Summary Judgment filed on November 30,

2006, the defendant's opposition to that motion and all other briefs and materials filed by the

parties and any oral argument held relative to the same motion,

IT IS HEREBY ORDERED THAT:  Judgment is granted in favor of the Plaintiff on its

claim for interest.  The amount of interest shall be calculated by the Defendant FDIC from the date

of each shareholder's contribution to the date that FDIC reimbursed principal to the Lit. Fund in

2006.  This calculation shall be made within 30 days and shared with the Plaintiff for its review and

concurrence.  Within 15 days after the FDIC's calculation is given to the Plaintiff, the parties shall

jointly report to the Court the total amount of interest that should be ordered paid to Plaintiff.  If the

parties disagree about how to calculate the interest, each party shall set out its separate calculation

and explanation in the joint report to the Court.  After reviewing this report, the Court will enter

judgment in favor of the Plaintiff and such judgment amount shall be paid by the Defendant FDIC

to the Plaintiff within 30 days of the judgment's becoming final.

IT IS FURTHER ORDERED THAT:   Reasonable attorneys fees and costs for this action

shall be paid to the Plaintiff by the FDIC from the receivership surplus of The Benj. Franklin

FS&LA, Portland, Oregon so that the actual amount of interest to be paid to the contributing

shareholders will not be reduced by the Plaintiff's attorneys fees and costs related to bringing this

action.  The parties are directed to confer and attempt to reach agreement on such fees and costs

pursuant to D.D.C. Civ. R. 54.2 and to advise the Court about the results of that conference in the

same joint report (referenced above), which is due to the Court in not more than 45 days.


Date: _____                              _____
                                                  Emmett G. Sullivan
                                                  United States District Judge

2

The foregoing Order, if entered, should be sent to:

        1.        Rosemary Stewart
                      Spriggs & Hollingsworth
                      1350 I Street, N.W.
                      Washington, DC  20005

        2.        Bruce C. Taylor
                      Federal Deposit Insurance Corporation
                      Room VS-E7118
                      550 17th Street, N.W.
                      Washington, DC  20429