BEFORE THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE BENJ. FRANKLIN SHAREHOLDERS LITIGATION FUND, BY ITS SOLE TRUSTEE, DON S. WILLNER<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR THE BENJ. FRANKLIN FS&LA, PORTLAND, OREGON<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 06-01025 (EGS) |

**PLAINTIFF'S APPENDIX CONTAINING AFFIDAVIT AND DOCUMENTS
IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Filed :    November 30, 2006

Rosemary Stewart
Spriggs & Hollingsworth
1350 I Street, N.W.
Washington, DC 20005
202-898-5888 – (Telephone)
202-682-1639 – (Fax)
D.C. Bar No. 204438

Counsel for Plaintiff The Benj. Franklin
Shareholders Litigation Fund

**Table of Contents**
**to Plaintiff's Appendix**

| | Page Range |
|---|---|
| Affidavit of Don S. Willner in Support of Plaintiff's Motion for Summary Judgment, describing the following documents: | 1 – 3 |
| February 3, 2006 FDIC Motion for Fairness Hearing (with Attachments) filed by the FDIC in *United States v. FDIC,* Civil Action No. 02-1427 (EGS) (D.D.C.) ……………………………………………………….. | 4 – 28 |
| November 8, 2004 letter from Don S. Willner to Robert G. Clark …………… | 29 – 30 |
| November 9, 2004 letter from Robert G. Clark to Don S. Willner …………… | 31 |
| May 11, 2006 letter from the FDIC-Receiver's representative Glenn Glinsmann to Don S. Willner ……………………………………………… | 32 |
| May 24, 2006 letter from the FDIC-Receiver's representative Glenn Glinsmann to Don S. Willner ……………………………………………… | 33 – 34 |
| One-page FDIC Report (10/13/06) disclosing thrift receiverships in which post-insolvency interest was paid to various claimants ……………………… | 35 |
| Three-page FDIC Report (11/22/06) disclosing thrift and bank receiverships in which post-insolvency interest was paid to various claimants between 1986 and  2006 …………………………………………………………………… | 36 – 38 |
| Two-page FDIC Report (11/22/06) disclosing thrift and bank receiverships in which surplus distributions were made to shareholders between 1986 and 2006 …………………………………………………………………… | 39 – 40 |

BEFORE THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE BENJ. FRANKLIN
SHAREHOLDERS LITIGATION FUND,
BY ITS SOLE TRUSTEE, DON S. WILLNER

        Plaintiff,

      v.

FEDERAL DEPOSIT INSURANCE CORPORATION
AS RECEIVER FOR THE BENJ. FRANKLIN
FS&LA, PORTLAND, OREGON

        Defendant.

Civil Action  No. 06-01025 (EGS)

**AFFIDAVIT OF DON S. WILLNER IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

1.    My name is Don S. Willner.  I am an attorney licensed to practice law in the states of Oregon and Washington.  I am over the age of 21 years and am competent to make the statements in this Affidavit.

2.    I am the sole trustee of The Benj. Franklin Shareholders Litigation Fund, which is the Plaintiff in the above-captioned suit.  I verified the Complaint that initiated this action, which was filed on June 2, 2006.

3.    I have reviewed and fully support the Plaintiff's Motion for Summary Judgment filed simultaneously with this Affidavit.

4.    I am personally familiar with the following documents that were created before this suit was filed and  I state that they are correctly described in the following list and that accurate copies of these documents are included in the Appendix following my Affidavit:

1

February 3, 2006 FDIC
Motion for Fairness Hearing
Filed by the FDIC in *United States v. FDIC,*
Civil Action No. 02-1427 (EGS)

November 8, 2004 letter from
Don S. Willner to Robert G. Clark

November 9, 2004 letter from
Robert G. Clark to Don S. Willner

May 11, 2006 letter from the
FDIC-Receiver's representative Glenn
Glinsmann to Don S. Willner

May 24, 2006 letter from the
FDIC-Receiver's representative Glenn
Glinsmann to Don S. Willner

5.    The following documents were produced by the FDIC during discovery in this

case, and copies of each are also included in the Plaintiff's Appendix following this Affidavit:

One-page FDIC Report (10/13/06) disclosing
thrift receiverships in which post-insolvency
interest was paid to various claimants

Three-page FDIC Report (11/22/06)
disclosing thrift and bank receiverships
in which post-insolvency interest was paid
to various claimants between 1986 and  2006

Two-page FDIC Report (11/22/06) disclosing
thrift and bank receiverships in which
surplus distributions were made to shareholders
between 1986 and 2006

By letter dated November 22, 2006, FDIC counsel Bruce C. Taylor advised Plaintiff's counsel

Rosemary Stewart that the above-referenced one-page report dated 10/13/06 was incomplete

because there were *more* receiverships that paid post-insolvency interest to claimants.

Mr. Taylor therefore sent the two additional reports dated 11/22/06 (as described above) to

2

Plaintiff's counsel in order to provide information about the additional receiverships that paid post-insolvency interest to creditors as well as the receiverships that made surplus distributions to shareholders.

6.     This concludes my Affidavit.  I affirm under penalty of perjury that the foregoing is true and correct.

Executed on November 28, 2006, in

Hood River, Oregon

Don S. Willner
Don S. Willner & Associates
630 Sunnyside Road
Trout Lake, WA  98650
(509) 395-2000-Phone
(509) 395-2939-Fax

Subscribed and sworn to before me this _28_ day of _Nov._, 2006.

Notary Public: _____

OFFICIAL SEAL
BRAD RYHLICK
NOTARY PUBLIC-OREGON
COMMISSION NO. 382760
MY COMMISSION EXPIRES JULY 18, 2008

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 02-1427 |
| | ) | (EGS) |
| FEDERAL DEPOSIT INSURANCE | ) | |
| CORPORATION, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

DEFENDANT FEDERAL DEPOSIT INSURANCE
CORPORATION'S UNOPPOSED MOTION FOR A FAIRNESS HEARING
INCLUDING SUPPORTING STATEMENT OF POINTS AND AUTHORITIES

Date: February 3, 2006

Richard S. Gill
Legal Division
FEDERAL DEPOSIT INSURANCE
CORPORATION
550 17th Street, N.W.
Washington, DC 20429
(202) 736-0090 Telephone)
(202) 736-0676 (Facsimile)

Counsel to the Defendants

4

# Table of Contents

Page

Table of Authorities ....................................................................................................... ii

I.      The Proposed Fairness Hearing ........................................................................3

II.     Background Facts...............................................................................................4

        A.      Benj. Franklin and the FDIC Receivership..........................................4

        B.      The Benj. Franklin Shareholders and their Related Litigation ............6

                1.      The Shareholders' Pending Claims Court Litigation..............6

                2.      The Shareholders' Involvement in the Tax Litigation ...........8

III.    The Proposed Tax Settlement ...........................................................................9

        A.      The Terms of the Settlement................................................................9

        B.      The Notice of Proposed Settlement and Fairness Hearing ..................9

IV.     A Fairness Hearing is Appropriate under these Circumstances........................10

V.      Other Proposed Distributions from the Receivership Surplus ..........................13

VI.     Conclusion ......................................................................................................14

# Table of Authorities

## *Cases*

*Ball v. AMC Entm't,*
315 F. Supp. 2d 120 (D.D.C. 2004) ................................................................. 11

*Bass v. Fed. Sav. & Loan Ins. Corp.,*
698 F.2d 328 (7th Cir. 1983) ........................................................................... 12

California Federal Bank v. United States,
39 Fed. Cl. 753 (1997) ....................................................................................... 7

Duran v. Elrod,
760 F.2d 756 (7th Cir. 1985) ........................................................................... 12

*Granada Investments, Inc. v. DWG Corp.,*
823 F. Supp. 448 (N.D. Ohio 1993) ........................................................... 11, 12

In re Lorazepam & Clorazepate Antitrust Litig.,
205 F.R.D. 369 (D.D.C. 2002) ......................................................................... 11

In re Masters Mates & Pilots Pension Plan and IRAP Litig.,
957 F.2d 1020 (2d Cir. 1992) ........................................................................... 12

*New York v. Microsoft Corp.,*
231 F. Supp. 2d 203 (D.D.C. 2005) .............................................................. 3, 12

Suess v. United States,
33 Fed. Cl. 89 (1995) ......................................................................................... 7

Suess v. United States,
52 Fed. Cl. 221 (2002) ....................................................................................... 7

Thomas v. Albright,
139 F.3d 227 (D.C. Cir. 1998) ......................................................................... 10

Weinberger v. Kendrick,
698 F.2d 61 (2d Cir. 1982) ............................................................................... 10

Winstar Corp. v. United States,
518 U.S. 839 (1996) ........................................................................................... 7

\* Indicates the most important precedents on which the movant relies.

6

**Statutes**

12 C.F.R. § 360.3 (2005) ......................................................................................... 5

12 U.S.C. § 1441a(m) ............................................................................................. 4

Fed. R. Civ. P. 23.1 ............................................................................................... 11

Fed. R. Civ. P. 23(e) ............................................................................................. 11

Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73
§ 212, 103 Stat. 183 (1989) .............................................................................. 5, 7

7

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Civil Action No. 02-1427 |
| ) | (EGS) |
| FEDERAL DEPOSIT INSURANCE ) | |
| CORPORATION, et al. ) | |
| ) | |
| Defendant ) | |
| ) | |

**DEFENDANT FEDERAL DEPOSIT INSURANCE
CORPORATION'S UNOPPOSED MOTION FOR A FAIRNESS HEARING
INCLUDING SUPPORTING STATEMENT OF POINTS AND AUTHORITIES**

The defendant Federal Deposit Insurance Corporation ("FDIC") in its capacity as the

receiver for The Benj. Franklin Federal Savings & Loan Association of Portland, Oregon

(hereafter "Benj. Franklin"), hereby notifies the Court that the parties to this tax collection action

have reached a proposed settlement of the tax claim made against FDIC by the plaintiff United

States in the above-captioned suit. Under the proposed settlement, the FDIC as receiver of Benj.

Franklin (hereafter "FDIC-Receiver") will make a compromise tax payment of $50 million to the

IRS, after which this suit will be dismissed with prejudice.

But before that payment is made, the FDIC respectfully requests that this Court conduct a

fairness hearing in order to determine that the proposed settlement resulting in the $50 million

tax payment to the United States is fair, reasonable, and adequate. This request is based on a

series of unusual facts and a somewhat unique situation presented by this particular receivership,

including the following:

8

1.      While the great majority of savings and loan association receiverships have resulted in sizable deficits (*i.e.*, an excess of liabilities over assets), the Benj. Franklin receivership has a substantial surplus and will still have a surplus after the proposed tax payment.

2.      After the proposed tax payment is made, 6500 shareholders of Benj. Franklin will be entitled to share in a cash distribution of Benj. Franklin's remaining assets made by the FDIC-Receiver. The amount of that distribution will, of course, be directly related to the amount of the tax payment that must precede the distribution.

3.      Attorneys for many of the Benj. Franklin shareholders have kept the shareholders informed of the progress of the tax litigation and settlement negotiations, and these attorneys believe that the vast majority of the shareholders are in favor of the proposed tax settlement. The same attorneys intend to state their view at the fairness hearing that the proposed settlement is fair, reasonable, adequate, and in the best interest of all affected persons.[1]

---

[1] The plaintiff United States does not believe that a fairness hearing is necessary in order for the parties to enter into and finalize a settlement of this tax litigation. Considering the unusual circumstances of this case as summarized above, however, the United States is not opposed to FDIC's requesting a fairness hearing in order for the Court to determine that the proposed settlement of the tax claim is fair and reasonable. The plaintiff United States also believes that only the FDIC, as the taxpayer, has the standing necessary to challenge a settlement but because of the same unusual facts presented here, the United States consents to the Court's convening a fairness hearing.

Because of the cooperation of the parties to this action as well as the cooperation of counsel to the non-party shareholders, the FDIC believes that immediately following the recommended fairness hearing, this Court will be in a position to determine "whether the settlement fairly and reasonably resolves the controversy in a manner consistent with the public interest." *New York v. Microsoft Corp.*, 231 F. Supp. 2d 203, 205 (D.D.C. 2005). As noted in that decision, the reviewing Court is not expected to substitute its judgment for that of the parties but to assure itself that the terms of the settlement are fair and adequate and not unlawful, unreasonable, or against public policy. *Id.* In addition, the Court must determine whether the proposed settlement is equitable in any effect it might have on third parties, *id.*, which will be addressed here directly by the third party shareholders or their counsel who will appear at the fairness hearing.

## I.     The Proposed Fairness Hearing

In circumstances similar to this, many federal courts including this Court, have conducted fairness hearings such as the FDIC requests. In order to initiate the fairness hearing process recommended herein, the FDIC requests that this Court approve and authorize the issuance of the Notice of Proposed Settlement and Fairness Hearing ("Notice"), attached hereto as Exhibit A. This proposed Notice was prepared by FDIC counsel with the assistance of counsel for a number of Benj. Franklin shareholders. If approved by the Court, a printed version of the Exhibit A Notice will be sent by the FDIC-Receiver to all current Benj. Franklin shareholders who can be located in order to: (1) describe to them the proposed tax settlement and other related costs and distributions, and (2) estimate (in a range) how much money will remain in the receivership for the later distribution to the shareholders. The Notice also will advise the Benj. Franklin shareholders of the date set for a fairness hearing before this Court at which representatives of

**10**

the parties and the Benj. Franklin shareholders may be heard (either in writing or in person) about whether they believe the proposed tax settlement is fair and reasonable.

At the conclusion of the fairness hearing, the FDIC will ask this Court to find that the proposed tax settlement is fair and reasonable to all interested persons, and thus should be approved by the Court. However, at this time, FDIC recommends only that the proposed Notice be approved by this Court and that the Court specify a date and time in March 2006 for the fairness hearing to be held. This date will then be inserted into the Notice before it is printed and sent to the Benj. Franklin shareholders.

The legal authority that supports and clarifies this Court's holding of a fairness hearing is addressed in Section IV below.

## II.   Background Facts

### A.   Benj. Franklin and the FDIC Receivership

In this case, the plaintiff United States seeks to collect taxes owed by the Benj. Franklin receivership. Before its receivership, Benj. Franklin was a savings and loan association (also referred to as a "thrift" institution) headquartered in Portland, Oregon, which operated there for 65 years. In 1990, Benj. Franklin was placed into a federal conservatorship and then, eight months later, into a federal receivership with the Resolution Trust Corporation ("RTC"). The RTC acted as Benj. Franklin's receiver from 1990 to 1995 after which the FDIC became the receiver for Benj. Franklin.[2] The Benj. Franklin receivership remains open due to this tax collection suit and other litigation described below.

---

[2] The RTC was a temporary agency created by Congress in 1989 to assist with the increased volume of thrift receiverships. The RTC terminated as of December 31, 1995, at which time all assets and liabilities of RTC (including those related to the Benj. Franklin receivership) were transferred to the FDIC. 12 U.S.C. § 1441a(m)(1), (3).

For many years, the Benj. Franklin receivership has reported a surplus (meaning that the value of its assets exceeds the value of its liabilities), with the current receivership surplus equalling approximately $93.4 million.[3] Under FDIC's statutory priority system for distributing surplus funds in a receivership, the shareholders of Benj. Franklin are entitled to a *pro rata* distribution of the surplus funds after the obligations of all other creditors (*i.e.,* those having higher "priorities") are first satisfied.[4] All of the creditors of Benj. Franklin that existed at the time of its 1990 receivership have been satisfied for many years – except for the IRS, which has a higher priority claim than the shareholders. Thus, the pendency of this litigation alleging a $1.2 billion tax deficiency previously made it unclear whether any surplus would remain for distribution to the Benj. Franklin shareholders.

Based on the proposed settlement of the tax claim for $50 million, however, it is now clear that, if the settlement is approved by the Court, the Benj. Franklin receivership estate will continue to have a significant surplus after the proposed tax payment and after other related costs, distributions, and reserves are deducted. Accordingly, the FDIC is desirous of making a distribution of the surplus funds to the Benj. Franklin shareholders as soon as reasonably possible after Court approval of the tax settlement and after that tax payment has been made.

---

[3] As noted above, most receiverships under RTC and FDIC supervision have resulted in deficits rather than surpluses before such receiverships are closed by the government. But occasionally, as here, a surplus results from the receiver's liquidation activities, and the Benj. Franklin receivership surplus has grown over time due to its funds being invested in interest-bearing instruments.

[4] In 1989 legislation adopted shortly before Benj. Franklin was placed in conservatorship, Congress stated that federal receivers "shall distribute" surplus funds to the institution's shareholders "after all depositors, creditors, other claimants, and administrative expenses" are paid. Pub. L. No. 101-73 § 212, 103 Stat. 183, 231 (1989). Moreover, the FDIC's regulatory priority system that applies in this case, identifies the order in which claimants shall be paid and also places common shareholders at the end of the list of possible claimants. *See* 12 C.F.R. § 360.3 (2005).

But because of the complexity of the tax claim and its proposed resolution by settlement, the

FDIC recommends that the Benj. Franklin shareholders – who are not parties to the tax collection

suit – be given an opportunity to be heard concerning the proposed tax settlement.[5]   The fairness

hearing recommended herein will provide that opportunity.

**B.      The Benj. Franklin Shareholders and their Related Litigation**

Benj. Franklin became a publicly traded stock institution in 1986, having previously

existed as a mutual savings and loan association since 1925.  This was accomplished by a

regulatory process known as "conversion," which allowed Benj. Franklin to convert from a

mutual to a stock institution and to sell its newly issued stock both to Benj. Franklin customers

and to the public.  Most of the initial shareholders were Oregon residents and other investors

from the Pacific Northwest.  The shareholders have changed over the years with the deaths of

many original owners and with resales and other transfers, but it is believed that the majority of

the estimated 6500 Benj. Franklin shareholders still reside in the Pacific Northwest.  For this

reason, the procedures proposed for the fairness hearing include a telephone speaker-phone

hook-up to the U.S. District Courthouse in Portland, Oregon to permit direct participation by

shareholders from that location.

**1.      The Shareholders' Pending Claims Court Litigation**

Shortly after the institution was placed in receivership in 1990, a group of Benj. Franklin

shareholders filed suit in the U.S. Court of Federal Claim ("CFC"), stating claims derivatively on

---

[5] Although Benj. Franklin shareholders are not parties to this suit, counsel to several shareholders
have been closely involved in related litigation and in lengthy discussions among the IRS, the
Department of Justice Tax Division, and the FDIC about the possible settlement of this tax claim
as well as about the ramifications of the settlement on the FDIC-Receiver's anticipated cash
distribution to all Benj. Franklin shareholders.  Counsel for the shareholders were invited by the
FDIC to participate in these discussions.  The same attorneys for the shareholders are expected to
appear at the fairness hearing to express their support for the proposed settlement.

behalf of Benj. Franklin and individually as the intended beneficiaries of certain agreements between Benj. Franklin and the government. The suit was styled *Suess et al. v. United States*, No. 90-981-C, and in their complaint, the shareholder plaintiffs alleged, *inter alia*, that the government breached agreements it had made with Benj. Franklin in 1982 and 1985. The complaint identified the breach as occurring when 1989 legislation known as the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") retroactively removed the regulatory capital treatment of the goodwill generated by two acquisitions of troubled thrifts made by Benj. Franklin in 1982 and 1985.[6]

In *Suess et al. v. United States*, 33 Fed. Cl. 89, 94 (1995), the CFC upheld the right of the Benj. Franklin shareholder plaintiffs to pursue derivative claims on behalf of Benj. Franklin, but not individual claims. In *California Federal Bank v. United States*, 39 Fed. Cl. 753 (1997), the CFC rejected a series of defenses to contract liability raised by the government in the *Suess* case (and in three other related cases including *California Federal Bank*). With respect to the *Suess* case, the Court expressly found that the parties' intent to form a contract had been demonstrated, *id.* at 776, and in a follow-up (unpublished) decision dated November 12, 1998, the CFC granted the Benj. Franklin shareholders' motion for summary judgment at to the government's contract liability. In another decision in the *Suess* case at 52 Fed. Cl. 221 (2002), after a lengthy trial on damages, the CFC awarded approximately $35 million in damages for the derivative plaintiffs' breach of contract claim.

---

[6] The shareholders' complaint charged that the government promised that the goodwill could be treated as regulatory capital on the books of Benj. Franklin at the time of the 1982 and 1985 acquisitions and that this promise had lured Benj. Franklin into making the two acquisitions. Lawsuits like *Suess et al. v. United States* have come to be known as "*Winstar*-related claims" based on the Supreme Court's decision in *Winstar Corp. v. United States*, 518 U.S. 839 (1996), which concluded that enforceable contracts had been formed in connection with similar thrift

Due to the tax claim of the IRS pending in this Court, the $35 million damage award by the CFC has been stayed and not yet finalized by the CFC, and accordingly neither the government nor the shareholder plaintiffs have filed their anticipated appeals of the CFC decisions. Should such a damage award by the CFC be finalized and then affirmed by the U.S. Court of Appeals for the Federal Circuit, it will be paid to the FDIC's Benj. Franklin receivership for later distribution to the Benj. Franklin shareholders. This possible sequence of events is *years away from conclusion* and does not impact in any way the issues pending before this Court relative to the tax claim and its proposed settlement following a fairness hearing.

## 2. The Shareholders' Involvement in the Tax Litigation

When the United States filed this tax collection suit against the FDIC, the same Benj. Franklin shareholders pursuing the derivative claim before the CFC, filed a motion to intervene in this suit, arguing that the shareholders were the real parties in interest because the $1.2 billion tax claim threatened to eliminate the entire surplus in the Benj. Franklin receivership that the shareholders were entitled to receive.[7] The same Benj. Franklin shareholders also filed an injunctive action against the FDIC in the U.S. District Court in Portland, Oregon, seeking to prevent the FDIC-Receiver from paying the tax demanded by the IRS (hereafter "the Portland, Oregon litigation").

After filing their papers before this Court and in Portland, Oregon, the shareholders' counsel were invited by the FDIC to participate, and did participate actively, in settlement

---

acquisitions made by other entities – and then breached by the government with the enactment and implementation of FIRREA.

[7] The Plaintiff United States stated its intention to oppose the shareholders' motion to intervene because the United States maintains that only the taxpayer (here, the FDIC-as-Receiver of Benj. Franklin) has standing to contest the taxes claimed against it by the IRS.

discussions among the plaintiff United States, the IRS, and the FDIC concerning the tax claim.

Accordingly, while the Benj. Franklin shareholders are not parties to this tax suit, their counsel

(at several law firms) have participated directly in considering the tax demand made by the IRS

and in discussing the settlement of this tax claim along with FDIC counsel. Moreover, the

shareholders' counsel of record for the motion to intervene in this Court and for the Portland,

Oregon litigation (who is also counsel of record in the long-standing CFC case), Don S. Willner

of Portland, Oregon, will support the proposed settlement at the fairness hearing recommended

by this motion.

## III.    The Proposed Tax Settlement

### A.    The Terms of the Settlement

Under the proposed settlement of this suit, FDIC-Receiver would pay $50 million for the

taxes owed by the receivership for calendar years 1990 through 2002, which will resolve and

close each of those disputed tax years. This tentative settlement is contingent on a determination

by this Court, following a fairness hearing, that the tax settlement is fair and reasonable to all

interested persons. Upon receipt of such a finding and approval by this Court for the settlement,

the FDIC-Receiver will make the $50 million settlement payment to the IRS, and the United

States will thereafter dismiss with prejudice its Complaint in this action. This proposed tax

settlement is described in more detail in the proposed Notice (at Exhibit A) to be sent to all

shareholders of Benj. Franklin.

### B.    The Notice of Proposed Settlement and Fairness Hearing

As noted above, defendant FDIC has attached at Exhibit A for the Court's consideration

and approval, the proposed Notice of Proposed Settlement and Fairness Hearing. If this Notice

is approved by the Court, the FDIC-Receiver will send it to all known potential current

shareholders of Benj. Franklin and will also publish notice of the hearing in other ways designed

to reach as many shareholders as possible. This will be done by the FDIC and, if necessary, with

assistance from counsel for the shareholders, Mr. Willner, who has both maintained an address

list for many of the Benj. Franklin shareholders and communicated with shareholders via letters

(and more recently a website) about the pending litigation involving Benj. Franklin. Because of

these communications, many Benj. Franklin shareholders are already aware of this tax collection

suit and the possibility that it may be settled.

The Notice describes the pending lawsuit and provides background information about the

parties' differing views about the taxes owed by the Benj. Franklin receivership for each of the

years 1990 through 2002. The parties concur that there were significant legal disagreements

about these issues so that settlement at this time will allow both parties – and the Benj. Franklin

shareholders – to avoid further litigation risk, expense, and delay. This too is explained in the

proposed Notice.[8]

## IV.   A Fairness Hearing is Appropriate under these Circumstances

Generally speaking, in considering a proposed settlement, the court must determine that

the settlement is "fair, adequate and reasonable." *Thomas v. Albright*, 139 F.3d 227, 231 (D.C.

Cir. 1998); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (same). In the context of

class action settlements, this Court has previously considered "(a) whether the settlement is the

result of arms-length negotiations; (b) the terms of the settlement in relat[ion] to the strength of

plaintiffs' case; (c) the stage of the litigation proceedings at the time of settlement; (d) *the*

*reaction of the class*; and (e) the opinion of experienced counsel." *Ball v. AMC Entm't*, 315 F.

---

[8]   The Notice also contains a form that shareholders must fill out and mail to the Court and to
FDIC if they wish to be heard at the fairness hearing. If the shareholders do not return the form,
they are advised that the Court will assume that they do not object to the proposed settlement.

Supp. 2d 120, 125 (D.D.C. 2004) (emphasis added); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 375 (D.D.C. 2002) (same). Such considerations realistically cannot be determined in most cases without a hearing, and the persons who will be impacted most directly by the settlement are in the best position to provide this insight. Here, such persons are the Benj. Franklin shareholders.

Although this suit is not a class action or a derivative case, the defendant FDIC's responsibility to distribute surplus funds in the receivership to the thousands of Benj. Franklin shareholders on a *pro rata* basis makes class and derivative actions quite analogous to this situation. Under Fed. R. Civ. P. 23(e), the settlement of a class action may occur only if the Court approves the proposed settlement after "notice in a reasonable manner to all class members who would be bound by a proposed settlement," and "only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(B), (C). Similarly, if this were a derivative suit, Rule 23.1 provides that: "The action shall not be . . . compromised without the approval of the Court, and notice of the proposed compromise shall be given to shareholders or members in such manner as the Court directs." Fed. R. Civ. P. 23.1.

In *Granada Investments, Inc. v. DWG Corp.*, 823 F. Supp. 448, 453-454 (N.D. Ohio 1993), the Court outlined eight factors to be utilized in determining whether the settlement of a derivative action was "fair, reasonable and adequate." Five of the *Granada* factors are directly relevant to this proposed settlement:

> (1) whether the proposed settlement was fairly and honestly negotiated;
> . . .
>
> (4) the complexity, expense and likely duration of the litigation;
> . . .
>
> (6) the judgment of the parties that the settlement is fair and reasonable;

**18**

(7)  *the objections raised by shareholders of the defendant corporation,* but not to withhold approval merely because some shareholders objected to it; and

(8)  the number of objectors to the settlement.

*Id.* (emphasis added). *See also Bass v. Fed. Sav. & Loan Ins. Corp.*, 698 F.2d 328, 330 (7th Cir. 1983) (overturning a settlement in which the lower court had not considered the views of persons impacted by the settlement in a case that was neither a class action nor a derivative action).

These same principles have been applied in cases like this one, in which the rights or interests of *non-parties* are directly impacted by a proposed settlement. *See New York v. Microsoft Corp.*, 231 F. Supp. 2d at 205 ("[B]ecause approval of a settlement is a judicial act that is committed to the informed discretion of the trial court, the Court must satisfy itself that the decree is equitable in any effect it may have upon third parties."). *See also In re Masters Mates & Pilots Pension Plan and IRAP Litig.*, 957 F.2d 1020, 1026 (2d Cir. 1992) ("Where the rights of third parties are affected . . . their interests too must be considered."); *Duran v. Elrod*, 760 F.2d 756, 759 (7th Cir. 1985) ("When an equity decree affects other people besides the parties to it, the judge must taken account of the interest of those people . . . in his decision whether to grant or deny equitable relief.").

A hearing at which directly related third parties, such as the Benj. Franklin shareholders, may voice their opinions or concerns will satisfy these standards and considerations. In this case, the fairness hearing will provide the opportunity to advise the Benj. Franklin shareholders of the amount of tax payment that the parties have negotiated and to obtain their reaction to that proposed tax payment, making it entirely appropriate to hold such a hearing before approving the settlement of the instant case.

19

**V.    Other Proposed Distributions from the Receivership Surplus**

Also set out in the proposed Notice to shareholders is a list of other distributions that are proposed to be made by the FDIC-Receiver from the Benj. Franklin surplus before the general distribution of the remainder is made to the shareholders. These distributions are not the subject of the fairness hearing but are being handled by the FDIC pursuant to its statutory powers as the receiver of Benj. Franklin. The first of these distributions would repay Benj. Franklin shareholders' contributions of approximately $3 million made in furtherance of the litigation efforts in this Court, in the Portland, Oregon litigation and in the CFC litigation. The FDIC also is considering whether to pay interest on this same $3 million claim. The second proposed distribution would reimburse the reasonable attorneys' fees and expenses of the shareholders' counsel related directly to their work on the tax claim and its compromise and settlement.[9] These attorneys' fees are in a range of between $1 million and $2 million, and the FDIC is presently in the process of determining through its receivership claims process, the exact amounts it will approve for attorneys' fees and expenses. Another smaller distribution (or reserve) would assure that the FDIC-Receiver has adequate funds to pay its expenses until it can "close" the Benj. Franklin receivership. More detail about these proposed payments and the justifications for them are summarized in the Exhibit A Notice. These distributions will be made from the Benj. Franklin receivership estate *after* the tax settlement payment is made but *before* the cash distributions are made by the FDIC-Receiver to the Benj. Franklin shareholders.

---

[9] The shareholders' counsel do not seek reimbursement for the legal fees related to their *Winstar*-related lawsuit in the CFC, except for the portion thereof that related directly to the federal taxes claimed against the Benj. Franklin receivership estate. When the CFC litigation is concluded, the shareholders' attorneys may seek the CFC's approval for an additional reimbursement of legal fees from the receivership estate if additional funds are paid into the receivership as a result of any CFC-awarded damages. However, this possibility is years away from resolution and is unrelated to the proposed settlement of the tax collection suit pending in this Court.

## VI.    Conclusion

For all of the reasons outlined above, the defendant FDIC – without opposition from the plaintiff United States – moves this honorable Court to approve the attached Notice to be sent to all shareholders and to determine the date in March 2006, if possible, when the Court is available to hold the fairness hearing.  A proposed order to accomplish these steps is enclosed for the Court's consideration.  At the conclusion of the fairness hearing or immediately thereafter, the parties anticipate that they will jointly move for this Court's final approval of their proposed settlement of the tax claim.

Date: February 3, 2006                              Respectfully submitted

                                                    /s/ Richard S. Gill
                                                    Richard S. Gill
                                                    Legal Division
                                                    FEDERAL DEPOSIT INSURANCE
                                                    CORPORATION
                                                    550 17th Street, N.W.
                                                    Washington, DC  20429
                                                    (202) 736-0090 (Telephone)
                                                    (202) 736-0676 (Facsimile)

                                                    Counsel to the Defendants

368153v1

**21**

# NOTICE TO ALL SHAREHOLDERS
# OF BENJ. FRANKLIN FEDERAL SAVINGS & LOAN ASSOCIATION

### Notice of Proposed Settlement and Fairness Hearing

This Notice is being sent to all shareholders of The Benj. Franklin Federal Savings & Loan Association, Portland, Oregon (hereafter "Benj. Franklin"), pursuant to the Order of Judge Emmet G. Sullivan of the U.S. District Court for the District of Columbia. It advises you about a proposed settlement of a tax collection lawsuit, which, if approved by the Court, will indirectly result in a cash distribution to all shareholders of Benj. Franklin.

### A Fairness Hearing will be held on May 2, 2006, to
### Discuss and Consider the Proposed Tax Settlement

## Background Information

Judge Sullivan is presiding over a tax collection suit pending in the U.S. District Court for the District of Columbia captioned *United States v. Federal Deposit Insurance Corporation and Federal Deposit Insurance Corporation, in its capacity as receiver for the Benjamin Franklin Federal Savings & Loan Association, et al.*, Civil Action No. 02-1427. In this suit, the plaintiff United States represents the Internal Revenue Service ("IRS"), which alleged that the Benj. Franklin receivership owed more than $1.2 billion of federal income taxes, interest, and penalties for tax years 1990 to 2002. The defendant in the suit is the Federal Deposit Insurance Corporation ("FDIC"), which is the current receiver of Benj. Franklin.

At the present time, the FDIC as receiver of Benj. Franklin reports that the receivership has a surplus of approximately $94 million. If the IRS were to prevail in its litigation alleging that the receivership owes about $1.2 billion in taxes, the entire surplus would of course be depleted. However, the parties to the pending tax collection suit have tentatively agreed to a proposed settlement of the tax claim for a payment of $50 million to the IRS, which settlement would leave a significant surplus in the Benj. Franklin receivership. After the proposed tax settlement and other claims and expenses are paid, the remaining surplus funds will be available for a *pro rata* cash distribution to all Benj. Franklin shareholders who can demonstrate their ownership of Benj. Franklin common stock. The purpose of this Notice is to describe the proposed tax settlement terms as well as to outline the other distributions that the FDIC-Receiver proposes to make from the surplus before distributing the balance to the Benj. Franklin shareholders.

If you disagree with the proposed settlement of the tax claim, you have the right to tell the Court about your disagreement or your concern. If you agree with the proposed settlement, you may also advise the Court of this fact. A form is attached at the end of this Notice, which you may use to communicate with the Court and/or to ask for an opportunity to participate directly at the Fairness Hearing.

## The Fairness Hearing

The hearing will be held at 2:00 p.m. (Eastern Time) on May 2, 2006, in Courtroom 24A of Federal Judge Emmet G. Sullivan, which is located in the E. Barrett Prettyman U.S.

Courthouse at 333 Constitution Avenue, N.W., Washington, D.C. 20001. A simultaneous session will be held at 11:00 a.m. (Pacific Time) at the U.S. District Courthouse in Portland, Oregon, with a telephone speaker-phone connection to Judge Sullivan's hearing in Washington, D.C.

You are welcome to attend either of these hearings. If you wish to speak at the hearing or if you wish to have an attorney speak for you, you must fill out the attached form and return it as soon as possible to the U.S. District Court in Washington, D.C. A photocopy of the same form also must be sent to the FDIC attorney whose name appears at the end of that form. Only shareholders who have returned this form at least one week (*i.e.,* seven calendar days) before the scheduled date for the fairness hearing will be permitted to speak at the hearing although you are free to attend the hearing (at either location) to observe the proceedings whether or not you have returned the form.

## The Proposed Settlement

Under the proposed settlement of the tax collection suit, the FDIC as receiver of Benj. Franklin would pay $50 million for the taxes allegedly owed by the receivership for calendar years 1990 through 2002, which will resolve and close each of those disputed tax years. Seventy-five percent of the first $47 million of the settlement payment will be treated as a payment of interest on the alleged tax liability and the remaining 25% of that amount will be treated as payment of federal income taxes for purposes of determining the effect of the payment on tax years after 2002. The remaining $3 million of the settlement payment will be treated solely as a payment of interest for purposes of determining the effect of the payment on tax years after 2002.

The higher interest allocation (which will apply to $38.25 million of the total $50 million) will be particularly useful to the Benj. Franklin receivership if additional funds come into the receivership over the next few years. This is because the agreed-upon *interest* payment will generate a tax deduction that can offset that same amount of future income to the receivership and thus causes it to pay less taxes in those future years. One possible source of future income to the Benj. Franklin receivership is a $35 million damage award made to Benj. Franklin in 2002 by the U.S. Court of Federal Claims ("CFC") based on the CFC's finding that the government breached contracts made with the institution in the 1980s. (This CFC case is often described as Benj. Franklin's "*Winstar*-related case.") The $35 million damage award has not yet been finalized by the CFC or appealed to the U.S. Court of Appeals for the Federal Circuit due to the pending tax dispute between the IRS and the Benj. Franklin receivership.[1] And, it is estimated that even if the award is finalized this year and subsequently affirmed or adjusted by the Federal Circuit, such damages are *years away from being paid* and thus the CFC damages are not directly relevant to the tax settlement or the other proposed distributions that the FDIC-Receiver will make if the tax settlement is approved by the U.S. District Court (D.C.).

---

[1] If the original $1.2 billion tax claim had been found to be correct, the CFC would likely withdraw the $35 million damage award because the Benj. Franklin shareholders would no longer have a claim to the funds in the Benj. Franklin receivership because the entire surplus would be owed to the IRS. Previous caselaw in other *Winstar*-related cases has confirmed that it is inappropriate for such cases to continue where the damages would all be consumed in satisfying receivership debts owed to the government itself.

## Why the Parties will Recommend this Settlement for Approval by the Court

The parties (and the shareholders' counsel who participated in the settlement discussions) agree that the Benj. Franklin receivership did owe income taxes to the IRS because it has been a profitable receivership for a number of years, and receiverships are taxed like other corporations if they are profitable. But the parties have disagreed about the amount of taxes owed due to disagreements about several complex issues, including whether certain federal financial assistance ("FFA") provided to the receivership by a special government fund should have been treated as income or as a loan to the receivership. The effect of this disagreement about the FFA involves hundreds of millions of dollars of difference in the tax calculations for the Benj. Franklin receivership.[2] Both sides have legal support for their positions and it is unknown how this and the other contested issues would be resolved if they were tried in the U.S. District Court and then appealed to the appropriate U.S. Court of Appeals. It is clear that such litigation would take several more years to reach a conclusion.

Any lawsuit involves risk, time, and expense. And the settlement of a lawsuit takes all of these things into account in deciding that the possible result of a trial and an appeal is not worth the additional time, expense, and risk, particularly where the outcome would be risky to both sides. Here, the parties have decided that a settlement payment of $50 million to the IRS is both fair and adequate, as well as being a reasonable way to resolve the many complicated legal issues involved here and to avoid the extremely high costs of additional litigation.

The $50 million compromise amount was the result of considerable negotiation and give-and-take by the U.S. Department of Justice's Tax Division, the IRS, the FDIC, and counsel to various Benj. Franklin shareholders. The 75%-interest and 25%-tax allocations also were the product of the parties' negotiations. The bottom-line result is that the amount claimed by the IRS has been reduced from more than $1.2 billion to $50 million in the proposed settlement. If this proposed compromise is not found to be fair and reasonable by the Court, the tax litigation may in all likelihood resume and take several more years before it is resolved, with the ultimate outcome being uncertain.

## The Support of Benj. Franklin Shareholders Counsel

Don S. Willner is the Portland, Oregon attorney who represents shareholders of Benj. Franklin in the above-described CFC litigation, which is a shareholders' derivative action. Mr. Willner also filed a motion to intervene in the tax litigation pending before Judge Sullivan in the U.S. District Court (D.C.) in order to argue that the Benj. Franklin shareholders were the real parties in interest because the claimed tax would have eliminated any hope of the shareholders' receiving a cash distribution from the Benj. Franklin receivership estate.[3] Mr. Willner also filed

---

[2] Other areas of disagreement between the parties (and the shareholders) include how the Alternative Minimum Tax should have been applied, how the 1990 taxes should have been calculated, whether the bad debt reserve was handled correctly, which statute of limitations would apply, and whether interest and penalties would be appropriate. Any one of these legal issues might have formed the basis of a lengthy lawsuit, but in this case, all of these issues are present in the one pending suit.

[3] It is unknown whether the Benj. Franklin shareholders would be permitted to intervene in the pending tax suit if it does not settle. Thus, there is no guarantee that the shareholders' various tax arguments would be made to the Court.

a still-pending suit against the FDIC-Receiver in the U.S. District Court in Portland, Oregon, seeking to enjoin FDIC from making the disputed tax payment to the IRS. After these actions were filed by Mr. Willner and recognizing the interest of the Benj. Franklin shareholders, the FDIC invited Mr. Willner and other attorneys representing Benj. Franklin shareholders to meet with the FDIC and representatives of the IRS and the Department of Justice Tax Division to discuss the possible compromise or settlement of the tax dispute. Mr. Willner and the other shareholders' counsel and consultants participated actively in these discussions over many months, and Mr. Willner and other shareholders counsel now support the proposed tax settlement described herein and will speak in favor of the proposed tax settlement at the Fairness Hearing.

## Other Proposed Distributions from the Receivership

After the $50 million tax payment is made, the receivership's current balance of $94 million will be reduced to $44 million.[4] Additional distributions will then be made by the FDIC-Receiver from the balance in the receivership, which FDIC presently estimates as follows:

(1)     The creation of a reserve for future years' receivership and administrative expenses and other legal contingencies that must be maintained by the FDIC as Receiver for Benj. Franklin until it "closes" its receivership. It is estimated that this reserve will be approximately $1 million, but the FDIC may be able to reduce this amount prior to the FDIC-Receiver's distribution of the remaining surplus to the Benj. Franklin shareholders.

(2)     A distribution of approximately $3 million to the Benj. Franklin Shareholders Litigation Fund to reimburse all shareholder contributions to that fund. The FDIC has approved this payment pursuant to the statutory receivership claims procedures administered by the FDIC. This $3 million distribution will reimburse 4200 shareholders of Benj. Franklin who made contributions to the Litigation Fund over the last 15 years for the CFC litigation and for the tax-related litigation in Portland, Oregon and Washington, DC (as described above).[5] The FDIC also is considering the Litigation Fund's request that interest be paid on the $3 million principal amount. If interest is approved, it could amount to as much as an additional $2 to $3 million to be distributed to the Litigation Fund contributors.

(3)     The FDIC also has agreed to distribute an amount representing the reasonable fees and expenses of the shareholders' attorneys and consultants in connection with such persons' work to reduce the $1.2 billion tax liability alleged by the IRS down to the $50 million settlement amount. This will compensate for the time, expense, and expertise that all shareholders' counsel and consultants brought to the Courtroom and to the

---

[4] The receivership surplus will continue to earn interest until the surplus funds are distributed.

[5] Don S. Willner, the attorney for the previously described group of derivative shareholders, is the sole trustee of the Benj. Franklin Shareholders Litigation Fund.

settlement table in order to achieve a fair tax settlement. While the FDIC has not yet determined the total amount of legal fees and expenses it will approve pursuant to its receivership claims procedures, the amount will likely be between $1 and $2 million.[6]

After distribution of these payments, the resulting balance (estimated to be between $35 million and $39 million of "surplus" funds) will be distributed by the FDIC-Receiver to the current shareholders of Benj. Franklin who submit proof of their stock ownership in the manner specified by FDIC.[7]  If the settlement described herein is approved by the Court, you will be notified by the FDIC-Receiver at a later time about how to prove your ownership of Benj. Franklin shares in order to receive your *pro rata* share of the receivership surplus available for distribution.

## Conclusion

For all of the reasons discussed above, the FDIC as receiver of Benj. Franklin and shareholders' counsel, including Mr. Willner, recommend that the proposed tax settlement be found to be fair, adequate, and reasonable.  If you wish to advise the Court about your views on the proposed settlement, please use the attached form to do so.

**IF YOU DO NOT SEND THE ATTACHED FORM, THE COURT WILL ASSUME THAT YOU DO NOT OBJECT TO THE PROPOSED SETTLEMENT DESCRIBED IN THIS NOTICE.**

---

[6]  The FDIC's receivership claims process provides an opportunity for judicial appeal if a claimant is not satisfied with a claim determination made by the FDIC.

[7]  The amount of the surplus cannot be estimated with precision at this time due to the unresolved claims still pending with the FDIC as described in paragraphs 2 and 3 above.  However, the FDIC expects to determine these amounts prior to the distribution of the surplus to shareholders and such other distributions do not affect in any way the proposed tax settlement payment to be addressed at the fairness hearing.

To:    Clerk of the Court
       U.S. District Court for the
         District of Columbia
       United States Courthouse
       333 Constitution Avenue, N.W.
       Washington, DC 20001

          Re:   *United States v. FDIC*
               Civil Action No. 02-1427 (EGS)

1.    My name is _____
               (please print)

2.    I own _____ shares of the common stock of Benj. Franklin Federal Savings and Loan Association, Portland, Oregon ("Benj. Franklin").

3.    I have read the Notice to All Shareholders of Benj. Franklin explaining the proposed settlement of the tax claim in *United States v. Federal Deposit Insurance Corporation, et al.*, Civil Action No. 02-1427, as well as explaining the other proposed distributions to be made from the receivership surplus of Benj. Franklin.

4.    After reading the Notice (check one below):

         ☐  I agree with the proposed tax settlement, or

         ☐  I disagree with the proposed tax settlement.

5.    My additional views on this proposed settlement are as follows (attach extra pages if necessary):

        _____
        _____
        _____
        _____
        _____
        _____

6.    In addition, I would like to participate at the Fairness Hearing by (check one box):

         ☐    Appearing in person at the Fairness Hearing at the U.S. District Court in the District of Columbia to advise the Court of my views

         ☐    Sending my attorney (fill in attorney's name and address):

               _____
            to participate on my behalf at the Fairness Hearing at the U.S. District Court in the District of Columbia

**27**

☐     Appearing in person at the telephonic hook-up to the hearing to be held at the U.S. District Courthouse in Portland, Oregon, to advise the Court of my views.

☐     Sending my attorney (fill in attorney's name and address):

_____

to participate on my behalf at the telephonic hook-up to the hearing to be held at the U.S. District Courthouse in Portland, Oregon.

☐     I will not appear at the hearing, but I would like the Court to consider my written views noted above in Paragraph No. 5.

7.     I state under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge and belief.

Date: _____

_____
Print Name

_____
Signature

_____
Street Address

_____
City, State, and Zip Code

_____
Telephone No.

Send the original of this form to the Clerk of the Court at the address shown above. A copy of this completed form also must be sent to the following FDIC counsel, who will provide copies to the plaintiff United States and to designated counsel for the Benj. Franklin shareholders:

Richard S. Gill, Esq.
Federal Deposit Insurance Corporation
3501 Fairfax Drive, Room E-7128
Fairfax, Virginia 22226-3500

## DON S. WILLNER & ASSOCIATES, PC

DON S. WILLNER
(LICENSED IN OREGON AND WASHINGTON)

OREGON OFFICE
621 SW MORRISON SUITE 1415
PORTLAND, OR 97205-3500
PHONE: 503-228-4000
FAX: 503-273-8842
donswillner@aol.com

WASHINGTON OFFICE
830 SUNNYSIDE ROAD
TROUT LAKE, WA 98650
PHONE: 509-395-2000
FAX: 509-395-2839

November 8, 2004

Robert G. Clark, Esq.
Federal Deposit Insurance Corporation
550 17th Street, N.W.
H-11006
Washington, DC 20429

       Re:    Benj. Franklin Receivership: Tax Matters

Dear Bob:

    This letter sets forth my understanding of the following issues that we have discussed relative to our mutual effort to settle outstanding lawsuits.

    1.    FDIC is formally proposing to DOJ that the tax collection case be settled with a tax payment of $47 million covering all taxes, interest and penalties for all years through 2002 and that the tax payment be allocated 25% to tax and 75% to interest, all subject to approval at a fairness hearing held by the U.S. District Court for the District of Columbia.

    2.    As soon as DOJ/IRS approval is received, the FDIC will file a settlement proposal and request an early fairness hearing in the U.S. District Court for the District of Columbia. FDIC will recommend that the fairness hearing include a telephone speaker-phone hook-up to a courtroom in the U.S. District Court for the District of Oregon, in order that Pacific Northwest shareholders of Benj. Franklin and their respective counsel can be heard without traveling across the country. In addition, the FDIC will recommend that counsel for shareholders present at the hearing held in Washington, D.C. be given the opportunity to be heard.

    3.    A proposed Notice will be submitted for Court approval, and following such approval, will be sent to all located Benj. Franklin shareholders advising them of the terms of the proposed settlement and providing them all relevant details about the fairness hearing to be held by the Court. The Notice will be as clear and complete as possible, and will be distributed as widely as possible.

    4.    The Benj. Franklin receivership will pay for the cost of notifying the shareholders about the proposed settlement and the fairness hearing.

    5.    As part of the proposed Notice to shareholders, FDIC and the shareholders whom I represent will recommend that the following distributions be made by the Benj. Franklin receivership (pursuant to FDIC receivership and administrative procedures), before a partial distribution is made to all Benj. Franklin shareholders:

Robert G. Clark, Esq.
November 8, 2004
Page 2

    a.    The payment of the agreed-upon amount of taxes to the IRS and the creation of a reserve for future taxes and other legal contingencies that must be maintained by the FDIC as receiver for Benj. Franklin;

    b.    A distribution to the Benj. Franklin Shareholders Litigation Fund ("Litigation Fund") to reimburse all contributions to that fund. (This is approximately $3 million of contributions by about 4,200 shareholders, and I am the sole trustee of the Litigation Fund with fiduciary duties to the contributors.) This matter will be handled as a claim and will be determined through the receivership process. The Litigation Fund will submit its claim in the near future. Interest will be determined under the applicable provisions of the receivership priority system;

    c.    A distribution of the reasonable fees and expenses of shareholders' counsel and consultants as approved by the Court and as determined through the receivership process in connection with such persons' work to reduce the $1.2 billion tax liability alleged by the IRS against the Benj. Franklin receivership; and

    d.    After distribution of the aforementioned amounts, the balance will be distributed by the FDIC as receiver for Benj. Franklin to the current shareholders of Benj. Franklin who submit proof of their ownership in the manner specified in the Notice sent earlier to shareholders.

    6.    I recognize that the FDIC is the sole defendant in the U.S. District Court D.C. lawsuit brought by the United States and that the shareholders are not parties in the lawsuit. However, in FDIC's submission to the Court, it will be noted that I have been the sole attorney of record in the companion shareholder derivative suit in the U.S. Court of Federal Claims (for all 14 years of its existence), and in other related litigation in Portland, Oregon and Washington, D.C., and I am also sole trustee of the Benj. Franklin Shareholders Litigation Fund.

    7.    We will work together to make every possible effort to expedite the distributions to the shareholders of Benj. Franklin.

    Please let me know if you concur with this letter.

                Sincerely,

                Don S. Willner

**30**



**Federal Deposit Insurance Corporation**
550 17th Street NW, Washington, D.C. 20429-9990

Legal Division

November 9, 2004

Don S. Willner, Esq.
621 South West Morrison Street
Portland, Oregon  97205

Dear Mr. Willner:

The FDIC concurs with your letter to me dated November 8, 2004.

Sincerely,

Robert G. Clark
Senior Counsel



**FDIC**

**Federal Deposit Insurance Corporation**
1910 Pacific Ave. Dallas TX, 75201

Division of Resolutions and Receiverships

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

May 11, 2006

The Benj. Franklin Shareholders Litigation Fund
% Don Willner & Associates, P.C.
621 S.W. Morrison St. - Suite 1414
Portland, OR 97205

SUBJECT:     7166—The Benj. Franklin Federal S&LA
             Portland, OR -- In Receivership
             **NOTICE OF DISALLOWANCE OF CLAIM for Interest**

Dear Sir or Madam:

The Receiver of The Benj. Franklin Federal S&LA has reviewed your claim against the receivership insofar as it requests interest on your claim for the principal that the receiver is also reviewing.  After a thorough review of your claim for interest, along with your supporting documentation, the Receiver has determined to disallow your claim for the following reason(s):

> No interest is due on the Fund's claim because the most appropriate characterization of the Fund's claim is as an administrative claim and, as such, no interest is authorized under the applicable priority of claim, formerly 12 CFR § 569c-11, now found at 12 CFR § 360.3.  Under that priority of claim, only depositors and general creditors are entitled to interest, in the event of a surplus, and the Fund is neither a depositor nor a general creditor.

Pursuant to 12 U.S.C. Section 1821 (d) (6), if you do not agree with this disallowance, you have the right to file a lawsuit on your claim (or continue any lawsuit commenced before the appointment of the Receiver), in the United States District (or Territorial) Court for the District within which the failed institution's principal place of business was located or the United States District Court for the District of Columbia within 60 days from the date of this notice.

IF YOU DO NOT FILE A LAWSUIT (or continue any lawsuit commenced before the appointment of the Receiver) BEFORE THE END OF THE 60-DAY PERIOD, THE DISALLOWANCE WILL BE FINAL, YOUR CLAIM WILL BE FOREVER BARRED AND YOU WILL HAVE NO FURTHER RIGHTS OR REMEDIES WITH RESPECT TO YOUR CLAIM. 12 U.S.C. Section 1821(d)(6)(B).

However, if a portion of your claim is for an insured deposit, your claim is not against the Receiver but rather is against the FDIC in its "corporate" capacity as deposit insurer.  An insured depositor's rights are prescribed in 12 U.S.C. Section 1821(f) and differ from the rights described in the preceding paragraphs. [Glenn, do we need this?  I realize it's part of a standard form, but it is clearly not applicable.]

If you have any questions about this letter, please contact the undersigned at (972) 761-2666.

Sincerely,

*Glenn Glinsmann*

Glenn Glinsmann
Claims Department

RLS7218

32



**Federal Deposit Insurance Corporation**
1910 Pacific Avenue, Dallas, TX 75201

Division of Resolutions and Receiverships

May 24, 2006

The Benj. Franklin Shareholders Liquidation Fund
% Don Willner & Associates, P.C.
621 S.W. Morrison Street – Suite 1414
Portland, OR  97205

SUBJECT:   7166 – The Benj. Franklin Federal Savings and Loan Association
Portland, OR  - In Receivership
**NOTICE OF ALLOWANCE OF CLAIM OF PRINCIPAL**

Dear Sir or Madam:

On September 07, 1990, the Benj. Franklin Federal S&LA, Portland, Oregon, was closed by the Office of Thrift Supervision, and the Federal deposit Insurance Corporation was appointed Receiver.

Your claim of principal has been reviewed, and the Receiver has determined that it should be allowed. Enclosed you will find a check in the amount of $3,067,159.77.

If you have any questions, please contact Glenn Glinsmann at 972-761-2666.

Very truly yours,

Glenn Glinsmann
Claims

Enclosure

THIS IS A WATERMARKED PAPER-PRINTED WITH BLUE INK-DO NOT ACCEPT WITHOUT VERIFYING WATERMARK-HOLD TO LIGHT TO VERIFY



**FEDERAL DEPOSIT INSURANCE CORPORATION**    Date: 5/30/2006      500000244

Field Finance Center    P.O. Box 130476      JPMorgan Chase Bank, N.A. Chicago, IL    62-28/311
Dallas, TX 75313      Payable Through Chase Manhattan Bank USA, N.A.    0024720

Pay   **THREE MILLION SIXTY-SEVEN THOUSAND ONE HUNDRED FIFTY-NINE AND 77/100 DOLLARS**

          Pay Amount: **$3,067,159.77***

To The    BENJAMIN FRANKLIN SHAREHOLDER LITIGATION
Order Of    621 SW MORRISON
     SUITE 1415
     PORTLAND, OR 97205

                                              _Susan C. Brown_

VOID SIX MONTHS FROM DATE OF ISSUE                          Authorized Signature

⑈500000244⑈ ⑆031100283⑆      0924720⑈

---

## FEDERAL DEPOSIT INSURANCE CORPORATION

| Check Date: 5/30/2006 | | Vendor Number: 0000032422 | | | Check No. 500000244 | |
|---|---|---|---|---|---|---|
| Invoice Number | Invoice Date | Voucher ID | Gross Amount | Discount Taken | Late Charge | Paid Amount |
| 3067159.77-052406 | 5/24/2006 | 00008860 | 3,067,159.77 | 0.00 | 0.00 | 3,067,159.77 |

| Check Number | Date | Total Gross Amount | Total Discounts | Total Late Charges | Total Paid Amount |
|---|---|---|---|---|---|
| 500000244 | 5/30/2006 | $3,067,159.77 | $0.00 | $0.00 | $3,067,159.77 |

210445      PLEASE DIRECT ALL QUESTIONS REGARDING THIS PAYMENT TO: (972) 761-8098

34

**Microsoft Excel - PII, Failed Institutions.xls**

File Edit View Insert Format Tools Data Window Help Adobe PDF — Type a question for help

FDIC
FEDERAL DEPOSIT
INSURANCE CORPORATION

PII=Post Insolvency Interest

| | Institution Name | | |
|---|---|---|---|
| 14 | THE BENJAMIN FRANKLIN FS&LA | PII paid to Depositor class (Uninsured and Corporate) and General Trade Creditors | |
| 15 | VESTERN FSB | No PII paid. Dividends paid of 93.882 to Depositor Category. | |
| 16 | NEW MERABANK TEXAS, FSB | PII paid to Depositor class (Uninsured and Corporate) and General Trade Creditors | |
| 17 | GULF FS&LA | No Dividends, assistance agreement | |
| 18 | WESTERN COMMUNITY S&L | No PII paid. Dividends paid of 100.00 to Depositor and General Trade Creditors. | |
| 19 | RED RIVER FS&LA | PII paid to Depositor class and General Trade Creditors | |
| 20 | VALLEY FIRST FS&LA | PII paid to Depositor class and General Trade Creditors | |
| 21 | CHISHOLM FSA | PII paid to Depositor class and General Trade Creditors | |
| 22 | FIRST STATE SA | No PII paid. Dividends paid of 100.00 to Depositor and General Trade Creditors. | |
| 23 | SPRINGFIELD FSA | PII paid to Depositor class, there were no General Trade Creditors. | |
| 24 | SUMMIT FIRST FS&LA | | |
| 25 | UNITED FS&LA | | |
| 26 | ST. LOUIS COUNTY SA, FA | | |
| 27 | BANK USA, SA | | |
| 28 | CIMARRON FSA | | |
| 29 | HOME FS&LA, FA | | |
| 30 | FRONTIER SA | | |
| 31 | FIRST FS&LA | | |
| 32 | FIRST OHIO SB | | |
| 33 | FIRST FS&LA OF BROWARD COUNTY | | |
| 34 | FIRST FS&LA OF REDDING | | |
| 35 | INVESTMENT FS&LA | | |
| 36 | HACIENDA FS&LA | | |

Sheet1 / Sheet2 / Sheet3

start    Microsoft Office...    Microsoft Excel - P...    Initial Disclosures...    10:20 AM

10/13/06

35

Financial Data Warehouse - GL Balance Summary Report

Dates Selected: 1986 TO 2006
Balance Period: Inception To Date

**Post Insolvency Interest Paid**

| FIN | Name |
|-----|------|
| 1206 | NEW MERABANK TEXAS, FSB |
| 1212 | SUNBELT SAVINGS |
| 1216 | REPUBLIC FSB |
| 1222 | FIRST FED.S&L ASSOC.RUSSELL COUNTY |
| 1226 | MARINE VIEW FSB |
| 1303 | TRANSOHIO, FSB |
| 2136 | ATLANTIC FINANCIAL FEDERAL W.VA. FSA |
| 2187 | CHISHOLM FS & LA |
| 2189 | FIRST FEDERAL SAVINGS ASSOCIATION |
| 2194 | SPRINGFIELD FSLA |
| 2205 | RED RIVER FS & LA |
| 2346 | CITY AND COUNTY BANK OF KNOX COUNTY |
| 2348 | UNITED AMERICAN BANK IN HAMILTON COUNTY |
| 2349 | CITY AND COUNTY BANK ROANE COUNTY |
| 2350 | CITY AND COUNTY BANK OF ANDERSON COUNTY |
| 2355 | FIRST PEOPLES BANK OF WASHINGTON COUNTY |
| 2370 | CITY AND COUNTY BANK OF JEFFERSON COUNTY |
| 2382 | CITIZENS BANK OF MONROE COUNTY |
| 2518 | ALLEN CO BANK & TRUST |
| 2740 | FIRST STATE BANK OF BOVINA |
| 4217 | NBC BANK-RIO GRANDE VALLEY, N.A. |
| 4220 | NBC BANK-UVALDE, N.A. |
| 4221 | HULEN NATIONAL BANK |
| 4243 | MONTGOMERY NATIONAL BANK |
| 4248 | THE PERMANENT SAVINGS BANK |
| 4326 | THE MCKINLEY BANK |
| 4400 | SOUTHEAST BANK, N.A. |
| 4401 | SOUTHEAST BANK OF WEST FLORIDA |
| 4485 | FIRST EXCHANGE BANK OF NORTH ST. LOUIS |
| 4498 | RIVERHEAD SAVINGS BANK |
| 4523 | FIRST CITY, ALICE, TEXAS |
| 4524 | FIRST CITY, ARANSAS PASS |
| 4525 | FIRST CITY, AUSTIN |
| 4526 | FIRST CITY, BEAUMONT |
| 4527 | FIRST CITY, BRYAN |
| 4528 | FIRST CITY, CORPUS CHRISTI |
| 4529 | FIRST CITY, DALLAS |
| 4530 | FIRST CITY, EL PASO |
| 4531 | FIRST CITY, GRAHAM |
| 4533 | FIRST CITY, KOUNTZE |
| 4534 | FIRST CITY, LAKE JACKSON |
| 4535 | FIRST CITY, LUFKIN |

Financial Data Warehouse - GL Balance Summary Report

Dates Selected: 1986 TO 2006
Balance Period: Inception To Date

**Post Insolvency Interest Paid**

**FIN   Name**
4536 FIRST CITY, MADISONVILLE
4537 FIRST CITY, MIDLAND
4538 FIRST CITY, ORANGE
4539 FIRST CITY, SAN ANGELO
4540 FIRST CITY, SAN ANTONIO
4541 FIRST CITY, SOUR LAKE
4542 FIRST CITY, TYLER
4543 FIRST CITY COLLECTING BANK
4556 MERITOR SAVINGS BANK
4557 EASTLAND BANK
4634 VICTORY STATE BANK
4640 GOLDEN CITY COMMERCIAL BANK
4645 BANK OF HONOLULU
4663 GUARANTY NATIONAL BANK OF TALLAHASSEE
5432 WESTERN NATIONAL BANK OF LOVELL
5580 GOLDEN PACIFIC NATIONAL BANK
5610 PEOPLES NATIONAL BANK OF ROCKLAND COUNTY
5950 MT. ZION STATE BANK
5991 KIRBY STATE BANK
6000 HEARTLAND FEDERAL SAVINGS & LOAN ASSOCIATION
6006 DOLLAR SAVINGS BANK
6359 BANK OF LAKE HELEN
6373 SOUTHWESTERN BANK
6400 TRI-STATE BANK
6416 COLUMBIA PACIFIC BANK & TRUST
6433 MINERAL BANK OF NEVADA
6471 UNITED OF AMERICAN BANK
6576 STRONG'S BANK
6599 FIRST ENTERPRISE BANK
6657 VALENCIA BANK
6726 THE BANK OF PARK COUNTY
6852 HERITAGE BANK AND TRUST
6932 CARVER SLA
7098 FRONTIER FS & LA
7118 GIBRALTER SAVINGS BANK, F.S.B.
7166 THE BEN FRANKLIN FS & LA
7217 BANK USA, FEDERAL ASSOCIATION
7255 FRONTIER SAVINGS ASSOCIATION
7258 MID-AMERICA FS & LA
7358 BEACH FEDERAL SAVINGS BANK
7400 SANTA BARBARA FEDERAL SAVINGS & LOAN ASSN
7416 OLD BOROUGH FEDERAL SAVINGS & LOAN ASSN

Financial Data Warehouse - GL Balance Summary Report

Dates Selected: 1986 TO 2006
Balance Period: Inception To Date

**Post Insolvency Interest Paid**

**FIN  Name**
7502 VALLEY FIRST/HOME FSLA
7516 STATE SLA/SANDIA FSLA
7560 TRI-COUNTY SLA

Financial Data Warehouse - GL Balance Summary Report

Dates Selected: 1986 TO 2006
Balance Period: Inception To Date

**Stockholders Paid**


**FIN    Name**
1119  BIRMINGHAM BLOOMFIELD BANK
1206  NEW MERABANK TEXAS, FSB
1214  FIRST SECURITY FSB
1216  REPUBLIC FSB
2136  ATLANTIC FINANCIAL FEDERAL W.VA FSA
2220  CITY BANK OF PHILADELPHIA
2265  FIRST BANK OF MACON COUNTY
2273  TONEY BROTHERS BANK
2274  SOUTHERN NATIONAL BANK
2280  LIVINGSTON STATE BANK
2460  FARMERS SAVINGS BANK
2518  ALLEN CO BANK AND TRUST COMPANY
2698  HAMILTON COUNTY STATE BANK
2740  FIRST STATE BANK OF BOVINA
4400  SOUTHEAST BANK, N.A.
4401  SOUTHEAST BANK OF WEST FLORIDA
4523  FIRST CITY, ALICE, TEXAS
4524  FIRST CITY, ARANSAS PASS
4525  FIRST CITY, AUSTIN
4526  FIRST CITY, BEAUMONT
4527  FIRST CITY, BRYAN
4528  FIRST CITY, CORPUS CHRISTI
4529  FIRST CITY, DALLAS
4530  FIRST CITY, EL PASO
4531  FIRST CITY, GRAHAM
4532  FIRST CITY, HOUSTON
4533  FIRST CITY, KOUNTZE
4534  FIRST CITY, LAKE JACKSON
4535  FIRST CITY, LUFKIN
4536  FIRST CITY, MADISONVILLE
4537  FIRST CITY, MIDLAND
4538  FIRST CITY, ORANGE
4539  FIRST CITY, SAN ANGELO
4540  FIRST CITY, SAN ANTONIO
4541  FIRST CITY, SOUR LAKE
4542  FIRST CITY, TYLER
4543  FIRST CITY COLLECTING BANK
4634  VICTORY STATE BANK
4640  GOLDEN CITY COMMERCIAL BANK
5308  FRANKLIN NATIONAL BANK
6000  HEARTLAND FEDERAL SAVINGS & LOAN ASSN.
6290  THE PEOPLES STATE SAVINGS BANK

Financial Data Warehouse - GL Balance Summary Report

Dates Selected: 1986 TO 2006
Balance Period: Inception To Date

**Stockholders Paid**

| FIN | Name |
|-----|------|
| 6320 | THE PEOPLES BK OF THE VIRGIN ISLANDS |
| 6355 | THE FARMERS STATE BANK |
| 6400 | TRI-STATE BANK |
| 7201 | MERABANK FSB |
| 7166 | THE BEN FRANKLIN FS & LA |
| 7400 | SANTA BARBARA FEDERAL SAVINGS & LOAN ASSN |
| 7609 | HEIGHTS OF TEXAS, SSB |