# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **THE BENJ. FRANKLIN SHAREHOLDERS LITIGATION FUND, BY ITS SOLE TRUSTEE, DON S. WILLNER** | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Case No. 06-01025 (EGS) |
| **FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR THE BENJ. FRANKLIN FS&LA, PORTLAND, OREGON** | ) ) ) ) ) | |
| Defendant. | ) ) ) | |

## FDIC-RECEIVER'S OPPOSITION AND CROSS MOTION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, INCLUDING STATEMENT OF MATERIAL FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES

Bruce C. Taylor
Federal Deposit Insurance Corporation
550 17th Street, NW
Room VS-E7118
Washington, DC 20429
(703) 562-2436 (Telephone)
(703) 562-2478 (Facsimile)

Counsel for Federal Deposit Insurance Corporation,
as Receiver for The Benj. Franklin FS&LA

Date:   January 5, 2007

# TABLE OF CONTENTS

STATEMENT OF THE ISSUE ................................................................................. 1

SUMMARY ........................................................................................................... 1

ARGUMENT ........................................................................................................ 2

    I.   The BFS Lit. Fund's Legal Expenses and Fees Do Not Receive Interest ..................... 2

        A.  The BFS Lit. Fund's Legal Fees and Expenses Are Properly Treated as Administrative Expenses of the FDIC-Receiver and Are Not Entitled to Interest . 4

        B.  The Cases Cited by the BFS Lit. Fund in Support of Its Argument Are Inapplicable or Materially Distinguishable ............................................................. 6

            1.  The Primary Bank Cases Cited by the BFS Lit. Fund Are Inapplicable .......... 7

            2.  The Primary Section 360.3 Cases Cited by the BFS Lit. Fund Are Distinguishable or Conflict with the FDIC's Interpretation of the Regulation 10

        C.  Payment of Interest to the IRS Does Not Entitle the BFS Lit. Fund to Interest ... 13

    II.  The FDIC's Interpretation of its Regulation is Entitled to *CHEVRON* Deference ..... 15

    III. Equity Does Not Control This Case – But it is not Unfair to Deny Interest to the BFS Lit. Fund ................................................................................................................... 18

CONCLUSION ..................................................................................................... 21

FDIC-RECEIVER'S STATEMENT OF MATERIAL FACTS ............................................. Facts 1

## TABLE OF AUTHORITIES

**Cases**

*Bailey v. United States,*
  53 Fed. Cl. 252 (2002) ............................................................................. 11, 12, 13

*Chevron v. Natural Resources Defense Council,*
  467 U.S. 837, 104 S.Ct. 2778 (1984).................................................... 13, 15, 16

*Citizens State Bank of Lometa v. FDIC,*
  946 F.2d 408 (5th Cir. 1991) ............................................................................. 8, 9

*FDIC v. Iowa Growthland Fin. Corp.,*
  523 N.W.2d 591, 594 (Iowa 1994) ........................................................................ 7

*Golden Pacific Bancorp v. FDIC,*
  375 F.3d 196 (2nd Cir. 2004).................................................................................. 7

*Library of Congress v. Shaw,*
  478 U.S. 310, 106 S.Ct. 2957 (1986)................................................................... 18

*Mitsuo Tagawa v. Clarence K. Karimoto,*
  43 Haw. 1 (Haw. 1958) ........................................................................................... 8

*National Cable & Telecomm. Ass'n v. Brand X Internet Services,*
  545 U.S. 967, 125 S.Ct. 2688 (2005).................................................................. 13

*Pinckney v. Wylie,*
  86 F.2d 541 (5th Cir. 1936) ............................................................................... 8, 9

*Suess v. United States,*
  33 Fed. Cl. 89 (1995) .............................................................................................. 5

*Suess v. United States,*
  52 Fed. Cl. 221 (2002) ...................................................................................... 5, 20

*Suess v. United States,*
  ____ Fed. Cl. ____, 2006 WL 3703119 (Dec. 13, 2006) ..................................... 5

*Ticonic National Bank v. Sprague,*
  303 U.S. 406, 58 S.Ct. 612 (1936)..................................................................... 8, 9

*United States v. Mead Corp.,*
  533 U.S. 218, 121 S.Ct. 2164 (2001) .................................................................. 16

*United States v. Noland,*
  517 U.S. 535, 116 S.Ct. 1524 (1996)................................................................... 18

*Waterview Management Co. v. FDIC,*
  257 F.Supp.2d 31 (D.D.C. 2003)................................................................... 10, 16

*Wilhoit v. FDIC,*
  143 F.2d 14 (6th Cir. 1943) .................................................................................... 8

**Statutes**

12 U.S.C. § 1813(x)(1) ............................................................................................... 3
12 U.S.C. § 1821(c)(2)(C) ........................................................................................ 13
12 U.S.C. § 1821(c)(3)(C) ........................................................................................ 13
12 U.S.C. § 1821(d)(11) ............................................................................................ 12
12 U.S.C. § 1821(d)(11)(A)................................................................................. 11, 12
12 U.S.C. § 1821(e) .................................................................................................. 10
12 U.S.C. § 1821(e)(3)(A)(i) .................................................................................... 10

12 U.S.C.A. § 1821, Historical and Statutory Notes, 1993 Amendments, and Effective and
  Applicability Provisions, 1993 Acts ............................................................................ 12
28 U.S.C. § 2516(a) .................................................................................................... 20
IRC § 6601 .................................................................................................................. 13
Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, § 3001(a), 107 Stat. 312 ............ 12

## Other Authorities

Conservators and Receivers, 50 Fed. Reg. 48970, 48981 (Nov. 27, 1985).................................. 17
Conservators and Receivers; Priority of Claims, 53 Fed. Reg. 25129, 25131 (July 5, 1988) 16, 17

## Regulations

12 C.F.R. § 360.3 ....................................................................................................... passim
12 C.F.R. § 360.3(a)(1).......................................................................................... 1, 5, 12, 21
12 C.F.R. § 360.3(a)(6)................................................................................................... 3
12 C.F.R. § 360.3(a)(7).............................................................................................. 4, 16
12 C.F.R. § 360.3(a)(10)       1, 2, 15
12 C.F.R. § 360.3(b) ................................................................................................ 16, 17

**FDIC-RECEIVER'S OPPOSITION AND CROSS MOTION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT, INCLUDING STATEMENT OF MATERIAL
FACTS, AND MEMORANDUM OF POINTS AND AUTHORITIES**

## STATEMENT OF THE ISSUE

To facilitate the settlement of a federal tax claim, the FDIC-Receiver paid $3 million to the BFS Lit. Fund to cover legal fees and expenses as an administrative expense of the FDIC-Receiver under 12 C.F.R. § 360.3. The BFS Lit. Fund agreed that the payment of interest would be governed by 12 C.F.R. § 360.3. Should the Court award interest on the legal fees even though the FDIC-Receiver determined that the BFS Lit. Fund is not entitled to interest under the regulation?

No – None of the remaining receivership surplus should be carved out as interest. Rather, the amount sought as interest by the BFS Lit. Fund should be distributed to the entire class of shareholders as a liquidating dividend and return of equity under 12 C.F.R. § 360.3(a)(10).

## SUMMARY

The FDIC-Receiver allowed the BFS Lit. Fund to request payment of $3 million in legal fees and expenses, plus interest, from the receivership surplus as an accommodation in connection with the settlement between the FDIC-Receiver and the IRS of a $1.2 billion tax claim. The parties agreed that the BFS Lit. Fund's request would be treated as a claim under 12 C.F.R. § 360.3. The shareholders agreed to these terms. The FDIC-Receiver determined that the $3 million in legal fees and expenses was an administrative expense of the FDIC-Receiver under 12 C.F.R. § 360.3(a)(1) and paid $3 million to the BFS Lit. Fund. But the FDIC-Receiver determined that the BFS Lit. Fund is not entitled to interest under the regulation. Although the

1

Court reviews this matter *de novo*, the FDIC's position on which claims are entitled to interest under the regulation is entitled to deference.

It is only through the tax settlement that the BFS Lit. Fund had the opportunity to submit a proof of claim to the FDIC-Receiver for recovery of the legal fees and expenses comprising the fund. Until the tax settlement became a reality, contributors to the fund had been told that their contributions would be returned from any recovery in a derivative action pending in the United States Court of Federal Claims. The BFS Lit. Fund had no reasonable expectation of recovering interest in the United States Court of Federal Claims. In connection with the tax settlement, the shareholders agreed that the right to interest on the $3 million paid by the FDIC-Receiver would be decided under 12 C.F.R. § 360.3. The BFS Lit. Fund cannot now be heard to complain that it is unfair to distribute the remaining receivership surplus to the entire class of shareholders as a liquidating dividend and return of equity, as provided by 12 C.F.R. § 360.3(a)(10).

**ARGUMENT**

**I.  THE BFS LIT. FUND'S LEGAL EXPENSES AND FEES DO NOT RECEIVE INTEREST**

The BFS Lit. Fund argues at length that the FDIC-Receiver may pay interest. But that is not the issue. It is undisputed that the FDIC-Receiver may pay interest, but 12 C.F.R. § 360.3 dictates when and to whom interest is paid. And interest is not available on the $3 million paid by the FDIC-Receiver to the BFS Lit. Fund as an administrative expense in connection with the settlement of other litigation.

This case is governed by a specific regulation that controls the distribution of the assets of failed savings and loan associations such as Benj. Franklin. The regulation is not silent on the issue of interest. It expressly provides for interest on specified classes of claims. But the BFS Lit. Fund's claim for interest is not among the claims entitled to interest under section 360.3.

2

In pertinent part, the regulation provides:

> (a) Unsecured claims against an association or the receiver that are proved to the satisfaction of the receiver shall have priority in the following order:
>
> (1) Administrative expenses of the receiver, including the costs, expenses, and debts of the receiver.
>
>                      * * *
>
> (6) Claims for withdrawable accounts, including those of the [FDIC] as subrogee or transferee, and all other claims *which have accrued and become unconditionally fixed on or before the date of default*, whether liquidated or unliquidated . . .
>
> (7) Claims other than those that have accrued and become unconditionally fixed on or before the date of default, *including claims for interest after the date of default on claims under paragraph (a)(6) of this section. . .*
>
>                      * * *
>
> (b) Interest after the date of default *on claims under paragraph (a)(6)* of this section shall be at a rate or rates adjusted monthly to reflect the average rate for U.S. Treasury bills with maturities of not more than ninety-one (91) days during the preceding three (3) months.

(Emphasis added).

For purposes of this case, "default" means the determination by the Office of Thrift Supervision to place Benj. Franklin in receivership on September 7, 1990.[1]  Thus, the "date of default" under 12 C.F.R. § 360.3(a)(6) means September 7, 1990.  It is undisputed – and indisputable – that the $3 million in legal fees and expenses that comprise the principal portion of the BFS Lit. Fund's proof of claim did not accrue and become unconditionally fixed before the date of default (September 7, 1990).  Thus, the fees and expenses cannot be considered a priority 6 claim.  Under the circumstances, the FDIC-Receiver determined that the only reasonable way to characterize the BFS Lit.

---

[1]  *See* 12 U.S.C. § 1813(x)(1).

Fund's post-closing legal fees and expenses was as administrative expenses of the Receiver.

But even if the $3 million principal portion of the BFS Lit. Fund's proof of claim were treated as a priority 7 claim, it wouldn't help its case. Priority 7 does not provide a separate class of claims entitled to interest. Rather, it relegates "other" claims to a lower priority than priority 6 claims and expressly provides that only priority 6 claims – those of depositors, the FDIC as subrogee of the depositors, and general creditors – are entitled to interest.

The BFS Lit. Fund is not entitled to interest under 12 C.F.R. § 360.3.

## A. The BFS Lit. Fund's Legal Fees and Expenses Are Properly Treated as Administrative Expenses of the FDIC-Receiver and Are Not Entitled to Interest

The BFS Lit. Fund argues that the FDIC-Receiver improperly classified its "claim" as an administrative expense. The BFS Lit. Fund contends that its legal fees and expenses are a priority 7 claim under 12 C.F.R. § 360.3(a)(7) that is entitled to interest. In the alternative, the BFS Lit. Fund argues that section 360.3 does not prohibit interest on the principal portion of its proof of claim. The BFS Lit. Fund is mistaken on both counts.

Again, it is important to remember that the $3 million in legal fees and expenses held in the BFS Lit. Fund was not a claim against the receivership in the ordinary course of receivership operations. Rather, the FDIC-Receiver agreed to allow the BFS Lit. Fund to file a proof of claim only as an accommodation in connection with the settlement of the $1.2 billion IRS tax claim in this Court and the injunctive action filed against the FDIC-Receiver in the District of Oregon.[2]  It

---

[2]  Plaintiff's Statement of Uncontroverted Material Facts ("Pl. Sta. Facts") ¶¶ 11-16; Plaintiff's Appendix ("Pl. App.") 20, 25-26.

is in this context that the FDIC-Receiver had to determine where the BFS Lit. Fund's claim for $3 million and interest fit within the regulation.

The BFS Lit. Fund was created to fund an action by a handful of shareholders against the United States for the breach of the government's promise to allow the failed Benj. Franklin FS&LA ("Benj. Franklin" or "failed Thrift") to use supervisory goodwill as capital ("Goodwill Case").[3] The shareholder plaintiffs in the Goodwill Case sued on behalf of the failed Benj. Franklin and all shareholders of the failed thrift and initially asked the United States Court of Federal Claims ("the Court of Federal Claims") to enter a judgment for $181 million, the estimated value of their stock.[4] The Court of Federal Claims ruled that the shareholder plaintiffs could continue the Goodwill Case as a derivative action on behalf of the failed Thrift but not as a class action or in their individual capacities.[5] The shareholder plaintiffs later asked for damages totaling over $1 billion.[6] The Court of Federal Claims awarded damages of $35 million in 2002.[7] Recently, the Court of Federal Claims increased the award to just over $52 million.[8]

To facilitate the terms of the tax settlement with respect to the BFS Lit. Fund, the FDIC-Receiver determined that the funds used by the BFS Lit. Fund were administrative expenses of the FDIC-Receiver – a priority 1 claim under 12 C.F.R. § 360.3(a)(1).

This does not mean, however, that the BFS Lit. Fund is entitled to interest because the FDIC-Receiver did not pay the fees and expenses underlying the BFS Lit. Fund's claim as they were collected and used. As noted, the BFS Lit. Fund did not have a claim of any type against

---

[3] FDIC Ex. 1.

[4] *Suess v. United States*, 33 Fed. Cl. 89, 90 (1995).

[5] *Id*. at 97.

[6] *Suess v. United States*, 52 Fed. Cl. 221, 228 (2002).

[7] *Id*. at 232.

[8] *Suess v. United States*, ____ Fed. Cl. ____, 2006 WL 3703119, at *10 (Dec. 13, 2006).

the receivership until the interested parties settled the IRS tax claim and agreed to allow the BFS

Lit. Fund to submit a proof of claim for payment in accordance with 12 C.F.R. § 360.3.

     In advance of the IRS tax settlement, the FDIC-Receiver agreed to pay the BFS Lit. Fund

$3 million for the principal amount of its proof of claim.  The FDIC-Receiver did not agree to

pay interest as part of the settlement.  Rather, the parties agreed that the issue of interest would

be determined under 12 C.F.R.. § 360.3.  The FDIC-Receiver paid the $3 million as soon as it

allowed that portion of the BFS Lit. Fund's proof of claim.  That is, the FDIC-Receiver paid the

principal portion of the claim when it was proved to the satisfaction of the FDIC-Receiver – in a

sense when the claim became due.  But the FDIC-Receiver determined that the BFS Lit. Fund

was not entitled to interest on the $3 million under the regulation.

### B.  The Cases Cited by the BFS Lit. Fund in Support of Its Argument Are Inapplicable or Materially Distinguishable

     The BFS Lit. Fund contends that it is entitled to interest because various courts have

ruled that a receiver may pay interest to the FDIC as deposit insurer and other creditors even in

the absence of specific statutory authority to do so.  That argument proves a principle that is not

in dispute.  The FDIC-Receiver does not deny that it may pay interest as provided by 12 C.F.R. §

360.3; it simply contends that the BFS Lit. Fund is not among the claimants entitled to interest

under the regulation.

     But the cases primarily relied upon by the BFS Lit. Fund to support its argument are

inapplicable or easily distinguishable.  None of the cases addresses circumstances where a

receiver agrees to process a post-closing claim in connection with the settlement of litigation.

Most of the cases do not involve 12 C.F.R. § 360.3 at all.  The few cases that mention or discuss

12 C.F.R. § 360.3 do so in dicta or espouse positions that directly conflict with the FDIC's interpretation of the regulation.

### 1. The Primary Bank Cases Cited by the BFS Lit. Fund Are Inapplicable

Most of the cases cited by the BFS Lit. Fund address the liquidation of failed banks. Not only are the facts of those cases dissimilar to the facts of this case, the cases do not involve 12 C.F.R. § 360.3.

For instance, in *FDIC v. Iowa Growthland Fin. Corp.*[9] the Supreme Court of Iowa stated that the Federal Deposit Insurance Act reflected "Congress' intent that money in the deposit insurance fund bear interest in order to protect the fiscal integrity of the fund" and allowed the FDIC to retain the surplus of the troubled First National Bank in Humboldt as a reasonable return on the funds it had advanced to cover deposit liabilities. *Iowa Growthland* bears no useful resemblance to this case.

In *Golden Pacific Bancorp v. FDIC* the court noted that "creditors to a liquidation are entitled to interest, just as any other judgment creditor, even absent specific statutory authorization" and that the "FDIC, as the depositors' subrogee, is entitled to post-insolvency interest."[10] The general proposition stated by the court in *Golden Pacific* is inapplicable to the BFS Lit. Fund – the BFS Lit. Fund is not a true creditor of the failed Thrift. In addition, the court's award of interest to the FDIC in *Golden Pacific* hinged on the FDIC's role as subrogee of the depositors of the failed Golden Pacific National Bank. The BFS Lit. Fund is neither a depositor nor the subrogee of a depositor. It is a claimant solely by sufferance of the FDIC-Receiver in connection with the settlement of litigation. Further, the BFS Lit. Fund agreed that the issue of interest would be determined under 12 C.F.R. § 360.3.

---

[9] *FDIC v. Iowa Growthland Fin. Corp.*, 523 N.W.2d 591, 594 (Iowa 1994).

[10] *Golden Pacific Bancorp v. FDIC*, 375 F.3d 196, 203-04 (2nd Cir. 2004).

In *Wilhoit v. FDIC* the FDIC's right to interest ultimately rested on its right under federal law to the same dividends as depositors and the right of depositors under Kentucky law to receive interest on their deposits until paid.[11]  This case is not governed by *Wilhoit v. FDIC*.

In *Mitsuo Tagawa v. Clarence K. Karimoto* a group of depositors asked for interest against a surplus bank in receivership after the wartime restrictions on their accounts were lifted. The Hawaii Supreme Court stated that:

> The real basis for a bank's liability in receivership for legal interest in the event surplus assets exist over and above the amount necessary to pay the claims of all depositors and creditors of the bank in receivership is that the depositors and creditors are entitled to compensation (not damages) for the delay in making reparation of their claims after the bank closed its doors.  The rule is based upon equitable considerations and not upon the fault of either the bank, the depositors or creditors.[12]

Under Hawaii law the plaintiff depositors were entitled to interest "as an incident to [their] deposit" at the applicable statutory rate.[13]  In large part, the Hawaii Supreme Court predicated its ruling on the fact that the depositors' legal status was matured and unconditional at the inception of the receivership.[14]  Again, the BFS Lit. Fund is not a depositor and was not a creditor of Benj. Franklin when it went into receivership.

The court in *Citizens State Bank of Lometa v. FDIC* generally states "courts have consistently denied post-insolvency interest, as such an award would violate the rules of 'ratable' distribution" except "where the assets of the receivership are sufficient to pay all provable claims in full . . . ."[15]  This general statement is inapplicable to the facts of this case.  The cases cited by the Fifth Circuit in *Citizens State Bank of Lometa* to support the general statement involved

---

[11] *Wilhoit v. FDIC*, 143 F.2d 14, 17-18 (6th Cir. 1943).

[12] *Mitsuo Tagawa v. Clarence K. Karimoto*, 43 Haw. 1, 8 (Haw. 1958).  (Internal citation omitted).

[13] *Id*. at 8.

[14] *Id*. at 9.

[15] *Citizens State Bank of Lometa v. FDIC*, 946 F.2d 408, 416-17 (5th Cir. 1991), citing *Ticonic National Bank v. Sprague*, 303 U.S. 406, 58 S.Ct. 612, 614 (1936) and *Pinckney v. Wylie*, 86 F.2d 541, 543 (5th Cir. 1936).

claimants whose rights were established *prior* to insolvency.  In *Ticonic National Bank v.*

*Sprague* the Supreme Court considered the rights of secured creditors:

> By contract or, as in this case, by statute, the secured creditors gain
> or are given a lien on or right in property 'in addition to their claim
> against the estate of the bank.'
>
> * * *
>
> As the obligation to pay interest is not destroyed by the insolvency
> and as the rights of the secured creditor in his collateral,
> contractual or statutory, are likewise unaffected, we are of the
> opinion that a secured creditor of a national bank in receivership
> may enforce his lien against his security, where it is sufficient to
> cover both principal and interest, until his claim for both is
> satisfied.[16]

In *Pinkney v. Wylie* the Fifth Circuit reviewed a secured noteholder's right to receive a dividend

from the assets of an insolvent bank standing as surety for the underlying debt.[17]  *Pinckney v.*

*Wylie* does not explicitly discuss the secured creditor's right to interest, so it does not appear to

provide direct support for the general statement in *Citizens National Bank of Lometa* regarding a

creditor's right to interest if sufficient assets exist to pay all provable claims.

  This case stands in stark contrast to *Citizens National Bank of Lometa* and the other bank

cases cited by the BFS Lit. Fund.  This case does not involve the rights of a depositor.  Nor does

it involve the rights of a creditor whose right to interest was firmly established by contract or

statute either before or after insolvency.  The BFS Lit. Fund's "claim" did not exist before the

failure of Benj. Franklin.  It did not arise under a contract or statute under which interest accrued

on the funds in its hands.  The BFS Lit. Fund's  right to file a proof of claim arose solely in

connection with a settlement whose terms explicitly provided that any right to interest would be

---

[16]  *Ticonic National Bank v. Sprague*, 303 U.S. 406, 58 S.Ct. 612, 615 (1936)
[17]  *See Pinckney v. Wylie*, 86 F.2d 541, 541-42 (5th Cir. 1936)

decided under 12 C.F.R. § 360.3, a specific regulation that controls the issue of whether the BFS
Lit. Fund is entitled to interest.

**2.    The Primary Section 360.3 Cases Cited by the BFS Lit. Fund Are Distinguishable or
Conflict with the FDIC's Interpretation of the Regulation**

The BFS Lit. Fund cites two cases involving savings and loan liquidations that on
the surface appear to lend support to the BFS Lit. Fund's position.  But a closer look
proves otherwise.

*Waterview Management* is easily distinguishable.  In *Waterview Management* the
court reviewed the appropriate measure of damages under 12 U.S.C. § 1821(e), a specific
statutory provision that allows receivers to repudiate burdensome contracts inherited from
a failed insured depository institution.[18]  The statute provides that a contract party is
entitled to "actual direct compensatory damages" if a receiver repudiates a burdensome
unexpired lease or executory contract.[19]  The court in *Waterview Management* ruled that
the statutory measure of damages under 12 U.S.C. § 1821(e) included interest.[20]

The discussion of 12 C.F.R. § 360.3 in *Waterview Management* is dicta.  It was
unnecessary to the determination of the damages issue under 12 U.S.C. § 1821(e).  The
district court's discussion of 12 C.F.R. § 360.3 was superfluous once the court determined
that "actual direct compensatory damages" under 12 U.S.C. § 1821(e) included interest.
In any event, *Waterview Management* is not germane to this case.  This is not a
repudiation case.  Nor is it a damages case.  Unlike *Waterview Management*, this case is
controlled by the provisions of 12 C.F.R. § 360.3 and the FDIC's interpretation of the
regulation under the unusual facts presented.

---

[18]  *Waterview Management Co. v. FDIC*, 257 F.Supp.2d 31 (D.D.C. 2003).

[19]  12 U.S.C. § 1821(e)(3)(A)(i).

[20]  *Waterview Management*, 257 F.Supp.2d at 34 (D.D.C. 2003)

Nor does *Bailey* control this case. The *Bailey* case did not involve a surplus. Any statement by the Court of Federal Claims regarding the payment of interest from surplus receivership funds is speculative and dicta at best. Specifically, the Court of Federal Claims doesn't discuss 12 C.F.R. § 360.3 in a meaningful way. In *Bailey* – another goodwill case in the Court of Federal Claims – the shareholder plaintiffs asserted contract and takings claims against the United States. The FDIC, as successor in interest to the failed thrift in that case, had also asserted claims on behalf of the failed thrift against the United States. The Court of Federal Claims had earlier dismissed the FDIC from the *Bailey* case, however, because it found that the FDIC could not prove sufficient damages to cover the receivership deficit and return funds to any non-governmental creditor, including the shareholder plaintiffs.[21] The court dismissed the shareholder plaintiffs' contract claim at the time. The court then addressed the only remaining claim in the case, the shareholder plaintiffs' takings claim. Having found that a surplus would not result under any damage theory, the Court of Federal Claims ruled that the shareholder plaintiffs no longer had standing to protect the only property interest they had: "[N]amely their interest 'in the surplus of potential recoveries.' "[22]

In *Bailey* the Court of Federal Claims addressed the receivership distribution issue primarily by reference to 12 U.S.C. § 1821(d)(11)(A). Section 360.3 was not at issue in the *Bailey* case. The court's statement that the FDIC would pay interest on certain expenses related to the *Bailey* case is attributed to the terms of a "*contract* of sale by which the RTC [the FDIC's predecessor to the rights of the failed thrift] obtained

---

[21] *Bailey v. United States*, 53 Fed. Cl. 252, 253 (2002).

[22] *Id.*, at 257.

Security's [the failed thrift] goodwill claim from the Security receivership . . . ."[23]  But the BFS Lit. Fund does not have a contractual right to interest.

In addition, the Court of Federal Claim's indirect reliance on 12 U.S.C. § 1821(d)(11)(A)(i) is misplaced.  Section 1821(d)(11)(A)(i) not only fails to address interest, it does not apply to the Benj. Franklin receivership.  The version of 12 U.S.C. § 1821(d)(11) cited by the Court of Federal Claims, commonly known as the National Depositor Preference statute, was enacted in 1993.[24]  Its provisions are applicable only to "insured depository institutions for which a receiver is appointed after the date of the enactment of this Act [Aug. 10, 1993]."[25]  The Benj. Franklin receivership was established September 7, 1990.  Thus, the provisions of 12 U.S.C. § 1821(d)(11) cited by the court in *Bailey* do not apply to this case.  The pre-1993 version of 12 U.S.C. § 1821(d)(11) cited by the BFS Lit. Fund doesn't mention interest, alter the priorities set out at 12 C.F.R. § 360.3, or the FDIC's determination that the BFS Lit. Fund is not entitled to interest under the circumstances of this case.

On the other hand, the Court of Federal Claims in *Bailey* correctly cites to 12 C.F.R. § 360.3(a)(6) and (a)(7) as governing the payment of interest – which is consistent with the FDIC-Receiver's position.

Nevertheless, to the extent the Court of Federal Claims adopted a statement made by the Department of Justice in its brief or interpreted 12 U.S.C. § 1821 (d)(11) and 12 C.F.R. § 360.3(a)(1) to require a receiver to pay interest on claims other than priority 6 claims, it conflicts with the FDIC's position.  The FDIC did not have the opportunity to

---

[23] *Bailey v. United States*, 53 Fed. Cl. 252, 254 (2002). (Emphasis added).

[24] Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, § 3001(a), 107 Stat. 312.

[25] *See* following 12 U.S.C.A. § 1821, Historical and Statutory Notes, 1993 Amendments, and Effective and Applicability Provisions, 1993 Acts.

correct the error, because the FDIC had been dismissed from the case when the Court of Federal Claims issued its August 2002 opinion in *Bailey*.

In any event, any conflicting statement made by the Court of Federal Claims in *Bailey* is not binding on the FDIC-Receiver or this Court. When acting as receiver of a state or federally chartered failed insured depository institution, the FDIC "shall not be subject to the direction or supervision of any other agency or department of the United States or any State in the exercise of the [FDIC's] rights, powers, and privileges."[26]  Thus, any statement made by the Department of Justice in its brief that conflicts with the FDIC-Receiver's position is inapplicable. Moreover, the FDIC's position controls over the conflicting views of another agency or a court.[27]  "Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction."[28]

The cases cited by the BFS Lit. Fund do not control the outcome of this case.

### C.  Designation as Interest of a Portion of the IRS Settlement Payment Does Not Entitle the BFS Lit. Fund to Interest

The BFS Lit. Fund notes that the FDIC-Receiver and the IRS designated as interest a portion of the $50 million settlement payment to the IRS. But this is no help to the BFS Lit. Fund. By statute accrued interest becomes part of a federal tax claim. IRC § 6601 provides in pertinent part:

> (a) **General rule.**--If any amount of tax imposed by this title
> (whether required to be shown on a return, or to be paid by stamp
> or by some other method) is not paid on or before the last date
> prescribed for payment, interest on such amount at the

---

[26] 12 U.S.C. §§ 1821(c)(2)(C) and (c)(3)(C).

[27] *Cf. Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 864, 104 S.Ct. 2778, 2792 (1984).

[28] *National Cable & Telecomm. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 125 S.Ct. 2688, 2700 (2005).

13

underpayment rate established under section 6621 shall be paid for the period from such last date to the date paid.

\* \* \*

**(e) Applicable rules.**--Except as otherwise provided in this title--

> **(1) Interest treated as tax.**--Interest prescribed under this section on any tax shall be paid upon notice and demand, and shall be assessed, collected, and paid in the same manner as taxes. Any reference in this title (except subchapter B of chapter 63, relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax.

The FDIC-Receiver and the IRS agreed that 75% of the first $47 million of the $50 million settlement payment would be treated as a payment of interest on the alleged tax liability and the remaining 25% of that $47 million amount would be treated as payment of federal income taxes for purposes of determining the effect of the payment on tax years after 2002.[29] The FDIC-Receiver and the IRS agreed that the remaining $3 million of the total settlement payment would be treated solely as a payment of interest for purposes of determining the effect of the payment on tax years after 2002.[30] This treatment had the potential effect of reducing future taxes if the receivership received additional funds, such as an award in the Goodwill Case.[31]

The priority regulation played no part in the designation as interest of a portion of the IRS settlement payment. The FDIC-Receiver and the IRS addressed the interest issue in the context of the tax settlement. Designation as interest of a substantial portion of the $50 million payment to the IRS was an express term of the settlement, which the shareholders approved. And the interest designation may provide future tax benefits to the receivership, benefits which would redound to the benefit of the shareholders. Equally important, the designation of a portion of the

---

[29] Pl. App. 23.

[30] *Id.*

[31] *Id.*

$50 million payment to the IRS did not change the total amount received by the IRS – the IRS would have received $50 million regardless of how the funds were designated.  Moreover, all other claimants of higher priority had already been paid in full.

Unlike the IRS's claim, the principal portion of the BFS Lit. Fund's proof of claim does not have the benefit of a statutory interest provision.  It is only because the FDIC-Receiver and the IRS agreed to settle the tax claim that the BFS Lit. Fund received the principal amount of its proof of claim.  And it is only because of the tax settlement that there is any money left over for further distribution.  In the absence of the tax settlement, the BFS Lit. Fund would have received nothing, because without the tax settlement there would not have been an agreement to permit the BFS Lit. Fund to submit a proof of claim against the receivership.  It is not enough for the BFS Lit. Fund to now say that it is entitled to interest simply because the FDIC-Receiver paid interest to others – as authorized by law – and that there is money remaining in the receivership.

Designating as interest a portion of the payment to the IRS as part of the settlement of the $1.2 billion tax claim does not entitle the BFS Lit. Fund to interest or militate against distributing the remaining surplus receivership funds to the entire class of shareholders under 12 C.F.R. § 360.3(a)(10) as a liquidating dividend and return of equity.

## II.  THE FDIC'S INTERPRETATION OF ITS REGULATION IS ENTITLED TO *CHEVRON* DEFERENCE

The priority regulation is relatively clear.  To the extent it is viewed as ambiguous, the FDIC's interpretation of the regulation is entitled to *Chevron* deference.[32]

---

[32]  *See Chevron v. Natural Resources Defense Council*, 467 U.S.837, 104 S.Ct. 2778 (1984).

In *Chevron*, the Supreme Court stated that "legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to statute."[33]

> The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding.[34]

*Chevron* deference applies where Congress has authorized an agency to issue rules and regulations following notice and comment or where Congress gives an agency the power to make final law.[35]   In this case, Congress gave the Federal Home Loan Bank Board ("FHLBB") the power to promulgate the original regulation, which was adopted after notice and comment.[36]   Thus, the regulation and the FDIC's interpretation of the regulation is entitled to full *Chevron* deference, rather than the lesser *Skidmore*-style deference given to it by the district  court in *Waterview Management*.[37]

The FDIC-Receiver disallowed the BFS Lit. Fund's claim for interest on its principal claim of $3 million because the FDIC-Receiver determined that the principal amount was not a priority 6 claim entitled to interest under 12 C.F.R. § 360.3(a)(7). Among the claims covered by 12 C.F.R. § 360.3(a)(7) are "claims for interest after the date of default *on claims under paragraph (a)(6),*" i.e., claims that have accrued and become unconditionally fixed on or before a thrift is placed in receivership.  (Emphasis added).  Interest is mentioned only in connection with priority 6 claims.  Interest is mentioned again in 12 C.F.R. § 360.3(b), which  provides:

---

[33]  *Id*. 467 U.S.at 844, 104 S.Ct. at 2782.

[34]  *Id*.

[35]  *United States v. Mead Corp.*, 533 U.S. 218, 226, 121 S.Ct. 2164, 2171 (2001).

[36]  *See* Conservators and Receivers; Priorities of Claims, 53 Fed. Reg. 25129, 25130 (July 5, 1988).

[37]  *See Waterview Management Co. v. FDIC*, 257 F.Supp.2d 31, 36 (D.D.C. 2003).

> Interest after the date of default *on claims under paragraph (a)(6)*
> of this section shall be at a rate or rates adjusted monthly to reflect
> the average rate for U.S. Treasury bills with maturities of not more
> than ninety-one (91) days during the preceding three (3) months.

(Emphasis added).

The FDIC-Receiver determined that the BFS Lit. Fund's claim for interest did not fall within the category of claims entitled to interest under 12 C.F.R. §§ 360.3(a)(7) and (b).

The language of the regulation supports the FDIC-Receiver's position.  In addition, the FDIC-Receiver's position is supported by the restrictive language to the introductory comments to the FHLBB's original proposed rule and the final rule.  The introduction to the proposed rule provides:

> Section 569c.11(b) would specifically address the right of all
> *general creditors and depositors* to receive interest after the date of
> default if a surplus is available . . . .[38]

The introduction to the final rule uses almost identical limiting language:

> New § 569c.11(b) specifically addresses the right of *general*
> *creditors and depositors* to receive interest after the date of default
> if a surplus is available . . . .[39]

The regulation limits the payment of interest to priority 6 claimants.  The BFS Lit. Fund is not a priority 6 claimant.  If not for the unusual facts of this case, the entire shareholder class – which includes the contributing shareholders – would have received the $3 million principal amount of the BFS Lit. Fund's proof of claim *pro rata* as a liquidating dividend and return of equity under 12 C.F.R. § 360.3(a)(10).  Interest would not be an issue, and this case would not be before the Court.

---

[38] Conservators and Receivers, 50 Fed. Reg. 48970, 48981 (Nov. 27, 1985).  (Emphasis added).

[39] Conservators and Receivers; Priority of Claims, 53 Fed. Reg. 25129, 25131 (July 5, 1988).  (Emphasis added).

Instead, as part of the IRS tax settlement, the FDIC-Receiver agreed to pay the $3 million to the BFS Lit. Fund and consider whether the BFS Lit. Fund was entitled to interest "under the applicable provisions of the receivership priority system." The FDIC-Receiver treated the BFS Lit. Fund's proof of claim as an administrative expense of the FDIC-Receiver and determined that the BFS Lit. Fund was not entitled to interest.

The FDIC-Receiver's disallowance of interest is supported by the restrictive language of the regulation's early introductory comments and the language of the regulation itself.

## III.   EQUITY DOES NOT CONTROL THIS CASE – BUT IT IS NOT UNFAIR TO DENY INTEREST TO THE BFS LIT. FUND

The BFS Lit. Fund also invokes equity in support of its case. But equity does not control this case. Section 360.3 provides a controlling rule of law. The BFS Lit. Fund agreed to be bound by the regulation and cannot invoke equity when it dislikes the result. As the Supreme Court has observed: "[T]he [equity] chancellor never did, and does not now, exercise unrestricted power to contradict statutory or common law when he feels a fairer result may be obtained by application of a different rule."[40]

But a review of the overall circumstances shows that it is not unfair to deny interest to the BFS Lit. Fund. The fund was set up to pay legal fees and expenses aimed at recovering breach of contract damages from the United States in the United States Court of Federal Claims. Interest is not recoverable in the United States Court of Federal Claims.[41] The plaintiff shareholders could not have had a reasonable expectation that they would ever recover interest on their principal damage claim, much less on their legal

---

[40] *United States v. Noland*, 517 U.S. 535, 543, 116 S.Ct. 1524, 1528 (1996).

[41] *Library of Congress v. Shaw*, 478 U.S. 310, 317, 106 S.Ct. 2957, 2962-63 (1986).

fees and expenses which comprised the BFS Lit. Fund.  The BFS Lit. Fund thus cannot convincingly claim that it is unfair to deny it interest under the regulation.

In fact, interest is not mentioned in most documents addressing the way contributions to the fund would be collected and reimbursed.  One of the first communications sent to shareholders regarding the BFS Lit. Fund unambiguously states:

> If the case results in a victory, we will ask the court to return *the amount of all your contributions* to the trust fund out of the recovery.  There is, of course, no guarantee that we will win the case.  Careful records will be kept of this trust fund, and of the disbursements for the suit.  Any *unused money will be* returned to you, *pro rata*.[42]

Several years later, the trustee promised four major shareholders that "In the event of a victory in the case of *Suess, et al. v. United States*, and at the time of distribution of money, I agree on behalf of the Benj. Franklin Shareholders Litigation Fund that *the fund will pay interest at the rate of prime plus 2 points on the portion of all contributions in excess of $.20 per share*."[43]

As a practical matter, the trustee's promise appears to have been made only to the major shareholders, because it appears that very few shareholders could afford to contribute more than $.20 per share.  For instance, as of mid-1996 the average shareholder contribution amounted to $.088 per share and shareholders were asked to contribute $.10 per share.[44]  Later, the call went out for contributions of $.20 per share.[45] In effect, it appears that the trustee intended to favor major shareholders who were financially able to contribute more than $.20 per share.  Nevertheless, the trustee made

---

[42]  FDIC Ex. 1 at 4 (Emphasis added).
[43]  FDIC Ex. 5.
[44]  FDIC Ex. 2 at 1.
[45]  FDIC Ex. 3 and FDIC Ex. 4.

the promise on behalf of the BFS Lit. Fund.  The trustee's promise is not binding on the FDIC-Receiver.

The BFS Lit. Fund was established to fund a derivative action in the United States Court of Federal Claims against the United States for breach of contract, wherein the plaintiffs eventually hoped to recover damages of over $1 billion.[46]  Interest on judgments against the United States in the United States Court of Federal Claims is allowed "only under a contract or Act of Congress expressly providing for payment" of interest.[47]  The judge presiding over the Goodwill Case recognized that he could not award interest in order to fully compensate the failed Benj. Franklin for its breach of contract damages.[48]  As such, the contributing shareholders and the BFS Lit. Fund did not have a reasonable expectation of recovering interest on the failed institution's damage claims, much less on legal fees and expenses.

The plaintiffs in the goodwill case sought to recover a huge pool of money on behalf of *all shareholders*, not just those who had the financial ability or willingness to contribute to the BFS Lit. Fund.  Contributing shareholders were told that their contributions would be reimbursed through an award in the goodwill litigation.  In 1997 – despite an expression of dissatisfaction with those who were not contributing what was considered their fair share to the fund – the shareholders were told "*We have no sanctions for nonpayment, nor would we wish to use them.*"[49]  In effect, however, awarding interest to the BFS Lit. Fund would sanction noncontributing shareholders in violation of the spirit of the announced goals and intent of the suing shareholders.

---

[46] *Suess v. United States*, 52 Fed. Cl. 221, 225 (2002).

[47] 28 U.S.C. § 2516(a).

[48] *Suess v. United States*, 52 Fed. Cl. 221, 232 (2002).

[49] FDIC Ex. 3. (Emphasis added).

It was only through the settlement of the IRS tax case that the shareholders had a realistic hope of timely and substantial recovery. It was in this context that the FDIC-Receiver paid BFS Lit. Fund $3 million through the application of 12 C.F.R. § 360.3. But the FDIC-Receiver determined that section § 360.3 does not provide for interest under the circumstances.

In addition to being proper under 12 C.F.R. § 360.3, distributing the remaining surplus to the entire class of shareholders would be a fair result under the circumstances. On the other hand, it would be inequitable to reduce the receivership surplus even further to cover the BFS Lit. Fund's costs and expenses of bringing this action, and the Court should resist that request.

## CONCLUSION

The FDIC-Receiver allowed the BFS Lit. Fund to request payment of $3 million in legal fees and expenses, plus interest, from the receivership surplus as an accommodation in connection with the settlement between the FDIC-Receiver and the IRS of a $1.2 billion tax claim. The parties agreed that the BFS Lit. Fund's request for interest would be determined under the applicable provisions of the receivership priority system, which is 12 C.F.R. § 360.3. The FDIC-Receiver determined that the $3 million in legal fees and expenses was an administrative expense of the Receiver under 12 C.F.R. § 360.3(a)(1) of the regulation and paid $3 million to the BFS Lit. Fund. But the FDIC-Receiver determined that the BFS Lit. Fund was not entitled to interest under the circumstances.

The material facts are not in dispute. The BFS Lit. Fund's motion for summary judgment should be denied. And the Court should grant the FDIC-Receiver's cross motion for summary judgment as a matter of law.

A proposed order accompanies this pleading.

Respectfully submitted,

Date:  January 5, 2007

/s/ Bruce C. Taylor
Bruce C. Taylor
Federal Deposit Insurance Corporation
550 17th Street, NW
Room VS-E7118
Washington, DC 20429
(703) 562-2436 (Telephone)
(703) 562-2478 (Facsimile)

Counsel for Federal Deposit Insurance Corporation,
as Receiver for The Benj. Franklin FS&LA

**[The FDIC-Receiver's Statement of Material Facts Follows]**

## FDIC-RECEIVER'S STATEMENT OF MATERIAL FACTS

The FDIC-Receiver does not disagree with the BFS Lit. Fund's statement of material facts, with two relatively minor exceptions, which will not require further litigation.  The exceptions are noted first, followed by several additional material facts.

1.   At paragraph 8 of its statement of material facts, the BFS Lit. Fund ascribes the following statement to the FDIC-Receiver's Answer and to 12 C.F.R. § 360.3:  "The regulation describes the 'priorities' for 'unsecured claims against an association or the receiver' if the receivership has a sufficient surplus to pay some or all of [the] claims."  But that is technically incorrect.  Neither the FDIC-Receiver's Answer nor the regulation indicate that the priorities set out by the regulation apply only "if" the receivership has a sufficient surplus to pay some or all claims.  The regulation simply establishes how available assets will be distributed – the amount received by a claimant depends upon where the claimant stands in the regulatory framework and the value of assets available for distribution in accordance with the regulatory framework.  Nevertheless, the parties agree that a surplus exists in the Benj. Franklin receivership and 12 C.F.R. § 360.3 governs the distribution of the surplus.

2.   At ¶ 21 of its statement of facts, the BFS Lit. Fund cites the FDIC-Receiver's Answer at ¶ 20 and 12 C.F.R. § 360.7 as providing the applicable and agreed upon interest rate if the Court orders interest to be paid.  In fact, the FDIC-Receiver's Answer at ¶ 20 – and the BFS Lit. Fund's Complaint at ¶ 20 – recognize that 12 C.F.R. § 360.7 provides a similar rate of interest to the one agreed to by the parties but that 12 C.F.R. § 360.7 does not apply to the Benj. Franklin receivership.  The parties agree that in the event the BFS Lit. Fund prevails in this case, interest will be calculated at a rate or rates adjusted monthly to reflect the average rate for U.S. Treasury

bills with a maturity of not more than ninety-one (91) days during the preceding three (3) months.  This rate is set out at 12 C.F.R. § 360.3 (b).

3.   By letter dated September 28, 1990, C. Robert Suess advised the Benj. Franklin shareholders of the purpose of the Benj. Franklin Shareholder Litigation Fund, asked for contributions from the shareholders, and described how contributions would be returned.  FDIC Ex. 1.

4.   By letter dated July 18, 1996, Leo Sherry, Jr., advised the shareholders that the average shareholder contribution amounted to $.088 per share and asked the shareholders to contribute $.10 per share.  FDIC Ex.2.

5.   By letter dated January 30, 1997, Leo Sherry, Jr., asked the shareholders to contribute $.20 per share.  FDIC Ex.3.

6.   By an undated letter (but on or after December 22, 1997, based on a reference in the letter) C. Robert Suess asked the shareholders to contribute $.20 per share.  FDIC Ex. 4.

7.   By letter dated March 22, 1999, Don S. Willner, trustee of the Benj. Franklin Shareholder Litigation Fund, promised C. Robert Suess, Leo C. Sherry, Jr., Michael Foster, and Peter Baker, that the fund would pay interest at the rate of prime plus 2 on the portion of all contributions in excess of $.20 per share.  FDIC Ex.5.