# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE BENJ. FRANKLIN SHAREHOLDERS LITIGATION FUND, BY ITS SOLE TRUSTEE, DON S. WILLNER,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR THE BENJ. FRANKLIN FS&LA, PORTLAND, OREGON<br><br>Defendant. | Civil Case No. 06-01025 (EGS) |

### FDIC-RECEIVER'S EXHIBITS
### TO ACCOMPANY ITS OPPOSITION AND CROSS MOTION TO PLAINTIFF'S
### MOTION FOR SUMMARY JUDGMENT

Bruce C. Taylor
Federal Deposit Insurance Corporation
550 17th Street, NW
Room VS-E7118
Washington, DC 20429
(703) 562-2436 (Telephone)
(703) 562-2478 (Facsimile)

Counsel for Federal Deposit Insurance Corporation,
as Receiver for The Benj. Franklin FS&LA

Date: January 5, 2007

# INDEX TO FDIC-RECEIVER'S EXHIBITS

**Document**                                                                                                                       **Ex. No.**

Letter dated September 28, 1990, to shareholders from C. Robert Suess ...................1

Letter dated July 18, 1996, to shareholders from Leo Sherry, Jr. .................................2

Letter dated January 30, 1997, to shareholders from Leo Sherry, Jr. ...........................3

Undated letter to shareholders from C. Robert Suess .....................................................4

Letter dated March 22, 1999, to shareholders from Don S. Willner ............................5

**NOTE** – When printing the exhibits, ensure that "Document and Markups" is displayed in the Comments and Forms box located under Properties in the Print dialogue box. Otherwise, the Exhibit designations may not print.

**SUESS COMPANY**
Investments
P.O. Box 15157
7064 - 35th Avenue N.E. #32
Seattle, Washington 98115
(1-206) 525-5523

September 28, 1990

Dear Benj. Franklin Shareholder:

On Friday, September 14, 1990, joined by three other shareholders of Benj. Franklin Savings and Loan Association, I filed a lawsuit in the United States Claims Court in Washington, D.C., against the government. We asked that the book value of the stock of Benj. Franklin as of September 30, 1989, in the amount of $181,000,000.00 be returned to the shareholders. Since the filing of the lawsuit, many other shareholders have asked to participate, and the largest shareholder, Foster, Paulsell and Baker, Inc., has agreed to participate as a plaintiff. This letter is being sent to all of the approximately 5,000 shareholders, asking that each of you contribute to the cost of this suit.

Here are our contentions in the lawsuit. In 1982, many savings and loan associations throughout the country were failing because of the interest rate crunch. Interest rates had dramatically increased while the savings and loan industry was heavily invested in lower rate mortgages. Every failed savings and loan meant a large loss to the government in repaying the depositors from federal insurance funds. As a way of cutting these losses, the government started a program of encouraging healthy savings and loans to acquire failing savings and loans by promising the acquiring company that it could place the excess of the purchase price over the fair market value of the failing institution on its books as the asset of capital good will, and amortize it over a long period of time.

In 1982, Benj. Franklin acquired a failing company, Equitable Savings and Loan Association of Portland, Oregon. The transaction was approved by the government which allowed $343,000,000 to be placed upon the books of Benj. Franklin as capital good will to be amortized over a period of forty years.

In 1986 when Benj. Franklin decided to make a public stock offering, government approval was conditioned upon a modified agreement that the capital good will asset from the acquisition of Equitable could be amortized over 32 years.

This capital goodwill asset was fully discussed in the stock prospectus upon which each of you relied when you purchased your stock.

1

See reverse side for page 2

Exhibit 1

In 1989, Congress passed and President Bush signed, a new law known as Financial Institutions Reform, Recovery and Enforcement Act (F.I.R.R.E.A.). This was then implemented by regulations which provided that goodwill could no longer be fully included as an asset in regulatory capital and amortized over a long period of time. Without this asset, which had been previously agreed to by the government, Benj. Franklin and many other savings and loan associations throughout the country, were instantly insolvent.

At the government's request, Benj. Franklin then submitted a reorganization plan to bring it in compliance over a five year period. Instead of following the normal course of responding to the plan, the government, without warning, took over Benj. Franklin on February 21, 1990, cancelled the April 24, 1990 shareholders meeting, sold many of its assets and on September 7, 1990, sold what was left to the Bank of America. The government denied us access to the shareholders list until after the sale. During this period the government audited Benj. Franklin and found no evidence of any mismanagement. Your stock in Benj. Franklin is now worthless, unless we prevail in this lawsuit.

In our lawsuit, we argue that Benj. Franklin would never have taken over Equitable, and you would never have purchased stock in Benj. Franklin, without the agreement of the government to allow the excess purchase price to be treated as the capital asset of good will and amortized over a long period of time. Without this agreement, the balance sheet of Benj. Franklin from the moment of the Equitable acquisition in 1982, would have shown a hopelessly insolvent company. Our legal theory is that the government must pay for its breach of contract which made your stock valueless, or alternatively, that the action of the government was an unconstitutional taking of your property without compensation.

In many other court cases around the country, the government has been prevented from now taking over savings and loans, where the insolvency was due to the loss of the previously government-approved capital asset of good will. In Oregon, Judge Panner granted a permanent injunction to prevent the takeover of Farwest Federal. In preliminary rulings, Judge Panner stressed that the Conversion Agreement under which the government agencies granted certain regulatory forbearances to Farwest, was a comprehensive agreement, upon which private parties relied in investing, and there was every indication that the parties intended to be bound by it. Judge Panner stated: "The government can waive its police power in a contract if it does so clearly and unmistakably. A contract that creates vested rights can be enforced against a sovereign under those circumstances."

In the State of Washington, Judge Quackenbush granted a preliminary injunction against the takeover of Sterling Savings Association in August, 1990. He made findings that capital and accounting forbearances granted by the government at the time

2

Exhibit 1

Sterling acquired other insolvent savings associations, were part and parcel of the negotiated acquisitions, and were therefore contractually binding. Judge Quackenbush quoted Justice Hugo Black: "great nations, like great men, should keep their word."

Suits against the United States for money damages such as this case, are filed in the United States Claims Court. This court recently granted summary judgment on liability against the government in favor of the owners of another savings and loan association, Winstar Corporation, on this same issue of breaching the agreement over the treatment of capital good will. The court found that "the government expressly intended to contract for the particular treatment of good will at issue in this case, notwithstanding changes in [Generally Accepted Accounting Principles] or in the statutory scheme." Furthermore, the court held "while Congress' power to regulate is not impaired, the government may be compelled to pay for the results of its actions, especially when in so doing the government actually is paying because it received a benefit... Although Congress may exercise its police power and regulate extensively, in some cases when it does so it must provide just compensation if the result of the regulation effectively is to condemn a property right."

We expect that our suit will be strongly opposed by the government. The facts of every individual case are always different. Although the results of litigation are uncertain, we believe that we have a strong case.

We have retained a prominent and experienced Portland, Oregon attorney, Don Willner, and he is putting together a team of lawyers in Portland and Washington, D.C., to help in the case. Mr. Willner and his associates have sufficient faith in the case that they have agreed to work for a partial fee, plus a contingent fee to be fixed by the Court if there is a recovery by the shareholders. In addition to the partial fee, there will be large expenses for experts, depositions of witnesses, travel and other expenses.

This suit is the only way that you can recover your investment in Benj. Franklin. This suit, however, can only proceed if the 5,000 shareholders participate in its cost.

The only fair basis is for each of you to contribute pro rata, based upon your stock ownership. Your fair share is $.05 per share (for now), or a minimum of $25.00 for smaller shareholders. If you can contribute more than your share, that will be most helpful, since it is unknown what percentage of shareholder participation we will receive.

We have established the Benj. Franklin Shareholders Litigation Trust Fund (BFSLTF) in an interest bearing account in a Portland, Oregon bank, with our attorney Don Willner as the trustee. Your check should be made out as soon as possible to Don Willner,

3

See reverse side for Page 4

Exhibit 1

Trustee of BFSLTF, and <u>mailed to Mr. Willner at 111 S.W. Front Avenue, Suite 303, Portland, Oregon, 97204</u>. Please include your name, address, phone number (day and evening) and number of shares. We believe that all such contributions are deductible as a business expense, but you should check this with your own tax advisor.

If the case results in a victory, we will ask the court to return the amount of all your contributions to the trust fund out of the recovery. There is, of course, no guarantee that we will win the case. Careful records will be kept of this trust fund, and of the disbursements for the suit. Any unused money will be returned to you, pro rata.

We believe that by reneging on its agreement, the government has acted very unfairly and should be required to pay our damages. By contributing to this trust fund you are not undertaking the responsibilities of becoming a plaintiff in this suit, but since the recovery we are seeking will benefit all of the shareholders, you will be assisting the common effort which can benefit all of us.

Although it is difficult and expensive to mail letters to all 5,000 shareholders, we will do our best to keep all contributors fully informed about the progress of the suit.

Please send in your check as soon as possible.

Sincerely,

C. Robert Suess

(I am a Seattle semi-retired contractor, and one of the largest shareholders of Benj. Franklin)

Direct informational questions
to me at:    P.O. Box 15157
             Seattle, Washington  98115-0157

4

Exhibit 1

**LEO C. SHERRY, JR.**
ATTORNEY AT LAW
8555 S.W. APPLE WAY, SUITE 110
PORTLAND, OREGON 97225
TELEPHONE 297-2705

July 18, 1996

Dear Fellow Benj. Franklin Savings
and Loan Association Shareholders:

In my last letter to you I asserted my opinion that your Benj. Franklin shares had value.

I can say it again, but with more emphasis today because of the events outlined in the enclosed letter from Don Willner.

The following stand, however, between asserting the existence of value and a payday:

   1.  No one is making a market in the stock.

   2.  I do not see how anyone could make a market since there is no transfer agent, nor any official depository of shareholder information. My office is doing the best it can without compensation in maintaining shareholder information, but much of what I have is no longer current or came from informal sources. My requested cooperation, for instance, from the major brokerage firms of Merrill Lynch and Smith Barney in identifying their Benj. Franklin shareholders was ignored.

   3.  There is much work to be done. As I see it, the first question:

       Is the government liable for the wrongful takeover?

has probably been answered. To pursue the second question:

       How much is the government liable for?

is going to take, as Don has estimated, an additional $250,000 to determine. There may be a settlement before there is a judgment. The road ahead, however, lies in pursuing the matter in court. With the proceeds in hand later on, settlement with you for your shares can be done on participation on a shareholder by shareholder basis.

The following statistics, some of which are more reliable than others, will give you an idea as to where we are:

   1.  We have received litigation support funds from 2,167 shareholders with 3,340,000 shares aggregating $294,581, an average of 8.8 cents per share.

   2.  We have located 6,642 shareholders holding 5,150,000 shares. We have since lost contact with many of them because of

Exhibit 2

Benj. Franklin Savings & Loan Shareholders
July 18, 1996
Page 2

inability to forward mail for whatever reason. At any rate, contributions to the cause have been received from 33 percent of the shareholders holding 65 percent of the shares we have located.

3. We do not know how many shareholders there are for the approximately 2,600,000 shares we have been unable to locate. The passage of time does not work for the benefit of these shareholders. I do not see, however, how it works to the detriment of those of you who have retained contact with us.

What is the bottom line of all of this? I like the wording relating to "Fair Share" in the enclosed Suess and Willner letters. On the other hand, it is no mystery that not everyone responds to the "Common Good" in the same degree. Such is life.

We have to ask for ten cents per share from all of you now to assure our ability to get this job done. Not everyone has done his or her fair share, but we must seek help both from those who have and those who have not.

When there is recovery your litigation support will be repaid to you off of the top.

Please make your checks payable to:

>   Don Willner, Trustee of B.F.S.L.T.F
>   (Benj. Franklin Savings & Loan Shareholders
>     Litigation Trust Fund)

and mail them to:

>   Don Willner
>   111 SW Front Avenue #303
>   Portland, OR  97204-3500

Thank you.

Yours very truly,

*Leo C. Sherry*

Leo C. Sherry, Jr.

LCS:mh
Enc.

Exhibit 2

**LEO C. SHERRY, JR.**
ATTORNEY AT LAW
8555 S.W. APPLE WAY, SUITE 110
PORTLAND, OREGON 97225
TELEPHONE 297-2705

January 30, 1997

Dear Fellow Benj. Franklin Savings
and Loan Association Shareholders:

To a large number of you, this is a thank you for your response to my letter of last July 18. Since then we have received $113,873 from our request for support.

As Don Willner points out in his accompanying letter, we have a long way to go.

Further, we are running out of funds.

It is difficult for me to know how to approach this problem. In one sense a generous group of you are pulling chestnuts out of the fire for others. We have no sanctions for nonpayment, nor would we wish to use them. On the other hand, there is something unfair and displeasing about all of this.

As well as a thank you to some, this letter is a plea for support from others of you shareholders. Twenty cents a share is our target. We understand some Benj. Franklin shares have traded recently at over $2.00 per share. I regard this as somewhat of an acid test.

Keep in mind, you are entitled to recovery of your support payments on a successful outcome of our litigation.

We will be contacting some of you directly, or may have already, in an effort to enlist help based on "fair share." We cannot let our efforts to date go for naught because of lack of funds.

There is irony in considering our plight and how we got here that the defendant has no real limitations on its litigation costs.

At any rate, I hope that you agree that the enclosed analysis of the status of our case is "Very Good News."

Yours very truly,

*Leo C. Sherry Jr*
Leo C. Sherry, Jr.

LCS:mh
Enc.

**Exhibit 3**

**C. ROBERT SUESS**
PO Box 15157
Seattle, Washington 97405

Re: Suess, et al. v. United States
(Shareholders of Benj. Franklin)

Dear Friends:

On December 22, 1997, Judge Loren Smith, Chief Judge of the United States Court of Federal Claims in Washington, D.C. presented us a most welcome Christmas gift. Though indeed, it's not pay day, the accounting of our reimbursable losses will proceed in the forthcoming year.

Our progress and today's decision in our favor as outlined in Don Willner's enclosed letter should create a joyous season for all. When we filed this lawsuit in September, 1990, your shares had no value. Now, there are people buying and selling Benj. Franklin shares. Since we are not involved, if you need information, please call a stockbroker. If you sell your shares, you run the risk of losing your potential recovery in this lawsuit.

To those of you who have supported our efforts for the past seven-and-a-half years, we again extend our sincere thanks. It was not possible without you.

To Don and his crew in Portland and Washington, D.C., their brilliant work, shepherded by Don with all his sincerity and determination, we are thankful beyond belief.

In my opinion, the government attorneys long ago made a concentrated effort to delay at any cost. Eventually, they planned to cause a break in our financial support and we would fade away. Now, as we go forward to establish documentation for remuneration, we must again ask for financial assistance.

The import of this decision by Judge Smith removes virtually all uncertainties as to whether or not there will be recovery. Now the question is, "How much?" Our commitment to you supporters continues to be that you are to be repaid your support payments from the top of any recovery. We need perhaps another $200,000 to see us through to completion. We are asking for help through additional contribution/loans whenever we can get them. Today we can call them "loans" with confidence.

Your fair share is $.20 per share. If you have not paid in your full amount to the Benj. Franklin Shareholders Litigation Fund (BFSLF), c/o Don S. Willner, Trustee, 111 SW Front Avenue, Suite 303, Portland, Oregon 97204, <u>please pay it now.</u> We need your help.

Sincerely,

C. Robert Suess

C:\DATA\SUESS\SHAREHOL\SU4122697(104)

**Exhibit 4**

## WILLNER KEANEY MATA & U'REN LLP
ATTORNEYS AT LAW
SUITE 303
111 S.W. FRONT AVENUE
PORTLAND, OREGON 97204-3500

(503) 228-4000          FAX (503) 228-4261

Don S. Willner
Kevin Keaney
Jose Mata
Matthew U'Ren

Of Counsel
Dolores Empey

Paralegal
Maida Kelly

March 22, 1999

**Via Telefax and Overnight Mail**

Mr. C. Robert Suess                 Mr. Michael Foster
508 Cerritos Way                    70 -- 249 Sonora
Cathedral City, CA  92234           Rancho Mirage, CA  92270

Mr. Leo C. Sherry, Jr.              Mr. Peter Baker
8555 SW Apple Way, #110             10540 East Ranch Gate
Portland, OR  97225                 Scottsdale, AZ  85255

Re:  Suess, et al. v. United States

Dear Bob, Mike, Peter and Leo:

This letter is to confirm in writing the agreement that we made many months ago. In the event of victory in the case of *Suess, et al. v. United States*, and at the time of distribution of money, I agree on behalf of the Benj. Franklin Shareholders Litigation Fund that the fund will pay interest at the rate of prime plus 2 points on the portion of all contributions in excess of $.20 per share.

Sincerely,

WILLNER KEANEY MATA & U'REN, LLP

Don S. Willner

DSW:lf

C:\DATA\SUESS\SUSHFOBA.31

**Exhibit 5**