BEFORE THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE BENJ. FRANKLIN SHAREHOLDERS LITIGATION FUND, BY ITS SOLE TRUSTEE, DON S. WILLNER<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR THE BENJ. FRANKLIN FS&LA, PORTLAND, OREGON<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action  No. 06-01025 (EGS) |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO DEFENDANT'S CROSS-MOTION
<u>INCLUDING MEMORANDUM OF POINTS AND AUTHORITIES</u>**

Filed:  January 26, 2007

Rosemary Stewart
Spriggs & Hollingsworth
1350 I Street, N.W.
Washington, DC 20005
202-898-5888 – (Telephone)
202-682-1639 – (Fax)
D.C. Bar No. 204438

Counsel for Plaintiff The Benj. Franklin
Shareholders Litigation Fund

### Table of Contents

Page

I.      INTRODUCTION ...................................................................................................2

        A.      FDIC's Arguments ...............................................................................3

        B.      Summary of this Reply/Opposition Brief .............................................3

II.     LEGAL ARGUMENT ...........................................................................................3

        A.      Receivership Regulations and Statutes Permit the Payment of Plaintiff's
                Claim......................................................................................................3

                1.      12 C.F.R. § 360.3 permits the payment of Plaintiff's claim. .......3

                2.      12 C.F.R. § 360.3 is not the only applicable law. .......................7

                3.      Statutory directives also permit the payment of Plaintiff's claim...............8

        B.      Receivership Case Law is Clear that Interest should be paid on Claims
                when a Surplus exists to do to..............................................................10

        C.      This Court Should Consider but Reject the FDIC-Receiver's
                Interpretation that denied Plaintiff's Claim. ........................................13

                1.      FDIC's interpretation is not entitled to *Chevron* deference......................13

                        a.      FDIC's interpretation was not issued to clarify or
                                implement statutory directives or policies. ....................15

                        b.      The *Mead/Skidmore* standards of review should be
                                used here. ........................................................................16

                2.      FDIC's interpretation is not "persuasive" under the *Mead/Skidmore*
                        standards. ..................................................................................17

                        a.      FDIC's ruling is neither thorough nor well-reasoned. ...................18

                        b.      FDIC's ruling has not been shown to be consistent
                                with earlier and later interpretations. ............................19

      D.     Paying the Plaintiff's Claim is Fair and Equitable..................................................21

            1.     Repaying principal without interest does not make the contributors whole....................................................................................................22

            2.     Denying interest is inequitable to the contributing shareholders..............23

            3.     The award of interest should not be reduced by attorneys fees and costs...........................................................................................................24

III.     CONCLUSION................................................................................................................25

## Table of Authorities

### Cases

*Bailey v. United States,*
    53 Fed. Cl. 251 (2002) ............................................................................. 5, 12

*Bowen v. Georgetown Univ. Hosp.,*
    488 U.S. 204 (1988) ................................................................................ 18

*Burlington Truck Lines, Inc. v. United States,*
    371 U.S. 156 (1962) ................................................................................ 18

*Charter Oil Co. v. Am. Employers' Ins. Co.,*
    69 F.3d 1160 (D.C. Cir. 1995) ................................................................ 24

*Chevron v. Natural Resources Defense Council,*
    467 U.S. 837 (1984) ........................................................................ *passim*

*Christensen v. Harris County,*
    529 U.S. 576 (2000) .......................................................................... 15, 17

*EEOC v. Arabian American Oil Co.,*
    499 U.S. 244 (1991) ................................................................................ 20

*FDIC v. Philadelphia Gear Corp.,*
    476 U.S. 426 (1986) ................................................................................ 16

*Gen. Elec. v. Gilbert,*
    429 U.S. 125 (1976) ................................................................................ 18

*GLF Advantage Fund, Ltd. v. Colkitt,*
    216 F.R.D. 189 (D.D.C. 2003) ............................................................... 24

*Golden Pacific Bancorp v. FDIC,*
    375 F.3d 196 (2nd Cir. 2004) .................................................................. 11

*Good Samaritan Hosp. v. Shalala,*
    508 U.S. 402 (1993) ................................................................................ 19

*In re Milwaukee Cheese Wisc., Inc.,*
    112 F.3d 845 (7th Cir. 1997) ................................................................... 24

*Inv. Co. Inst. v. Camp,*
    401 U.S. 617 (1971) .......................................................................... 16, 18

*Manning v. United States,*
    146 F.3d 808 (10th Cir. 1998) ................................................................ 15

*Motion Picture Assn. of Am., Inc. v. Oman,*
    969 F.2d 1154 (D.C. Cir. 1992) ................................................................... 22

*NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.,*
    513 U.S. 251 (1995) ................................................................................. 16

*Public Citizen Health Research Group v. Nat'l Inst. of Health,*
    209 F. Supp. 2d 37 (D.D.C. 2002) ........................................................... 24

*Reno v. Koray,*
    515 U.S. 50 (1995) ................................................................................... 15

*\*Skidmore v. Swift & Co.,*
    323 U.S. 134 (1944) ......................................................................... 15, 17

*The Wilderness Society v. U.S. Fish & Wildlife Service,*
    353 F.3d 1051 (9th Cir. 2003) ......................................................... 16, 17

*\*United States v. Mead Corporation,*
    533 U.S. 218 (2001) ................................................................... 14, 15, 17

*United States v. Noland,*
    517 U.S. 535 (1996) ................................................................................. 21

*\*Waterview Management Co. v. FDIC,*
    257 F. Supp. 2d 31 (D.D.C. 2003) ................................................. *passim*

## Statutes and Regulations

*\*12 C.F.R. § 360.3 ........................................................................ passim*

12 U.S.C. § 1821(d)(10)(A) ....................................................................... 14

*\*12 U.S.C. § 1821(d)(11) (1989 to 1993) ...................................................... 8

12 U.S.C. § 194 ................................................................................. 11, 13

12 U.S.C.A. § 194 .................................................................................... 11

Act of June 3, 1864, § 50 ......................................................................... 11

Fed. R. Civ. P. 56 ..................................................................................... 1

Pub. L. No. 101-73 § 212 (1989) ................................................................. 9

Pub. L. No. 103-66, § 3001(a) (1993) ........................................................ 15

BEFORE THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE BENJ. FRANKLIN<br>SHAREHOLDERS LITIGATION FUND,<br>BY ITS SOLE TRUSTEE, DON S. WILLNER | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 06-01025 (EGS) |
| v. | ) ) | |
| FEDERAL DEPOSIT INSURANCE CORPORATION<br>AS RECEIVER FOR THE BENJ. FRANKLIN<br>FS&LA, PORTLAND, OREGON | ) ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO DEFENDANT'S CROSS-MOTION
INCLUDING MEMORANDUM OF POINTS AND AUTHORITIES**

This Reply is filed by the Plaintiff Benj. Franklin Shareholders Litigation Fund (hereafter

"BFS Lit. Fund") in support of its pending motion for summary judgment filed on November 30,

2006 (hereafter "Pl. MSJ"). This filing also opposes the defendant's cross-motion for summary

judgment as stated in the FDIC-Receiver's Opposition and Cross Motion filed on January 5,

2007 (hereafter "Def. Opp."). Simultaneously with this filing, Plaintiff submits some additional

documents for Plaintiff's Appendix in Support of its MSJ ("Pl. App.").[1]

---

[1] Plaintiff is not filing a Statement of Genuine Issues because the only issues in this case are legal and not issues of "material facts" as the term is used in Fed. R. Civ. P. 56 and in LCvR 7 and 56.1. The defendant FDIC agrees that there are no material issues of fact requiring litigation. *See* FDIC-Receiver's Statement of Material Facts (immediately following the Def. Opp.) at p. 1. And Plaintiff does not object to the few additional facts that defendant proposes in that same document (but notes one minor clarification in footnote 18 *infra*).

## I.      **INTRODUCTION**

Plaintiff BFS Lit. Fund seeks summary judgment in Plaintiff's favor for the single claim set out in the BFS Lit. Fund's Complaint. The question raised by the Pl. MSJ is whether Plaintiff is legally entitled to interest on the $3 million principal amount of a receivership claim, which FDIC approved and paid last year. Interest paid on receivership claims that arise after a bank or thrift is declared insolvent and placed in receivership is identified by the FDIC as "post-insolvency interest" or "PII." *While the FDIC has already paid PII of over $257.8 million to itself from the Benj. Franklin receivership* (*see* Pl. App. at 41-42), FDIC has denied the BFS Lit. Fund's claim for between $1 and $2 million of such interest.

If the Plaintiff's motion is granted, the interest payment would be made from the surplus still remaining in the Benj. Franklin receivership – *not from FDIC's own funds or from taxpayer funds of any kind.* The effect of such a payment would simply be to reduce slightly the next surplus distribution to be paid to all shareholders of Benj. Franklin FS&LA so that the two-thirds of those same shareholders who contributed cash to the BFS Lit. Fund, may receive interest on their cash contributions. *See* Pl. St. Facts ¶¶ 2, 4, 9. No Benj. Franklin shareholder has objected to this proposed payment sought by the BFS Lit. Fund.

Thus, an underlying issue before the Court is whether the Benj. Franklin shareholders who contributed to the BFS Lit. Fund are entitled to an equitable return on their contributions based on the unique circumstances presented in this case. It is not necessary for the Court to determine that the requested sum is necessarily "interest" on the principal amount of the Plaintiff's earlier claim or merely the BFS Lit. Fund's separate claim for an equitable return to its contributing shareholders. With either characterization, it is a claim that deserves to be paid.

2

### A.     FDIC's Arguments

The FDIC's opposition brief argues that the FDIC-Receiver properly denied the BFS Lit.

Fund's claim for interest under the regulation at 12 C.F.R. § 360.3, which FDIC asserts to be the

only applicable authority to be considered here.  Def. Opp. at 2-13, 16-17.  Secondly, FDIC

argues that its interpretation of § 360.3, whether right or wrong, is entitled to *Chevron*

deference.[2]  Def. Opp. at 15-16.  And thirdly, FDIC contends that although equity does not

control this case, it is not inequitable to deny the interest sought by Plaintiff.  Def. Opp. at 18-21.

This reply brief will demonstrate that the FDIC is incorrect in each of these arguments.

### B.     Summary of this Reply/Opposition Brief

In Sections II.A and II.B below, Plaintiff demonstrates that interest should be paid to the

BFS Lit. Fund based on 12 C.F.R. § 360.3 – as well as based on other statutory guidance and

case law precedents – *all of which are relevant to and supportive of Plaintiff's claim for interest.*

Section II.C explains why the FDIC-Receiver's narrow interpretation of 12 C.F.R.

§ 360.3 is not entitled to *Chevron* deference.  Instead, FDIC's interpretation should be

considered by the Court based on its persuasiveness – a test that FDIC's interpretation cannot

pass.  Section II.D demonstrates that paying the claimed interest is fair and equitable.  This last

section also addresses why the award of interest to the BFS Lit. Fund should not be reduced by

attorneys fees and costs.

## II.     LEGAL ARGUMENT

### A.     Receivership Regulations and Statutes Permit the Payment of Plaintiff's Claim

#### 1.     12 C.F.R. § 360.3 permits the payment of Plaintiff's claim.

The regulation is quoted in the Pl. MSJ at 14.  It clearly provides both for claims that

---

[2] *Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984).

arose from debts *of the thrift* before it went into receivership and for claims that arose after the

thrift went into receivership, making the latter, debts *of the receiver*.[3]  But FDIC contends that

Plaintiff may not collect interest because "the BFS Lit. Fund is not a true creditor of the failed

Thrift." Def. Opp. at 7.  Of course, Plaintiff has never contended that it is a creditor *of the thrift*

*Benj. Franklin.*  The BFS Lit. Fund is a creditor *of the receiver* under either Level 7 or Level 1

(as described in the Pl. MSJ at 19-21), and is entitled to collect on its claim because a surplus

exists to pay all levels of claimants in this receivership.[4]

Ignoring completely the Plaintiff's argument that its claim for interest also may be

viewed as a separate "claim" from its earlier $3 million principal claim for the shareholder

contributions (Pl. MSJ at 21), the FDIC says that the BFS Lit. Fund's $3 million claim for

principal was properly characterized by the Receiver's staff as a Level 1 administrative claim,

but FDIC adds that even if it had been characterized as a Level 7 claim, interest could not have

been paid because § 360.3 permits interest *only* on Level 6 claims.  Def. Opp. 3-4, 16-17.

In addition to being incorrect, FDIC's reading of the regulation is artificially restrictive.

Nothing in its text prohibits claims for interest on priority levels other than Level 6.  The express

language that FDIC highlights about "interest on Level 6 claims" is clearly explanatory because

it clarifies that such interest will be considered a Level 7 claim.  That is all it does.  Moreover, if

---

[3] *Compare* the Level 6 priority claims (identified in § 360.3(a)(6)), which included "all other claims which have accrued and become conditionally fixed *on or before the date of default* [*i.e.*, the date of receivership] with the Level 7 priority (in § 360.3(a)(7)) for "claims *other than* those that have accrued and become unconditionally fixed on or before the date of default . . . ." Moreover, Level 1 priority for "Administrative expenses of the receiver" (§ 360.3(a)(1)) always represents debts *of the receiver* rather than debts of the thrift.  FDIC seems to agree with these characterizations in its own description of the regulation.  Def. Opp. at 3-4.

[4] The BFS Lit. Fund first explained that its claim for interest could be approved under either Priority 7 or Priority 1 in its July 22, 2005 letter to the FDIC, submitted while FDIC was considering the claim.  *See* Ex. B to Plaintiff's Complaint.

FDIC were correct in classifying Plaintiff's $3 million claim as a Level 1 administrative claim, it could likewise have approved interest on that Level 1 amount – just as the U.S. Court of Federal Claims observed in *Bailey v. United States*.[5] FDIC alternatively could have classified the BFS Lit. Fund's claim for interest as a separate Level 1 administrative claim and approved it in that way.  Plaintiff continues to believe that its claim for the $3 million principal and its claim for interest on that amount are both better classified as Level 7 priorities.  *See* Pl. MSJ at 19-21.  But the plain fact is that the interest would be the same no matter which priority level is assigned to it because there is a sufficient surplus to pay all of the claimants in the Benj. Franklin receivership. Pl. St. Facts ¶ 9.

The Plaintiff's motion also quoted from the regulatory history of 12 C.F.R. § 360.3 to point out that the agency which considered and issued the regulation, the Federal Home Loan Bank Board ("FHLBB"), repeatedly referenced the fact that it would permit "general creditors and depositors to receive interest after the date of default if a surplus is available . . ."  Pl. MSJ at 17-18, quoting 1985 and 1988 FHLBB promulgations.  Strangely, FDIC responds by quoting the same FHLBB pronouncements but asserting that the language referenced only "the payment of interest to priority 6 claimants."  Def. Opp. at 17.  But this would be true only if the FHLBB meant the term "general creditors" to apply only to creditors *of the failed thrift* (*i.e.*, Level 6 creditors) and not to creditors *of the receivership* (*i.e.*, Level 7 or Level 1).  To the contrary, Plaintiff has shown that the FHLBB used the same term "general creditors" in its earlier 5-

---

[5] The Court concluded that an FDIC Receiver would pay interest on Level 1 receivership expenses if it had sufficient funds to do so: "[T]he FDIC would first pay the . . . expenses it incurred . . . such as attorney's fees and any advances . . . *including any interest* [citing] . . . 12 C.F.R. § 360.3(a)(1)."  (Emphasis added.)  *Bailey v. United States*, 53 Fed. Cl. 251, 254 (2002), *aff'd on other grounds,* 341 F.3d 1342 (Fed. Cir. 2003) .  The FDIC's protestations that there was no surplus in *Bailey* and that Section 360.3 was not at issue in *Bailey*, Def. Opp. at 11, do not alter that Court's logical conclusions about how FDIC would have distributed any surplus funds in that thrift receivership under the very regulation at issue here.  *Bailey* is discussed further at p. 12 *infra*.

priority-level regulation with no distinction made for creditors *before* receivership and creditors *after* receivership. Pl. MSJ at 18. And consistent with the FHLBB's later pronouncements, the agency's 1969 version of the regulation also recognized that "post-default interest" would be paid if the surplus were sufficient to do so. Pl. MSJ at 18-19. FDIC did not respond to this earlier regulatory history.

Finally, if the FDIC were correct in its restrictive interpretation that interest is payable only under the Level 6 priority set out in 12 C.F.R. § 360.3, then FDIC's prior settlement with the IRS – which paid both tax and interest to the *Level 8 claimant IRS* from the Benj. Franklin receivership – would have violated the regulation. Pl. MSJ at 16, n.17. FDIC disagrees by stating: "By statute accrued interest becomes part of a federal tax claim." Def. Opp. at 13-14. But the statute quoted by FDIC says no such thing; it simply provides that interest will be "assessed, collected and paid *in the same manner as taxes*," under a subtitle called "Interest *treated* as tax." *Id.* (Emphases added.) Here, the FDIC and the Benj. Franklin shareholders together negotiated for a substantial amount of the tax settlement payment to be treated as interest because all parties understood that this could benefit the Benj. Franklin receivership in the future. Def. Opp. at 14. Although such a payment of interest to the IRS accords with Plaintiff's interpretation of § 360.3 because the Benj. Franklin receivership surplus was sufficient to pay all priority levels of claims – including Level 8 claims for "unpaid federal income taxes" – it clearly runs afoul of FDIC's too-restrictive interpretation.

Further, the FDIC contends that the "priority regulation played no part in the designation" of a portion of the IRS payment as interest because it was part of a "tax settlement." Def. Opp. at 14-15. But FDIC's strict interpretation of 12 C.F.R. § 360.3 reveals no exception for tax settlements or any other kind of settlements. *FDIC cannot have it both ways.* 12 C.F.R. § 360.3

permits interest at any level of priority if a sufficient claim has been filed for such interest and if a sufficient surplus exists to pay it.

**2.    12 C.F.R. § 360.3 is not the only applicable law.**

The defendant FDIC is wrong in its repeated assertion that Plaintiff BFS Lit. Fund "agreed" that its right to interest would be decided solely under the regulation at 12 C.F.R. § 360.3. Def. Opp. at 1, 2, 6, 7, 9-10, 18, and 21. The sole "agreement" between the parties about both the $3 million principal amount of the shareholder contributions to the BFS Lit. Fund and the interest on that $3 million is contained in Paragraph 5 of the 2004 Letter Agreement between the BFS Lit. Fund Trustee Don S. Willner and the FDIC (as described and quoted in the Pl. MSJ at 5-6). *See* Pl. App. at 29-30 ¶ 5. But 12 C.F.R. § 360.3 is not cited in the Letter Agreement or in any other agreement between the parties.[6]

To be clear, Plaintiff agrees that 12 C.F.R. § 360.3 is *part of* the FDIC's "receivership procedures" and *part of* the "applicable provisions of the receivership priority system." (These terms *are used* in the 2004 Letter Agreement.) This is why Plaintiff explained in detail how and why 12 C.F.R. § 360.3 supports the payment of the interest sought by Plaintiff. *See supra* at 3-6

---

[6] It is unclear why FDIC repeatedly says that Paragraph 5 of the 2004 Letter Agreement was an "accommodation" in connection with the tax settlement between the Benj. Franklin receivership and the IRS. Def. Opp. at 1, 4, 5, 21. The shareholders' counsel (whose fees were paid, in part, by the BFS Lit. Fund) helped save hundreds of millions of dollars of taxes, which preserved and protected the Benj. Franklin receivership surplus, and also brought other actions designed to increase the surplus even more. The FDIC's 2/3/06 Motion for Fairness Hearing filed with this Court in *United States v. FDIC*, No. 02-1427 (EGS) (D.D.C.) recognized the shareholders' contributions and correctly pointed out that the BFS Lit. Fund had: (1) financed litigation against FDIC in the U.S. District Court in Portland, Oregon, to enjoin the payment of the disputed tax [which litigation would be (and was) resolved following the tax settlement]; (2) financed the shareholders' motion to intervene in the tax collection suit filed by IRS against FDIC in this Court (*see* Pl. App. at 15-16, 20); and (3) financed litigation against the United States in the U.S. Court of Federal Claims, which resulted in a damage award that (when and if finalized) will be paid into the FDIC receivership. Pl. App. 13-15, 20. It was certainly reasonable that FDIC recognized these contributions and reimbursed the shareholders who paid for these legal actions as a *reasonable expense of the receivership* – not as an "accommodation."

and the Pl. MSJ at 14-21.  But FDIC's "receivership procedures" and "priority system" *also include* the statute described in the Pl. MSJ at 22-23 and the 65 years of case law described in the Pl. MSJ at 8-13, both of which were discussed in counsel's 2005 correspondence sent to FDIC (as referenced in n.4 above).  More importantly, FDIC referenced the same pertinent statute in an earlier filing with this Court.

That filing was FDIC's 2/3/06 Motion for Fairness Hearing about the tax settlement, which described both the "*statutory* priority system" for distributing surplus funds in the receivership (citing the 1989 version of 12 U.S.C. § 1821(d)(11)) and the "*regulatory* priority system" at 12 C.F.R. § 360.3.  *See* Pl. App. at 12 (emphasis added).[7]  The same FDIC motion advised this Court that the Receiver's distribution of the $3 million of shareholder contributions [to the BFS Lit. Fund] would be "handled by the FDIC pursuant to its *statutory powers* as the receiver of Benj. Franklin."  Pl. App. at 20.  Clearly, FDIC should not be heard to take a different position in this litigation.  FDIC's receivership claims decisions have been guided by statutes and by case law for decades and there is no reason to restrict the decision on the BFS Lit. Fund's claim to one regulation.

### 3.     Statutory directives also permit the payment of Plaintiff's claim.

As quoted in the Plaintiffs' motion, Congress enacted two new statutory directives to FDIC Receivers in 1989:  (1) to "pay depositors and *other creditors*" before distributing any surplus to the institution's shareholders, and (2) to pay "depositors, *creditors*, [and] *other claimants*" before distributions to the shareholders.  Pl. MSJ at 22-23, quoting Pub. L. No. 101-

---

[7] Indeed, in describing the distributions that the FDIC Receiver would make or consider (including this one) if the tax settlement were approved, FDIC cited *first* the statute that directed receivers to distribute surplus funds to shareholders only after all depositors, "creditors" and "other claimants" were paid – before FDIC cited the receivership regulation at § 360.3.  Pl. App. at 12, n.4.

73 § 212 (emphasis added) (codified at 12 U.S.C. § 1821(d)(11) between 1989 and 1993), which still applies to the Benj. Franklin receivership.

This statutory language used the term "*other creditors*" in the same phrase with depositors – thus superseding the old FHLBB reference to "general creditors." Moreover, it also referenced "creditors" and "other claimants" – two other terms also not used or defined in the past by the FHLBB or FDIC regulations about creditor claims. The FDIC does not explain why the BFS Lit. Fund did not become one of the receivership's "other claimants" under this statutory provision. Indeed, the only FDIC response to Plaintiff's reference to this key 1989 statute is that it "doesn't mention interest, alter the priorities set out in 12 C.F.R. § 360.3 or the FDIC's determination that the BFS Lit. Fund is not entitled to interest . . . ." Def. Opp. at 12. None of these three responses are valid.

First, it is irrelevant that the 1989 statute did not mention interest because Plaintiff has previously demonstrated that receivers regularly pay interest without statutory authorization, *see* Pl. MSJ at 9-13 – and this is a point with which the FDIC agrees. Def. Opp. at 2, 6. Secondly, it is equally irrelevant that the statute did not expressly alter the priorities set out in 12 C.F.R. § 360.3.[8] The proper questions instead are: (1) whether the statute trumped the regulation,[9] and (2) whether the FDIC should have amended the regulation after receiving the statutory guidance

---

[8] As noted above, § 360.3 was an FHLBB regulation, and the same 1989 legislation that directed "other claimants" to be paid, also abolished the FHLBB and directed that its former regulations be distributed among several successor regulators, including FDIC, as explained in Pl. MSJ at 16-17 & nn. 18, 19. It is illogical to expect that Congress would or should have clarified the application of its new statutory language to a defunct agency's former regulations.

[9] In one of the *Winstar*-related cases, the Justice Department argued that FDIC could not rely upon the 12 C.F.R. § 360.3 regulations to identify priority levels that were incompatible with the 1989 legislation that amended 12 U.S.C. § 1821(d)(11). *See* 11/27/00 Brief for the Defendant-Appellant United States in *Glass v. United States*, No. 00-5137 (Fed. Cir.) at 30-31, n. 12 (excerpt at Pl. App. 55). (The Federal Circuit did not address this argument.)

that went beyond the terms of the old FHLBB regulation (*i.e.*, clarifying how "general creditors," "creditors" and "other claimants" would be defined and treated going forward). As shown in Section II.C below, FDIC's failure to use any formal notice and comment procedures to clarify its interpretation of this statute also contributes to FDIC's inability to command *Chevron* deference for its ruling on the Plaintiff's claim.

And thirdly, to state that the 1989 statute did not alter FDIC's determination to deny Plaintiff's claim for interest, Def. Opp. at 12, begs the question to be answered by this Court. The only logical reading of the 1989 statute is that all "other claimants" must be paid before the final surplus distribution is made to a closed institution's shareholders. This is applicable to the BFS Lit. Fund because it is such a claimant and ample funds remain to pay it before distributing the remainder of the receivership surplus to all of the Benj. Franklin shareholders.

**B.**     <u>**Receivership Case Law is Clear that Interest should be paid on Claims when a Surplus exists to do to**</u>

The Pl. MSJ at 8-13 cites sixty-five years of case law confirming that interest has been approved by Courts to be paid to receivership claimants of all kinds when a surplus exists to do so. FDIC responds that the cases relied upon by Plaintiff are inapplicable or distinguishable, Def. Opp. at 6-9, and the national bank cases in particular were not governed by 12 C.F.R. § 360.3, which the parties agree was applicable only to *thrift* receiverships established before 1993.

But to what guidelines were all failed national banks subject for receivership claim determinations? The National Bank Act has stated – since 1864 – that "ratable" payments should be made:

> On all such claims as may have been proved to [the receiver's] satisfaction or adjudicated in a court of competent jurisdiction . . . and the remainder of the proceeds, if any, shall be paid over to the shareholders of such [national bank].

12 U.S.C. § 194.  For 143 years this statutory provision has said nothing about interest being paid on the ratable distributions made by the receivers of national banks.[10]  Yet courts have issued numerous decisions on how and when interest should be calculated for national bank receivership claimants.  *See* 12 U.S.C.A. § 194, Notes 81-86.  Why?  Because courts all over the country determined that interest was and is a fair and equitable part of ratable payments to receivership claimants, including to FDIC itself, if a surplus existed to pay it – without the necessity of express statutory or regulatory language authorizing it (as discussed in the Pl. MSJ at 8-13).  Of course, FDIC does not dispute its own entitlement to interest here and in other receiverships, and as noted above, *FDIC already has collected $257.8 million of post-insolvency interest from the Benj. Franklin receivership.*  Pl. App. at 41-42.

Thus, FDIC's observation that some of the plaintiff's cited cases did not involve the specific thrift regulation at 12 C.F.R. § 360.3 is beside the point.  Those thrift claimants are equally entitled to interest under the logic and the equity addressed in the overriding and consistent case law, including the Second Circuit's pronouncement that:

> [T]he Supreme Court has long recognized the general proposition that creditors to a liquidation are entitled to interest, just as any other judgment creditor, *even absent specific statutory authorization.*

*Golden Pacific Bancorp v. FDIC,* 375 F.3d 196, 203 (2nd Cir. 2004), *cert. denied,* 126 S.Ct. 621 (2005).  FDIC retorts that unlike the claimants in *Golden Pacific*, "the BFS Lit. Fund is not a true creditor of the failed Thrift."  Def. Opp. at 7.  But as discussed above, it is clear that the BFS Lit. Fund is a creditor of the receivership rather than the closed thrift.  Moreover, the Second Circuit did not distinguish between different kinds of creditors when it recited the background leading to

---

[10] The quoted language from 12 U.S.C. § 194 has not changed since the original Act of June 3, 1864, § 50, 13 Stat. 114, 115.  Moreover, there are no FDIC or other agency regulations to implement or clarify the quoted language.

the *Golden Pacific* decision, including the fact that FDIC had previously made interest payments

both to itself and to "*hundreds of non-FDIC creditors.*" 375 F.3d at 199.

Of course, the Plaintiff's MSJ did include court decisions expressly referencing the thrift

regulation at 12 C.F.R. § 360.3. *See* Pl. MSJ at 20-21 (discussing *Bailey v. United States*, 53 Fed.

Cl. at 254 and *Waterview Management Co. v. FDIC*, 257 F. Supp. 31, 33-35 (D.D.C. 2003)).

FDIC responds that the *Bailey* Court's conclusions about interest being paid on various levels of

claims under § 360.3 was "speculative and *dicta* at best." FDIC Opp. at 11. FDIC further

complains that the *Bailey* Court did not understand what it was saying about interest or simply

"adopted an [erroneous] statement made by the Department of Justice in its brief" with no

opportunity for FDIC to "correct the error." FDIC Opp. at 12-13. This is unacceptable because

the Court's simple conclusion in *Bailey* about paying interest on Priority Level 1 claims is fully

consistent with overriding case law mandating the payment of interest – if a surplus exists to do so.

As to the second decision cited by Plaintiff that involved 12 C.F.R. § 360.3, FDIC

responds that *Waterview Management's* discussion of § 360.3 is "not germane to this case." Def.

Opp. at 10 (also calling it "dicta," "unnecessary" and "superfluous"). Plaintiff agrees that

*Waterview Management* was a case involving a receiver's repudiation of a contract and the

damages that resulted from that repudiation. But this does not make irrelevant the Court's

discussion of priorities under § 360.3. In categorizing the repudiation damages in that case, the

Court discussed § 360.3 and the FDIC's placement of the repudiation damages under Level 6 and

the prejudgment interest on those damages under Level 7. *Waterview Mgmt.*, 257 F. Supp. 2d at

33-35. But the reason that FDIC had not paid the Level 7 interest to Waterview Management

was that the assets of the receivership had not been sufficient to do so. *Id.* at 35 (notwithstanding

this fact, the Court noted FDIC's concession that interest could be paid if there was a surplus

"sufficient to pay all provable claims in full"). The Court rejected FDIC's arguments and

ordered it to pay both prejudgment and post-judgment interest irrespective of their priority levels. *Id.* at 36-37.

Finally, one of the FDIC's briefs referenced by the Court in *Waterview Management* is included in the Pl. App. at 43-50 because it directly contradicts the FDIC's argument here that the national bank cases referenced in the Pl. MSJ are irrelevant to whether claimants in a thrift receivership may collect interest under 12 C.F.R. § 360.3. Def. Opp. at 6-9. *Waterview Management* involved a thrift receivership (just like here) to which § 360.3 clearly applied, but FDIC opened its 1998 brief by citing both the National Bank Act at 12 U.S.C. § 194 and 12 C.F.R. § 360.3 to explain how ratable distributions were handled. *See* Pl. App. at 44. And when FDIC explained why prejudgment interest should not be assessed against the Receiver in *Waterview Management*, FDIC said:

> It has long been established that post-insolvency interest is not recoverable because that would violate the rules of ratable distribution. [Three *national bank* case citations omitted] The exceptions to this rule [include] where the assets of the receivership are sufficient to pay all provable claims in full [citing three more *national bank* case citations]. . . .

Pl. App. at 45-46. FDIC cited the national bank decisions in its 1998 brief (several of which are *the same decision*s cited in the Pl. MSJ here) to support its declination to pay interest to the *Waterview Management* plaintiff because that thrift receivership did not have enough surplus to do so. But FDIC now claims that the same decisions are irrelevant to demonstrating whether the BFS Lit. Fund should collect interest from a thrift receivership which has ample surplus to do so. The case law is indeed relevant and should guide the Court's decision in this case.

### C. This Court Should Consider but Reject the FDIC-Receiver's Interpretation that denied Plaintiff's Claim.

#### 1. FDIC's interpretation is not entitled to *Chevron* deference.

FDIC overstates the holding of *Chevron* by contending that its representative's views on the receivership priority regulation supersede any contrary view held by the Department of

Justice (which occurred in the *Bailey* case) and that "FDIC's position controls over the conflicting views of another agency or a court." Def. Opp. at 13. To the contrary, FDIC's receivership statute makes clear that FDIC's staff is not the final arbiter of receivership claims because it authorizes FDIC to "pay creditor claims which are allowed by the receiver . . . *or determined by the final judgment of any court of competent jurisdiction. . . .*" 12 U.S.C. § 1821(d)(10)(A) (emphasis added).

In *Chevron*, the Supreme Court recognized that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer" and that "deference to administrative interpretations 'has been consistently followed by this Court whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies . . . .'" *Chevron*, 467 U.S. at 844 (internal citations omitted). The issue in *Chevron* was the validity of a regulation promulgated by the EPA under the Clean Air Act, which itself contained provisions that the Court described as "lengthy, detailed, technical, complex, and comprehensive." *Id.* at 848. But the statute did not define a key term, which EPA defined in a subsequent regulation. After examining of the statute's legislative history and the EPA's regulatory process used to consider and implement its regulation, the Court held that EPA's regulatory definition was a permissible construction of the statute and its goals, and thus it was entitled to deference.

In the later case of *United States v. Mead Corporation*, 533 U.S. 218 (2001), the Court found a letter ruling by the U.S. Customs Service *not* to qualify for *Chevron* deference because there was no indication that Congress intended such a ruling to carry the force of law.[11] Instead,

---

[11] The Court observed that Customs did have general rulemaking authority conferred on it by Congress, including the power to make classification rulings of the kind involved in the *Mead* case, but this did not mean that Customs' individual rulings should be considered "the legislative type of activity that would naturally bind . . . ." *Mead*, 533 U.S. at 232. The Court also noted

14

*Mead* held (533 U.S. at 234-38) that the ruling should have been considered under the standards stated in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *Skidmore* considers and respects agency rulings according to their persuasiveness:

> The weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Skidmore*, 323 U.S. at 140. *See also Reno v. Koray*, 515 U.S. 50, 61 (1995) (an agency interpretation contained in an internal agency guideline that is not "subject to the rigors of the [APA], including public notice and comment" is entitled only to "some deference"); *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("an interpretation contained in an opinion letter, not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking . . ." lacks the force of law and does not warrant *Chevron*-style deference").[12]

### a. FDIC's interpretation was not issued to clarify or implement statutory directives or policies.

Unlike the Clean Air Act that provided detailed requirements with only definitional and procedural issues to be filled in by the EPA's regulations (as discussed in *Chevron*), there was no federal statute addressing the priorities for receivership claims until 1993 – three years after Benj. Franklin went into receivership.[13] *See Waterview Management*, 257 F. Supp. 2d at 34

---

that Customs did not engage in "notice-and-comment practice" when issuing its classification rulings, and, for this and other reasons, the Court found the rulings not to have the "legal force of law." *Id.* at 233.

[12] *See also Manning v. United States*, 146 F.3d 808, 814 n.4 (10th Cir. 1998) (Solicitor's opinion from the Department of the Interior was not entitled to *Chevron* deference but to "some weight" if it was "consistent with earlier and later pronouncements by the agency," citing *Skidmore*).

[13] The *statutory* priority system was enacted in Pub. L. No. 103-66, § 3001(a), 107 Stat. 312, 336 (1993) (codified at 12 U.S.C. § 1821(d)(11)). And FDIC immediately amended its regulation to say it would no longer apply to receiverships established after 8/10/93. *See* 12 C.F.R. § 360.3(f).

("There is no statutory requirement that claims be prioritized at all, or that they be assigned priorities in the specific way that the [12 C.F.R. § 360.3] regulations have done.").

In issuing the letter ruling in this case, the agent for the FDIC-Receiver was not interpreting a statute or carrying out statutory policies. Because of this, FDIC may not rely on decisions granting deference to other banking agencies based on their "deliberative conclusions as to the meanings of these [banking] laws." *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 255-57 (1995) (finding that an OCC official's letter should be accorded deference because it interpreted the National Bank Act on behalf of the Comptroller of the Currency). *But see Inv. Co. Inst. v. Camp*, 401 U.S. 617, 626-39 (1971) (even after giving "great weight" to a Comptroller of the Currency regulation, it was found invalid because it was inconsistent with the guiding statute).

Nor is the FDIC's interpretation here the kind of official agency position about the meaning of a statutory term addressed in the pre-*Mead* decision of *FDIC v. Philadelphia Gear Corp.*, 476 U.S. 426, 438-39 (1986) (according *Chevron* deference to FDIC's interpretation of the statutory term "deposit" after confirming that the definition represented the official position of the agency from 1935 to the present). In contrast, the FDIC staff interpretation that denied Plaintiff's claim in this case is contained in a one-page denial letter (citing no prior precedents) signed by a receivership representative in FDIC's Dallas office. Pl. App. at 32.

### b. The *Mead/Skidmore* standards of review should be used here.

The Ninth Circuit concluded in *The Wilderness Society v. U.S. Fish & Wildlife Service*, 353 F.3d 1051, 1067 (9th Cir. 2003) that it was appropriate to apply the *Mead/Skidmore* standard instead of *Chevron* deference when the defendant agency had not really been interpreting a statute in issuing a decision on a permit application. Instead, the agency decision was "only an agency's application of law in a particular permitting context, and not an interpretation of a

statute that would have the force of law." Because the Court did not find the agency's decision

to be persuasive or consistent with statute, it was rejected. *Id.* at 1068-70.

Similarly, in *Waterview Management*, this Court disagreed with FDIC's proffered

interpretation of the same regulation at 12 C.F.R. § 360.3, concluding that:

> FDIC's claim prioritizing regulation has been given appropriate deference
> under the rule of *Skidmore v. Swift & Co.*, 323 U.S. 134 . . . but that regulation
> cannot and does not supersede a judgment awarding prejudgment interest.

257 F. Supp. 2d at 36.

### 2.    FDIC's interpretation is not "persuasive" under the *Mead/Skidmore* standards.

As the Supreme Court explained in *Skidmore*, the weight accorded to an agency's

interpretation in any particular case "will depend upon the thoroughness evident in its

consideration, the validity of its reasoning, its consistency with earlier and later pronouncements,

and all those factors which give it power to persuade. . . ." 323 U.S. at 140. In addition to the

*Skidmore* standards quoted above, *Mead* added as other relevant factors, the "logic[ ] and

expertness" of an agency decision, the care used in reaching the decision, as well as the formality

of the process used. *Mead*, 533 U.S. at 228, 235. *See also Christensen*, 529 U.S. at 586-88

(rejecting the persuasiveness of an agency interpretation under *Skidmore*).

In applying these standards, the FDIC staff person's brief ruling on the BFS Lit. Fund's

claim for interest clearly comes up short:

> No interest is due on the Fund's claim because the most appropriate
> characterization of the Fund's claim is as an administrative claim and, as such,
> no interest is authorized under the applicable priority of claim, formerly 12
> CFR § 569c-11, now found at 12 CFR § 360.3. Under that priority of claim,
> only depositors and general creditors are entitled to interest, in the event of a
> surplus, and the fund is neither a depositor nor a general creditor.

Pl. App. at 32. This is the sole FDIC consideration and analysis presented in response to the

BFS Lit. Fund's claim, and as demonstrated below, it does not meet the Supreme Court's

expectations of reasoning, logic, expertness, or care.[14]  Moreover, the FDIC may not bolster its

staff's May 2006 ruling by the additional litigation arguments set out in FDIC's briefs to this

Court.  *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988) ("Deference to what

appears to be . . . an agency's convenient litigation position would be entirely inappropriate.");

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) ("The courts may not

accept appellate counsel's post-hoc rationalizations for agency action. . . ."); *Inv. Co. Inst.*, 401

U.S. at 626-28 (rejecting the use of legal briefs – even though prepared with "great professional

competence" – to substitute for the Comptroller of the Currency's failure to adopt an "expressly

articulated position at the administrative level").

### a.    FDIC's ruling is neither thorough nor well-reasoned.

As noted above, the Supreme Court has directed that Courts consider the "thoroughness

evident in [the agency's] consideration."  *Gen. Elec. v. Gilbert*, 429 U.S. 125, 149 (1976),

quoting *Skidmore*.  The letter signed by a receivership staff person in this case (Pl. App. 32)

simply states a bottom-line conclusion without any analysis or legal considerations.  Moreover, it

refers to "*the most appropriate characterization* of the [BFS Lit.] Fund's claim" being an

"administrative claim," but never explains what *other appropriate characterizations* exist and

why they were not accepted by the FDIC, particularly considering the unique facts of this case.

The FDIC staff ruling is also lacking in thoroughness because it did not address the BFS

Lit. Fund's argument that its claim for interest could be viewed either as a Priority Level 7 claim

under its broad reference to all "Claims other than those that have accrued . . . before the date of

default," or as a Priority Level 1 claim for "Administrative expenses of the receiver."

---

[14] One must question the "care" used in preparing this ruling when it contains a bracketed
question to the signer of the letter, which was supposed to be removed before the letter was sent
– but it was not.  *See* the last line of the 4th paragraph in the FDIC's 5/11/06 letter at Pl. App. 32.

§ 360.3(a)(1), (a)(7).  The ruling stated only that no interest is authorized on administrative

claims under the regulation.  *Bailey v. United States* decided otherwise as discussed above at pp.

5 and 12.  The FDIC staff ruling also fails to explain why Plaintiff's interest claim is not a claim

in its own right – separate from the $3 million of principal claim – which would allow it to be

paid under the statutory directives discussed *supra* at 8-10.

The ruling's conclusion that the BFS Lit. Fund is "neither a depositor nor a general

creditor," (as quoted above in the FDIC-Receiver's denial letter) also is neither thorough nor

persuasive because the term "general creditor" is not defined in § 360.3 or in any of the pre-

decessor receivership regulations of the FHLBB, and the FDIC has identified no other statutory

or regulatory guidance to support its view that the BFS Lit. Fund is not a "general creditor."[15]

Finally, the FDIC staff ruling did not address the statutory language of 12 U.S.C. §

1821(d)(11) discussed *supra* at 9-10, which did not use the term "general creditor" but directed

that depositors, "*creditors*" and "*other claimants*" all must be paid before shareholders are paid.

Nor did the ruling discuss the ample case law about paying interest to receivership claimants, all

of which had been submitted by the BFS Lit. Fund as part of its claim.

       **b.**      **FDIC's ruling has not been shown to be consistent with earlier and later interpretations.**

FDIC's analysis also fails the *Skidmore* test for "consistency with earlier and later

pronouncements."  323 U.S. at 140.  *See also Good Samaritan Hosp. v. Shalala*, 508 U.S. 402,

---

[15] Perhaps FDIC staff uses the logic of Humpty Dumpty in Lewis Carroll's *Through the Looking Glass*:  "When I use a word," Humpty Dumpty said . . ., "it means just what I choose it to mean – neither more nor less."  More to the point, when FDIC first inherited the FHLBB's ten-level priority regulation in 1990, it presumably could have satisfied the standards set by the Supreme Court by using the APA notice and comment procedures to adopt regulations or guidelines that defined "general creditor" and/or clarified which claims would and would not be entitled to receive interest.  FDIC also could have used notice and comment procedures to clarify the terms "creditor" and "other claimant" as used in the FIRREA statute in 1989 (thus "filling in the blanks" of a statutory policy).  FDIC did not do any of these things.

417 (1993) ("the consistency of an agency's position is a factor in assessing the weight that position is due"). The requirement for consistency with prior interpretations is a tough standard. *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 256-58 (1991).[16]

Because the 10-level priority system in § 360.3 was a FHLBB enactment in 1988, based on earlier, simpler priority procedures first announced in 1968 (as discussed in the Pl. MSJ at 17-19), the Plaintiff requested in discovery any FHLBB guidance on handling such claims or FHLBB rulings on claims for interest under these predecessor regulations. The FDIC found no such FHLBB/FSLIC guidance or rulings.

At the very least, the FDIC-Receiver's staff should have reviewed both FHLBB rulings on receivership claims for post-insolvency interest between 1969 and 1989, and FDIC and RTC rulings from 1990 to 1993 (*i.e.,* before the regulation was superseded by statute) to see if the 2006 ruling was "consistent" with such interpretations, as required by *Mead* and *Skidmore*. FDIC did not do this as it could not find any such FHLBB or FDIC interpretations when they were requested by the Plaintiff in discovery.[17]

---

[16] In *Arabian American Oil*, the Court considered an EEOC interpretation under *Skidmore* and concluded that the EEOC had not demonstrated "consistent administrative interpretations" even though the same conclusion had been stated in "a 1975 letter from the EEOC's General Counsel, 1983 testimony by its Chairman, and a 1985 decision by the Commission." 499 U.S. at 256. This was because an earlier EEOC pronouncement from 1971 had taken a different position, which was much closer to the date the relevant statute was first enacted. *Id.* at 257 (finding EEOC's more recent interpretations "neither contemporaneous with its enactment nor consistent since the statute came into law").

[17] Although FDIC counsel found no prior rulings on claims for interest in surplus thrift receiverships, the defendant did produce in discovery certain 1997 internal-FDIC staff e-mails, which referred to the *surplus* status of "the Benj. Franklin Savings (Oregon) receivership" and set up a meeting to discuss "RTC and FDIC practices on the compounding of interest on post-insolvency interest claims in surplus RTC receiverships." Pl. App. 51-52 (poor copy as produced). The memo lamented the staff's inability to find documentation that guided such practices in the past or present, *id.* at 51, and noted that "There has been an effort underway for over year to develop a proposal for an FDIC regulation that would clearly define the interest rate and priority scheme to be used in the payment of post-insolvency interest in surplus

The defendant agrees that this Court's review of Plaintiff's claim is a *de novo* review. Pl. MSJ at 8; Def. Opp. at 2. In conducting that *de novo* review, the Court should give FDIC's prior ruling the appropriate consideration under *Mead* and *Skidmore*. But for all of the reasons noted above, the brief and cryptic ruling issued by a receivership staff person does not meet the persuasiveness test of *Mead* and *Skidmore* and should be rejected by this Court.

**D.      Paying the Plaintiff's Claim is Fair and Equitable.**

In response to Plaintiff's multiple reasons (set out in the Pl. MSJ at 24-28) that the payment of interest to the BFS Lit. Fund is equitable, FDIC responds that "Equity does not control this case" because 12 C.F.R. § 360.3 "provides a controlling rule of law." Def. Opp. at 18. But the Court certainly may and should consider the equities involved here in reaching its conclusion about the law.

The FDIC cites only one decision in support of its assertion that equitable considerations do not apply here: *United States v. Noland*, 517 U.S. 535, 543 (1996). That decision held that a bankruptcy court could not equitably subordinate claims on a categorical basis when the priority scheme expressly set out in the Bankruptcy Code dictated otherwise. Here, of course, there was no federal statute specifying the precise priorities of claims in a 1990 thrift receivership, and the applicable short-lived regulation (at § 360.3) is broad enough to grant the interest sought by Plaintiff under at least two of the regulation's priority levels. More importantly, the federal statute enacted in 1989 directed "all claimants" to be paid before shareholders. The Court may and should consider equitable principles in deciding how all of the applicable receivership law (not just § 360.3) should be applied.

---

receiverships." *Id.* at 52. This honest assessment of the confused state of FDIC's practices concerning post-insolvency interest *in surplus receiverships* does not support FDIC's request that this Court defer to the agency's expertise here.

1.    **Repaying principal without interest does not make the contributors whole.**

On this subject, Plaintiff cited precedent that interest should be viewed as simply "compensating for the time value of money" and "necessary for full compensation." Pl. MSJ at 24-26, quoting *Motion Picture Assn. of Am., Inc. v. Oman,* 969 F.2d 1154, 1157 (D.C. Cir. 1992). Thus, once the FDIC determined to repay the shareholders the $3 million of contributions they sent to the BFS Lit. Fund between 1990 and 2006, such repayments were *incomplete* without including interest.

While not responding directly to Plaintiff's argument or the cited case law, FDIC counters that the contributors to the BFS Lit. Fund were not expecting interest and had never been promised interest on their contributions until the BFS Lit. Fund Trustee agreed to pay interest (only to major contributors) in 1999. Def. Opp. at 18-20. It is true that interest had not been promised to all contributing shareholders because the attorneys bringing the 1990 Claims Court lawsuit funded by the BFS Lit. Fund could not possibly know if they would be successful in that lawsuit and there was no source of money available to repay the shareholder contributors except for the possible damages from that litigation. [18]

It was only when the possible IRS tax settlement was first being discussed with shareholders' counsel in 2004 that it became clear that there was another potential source to repay the BFS Lit. Fund contributors. That source was the post-tax-settlement receivership surplus, and FDIC agreed in the 2004 Letter Agreement to do just that if an appropriate tax settlement could be finalized and approved by the Court. Pl. App. at 29-30 ¶ 5. As a matter of

---

[18] Paragraph 7 of the FDIC-Receiver's Statement of Material Facts says that the BFS Lit. Fund Trustee Willner promised the shareholder plaintiffs that the fund would pay interest at the rate of prime plus 2 on the portion of all contributions in excess of $.02 per share. In fact, Mr. Willner's 1999 letter expressly conditioned his undertaking to: "In the event of victory in the [Claims Court] case of *Suess et al. v. United States. . . .*" *See* Exhibit 5 to FDIC's St. Mat. Facts.

equity, there is no reason to separate the interest and the principal of the BFS Lit. Fund's claim

under these circumstances. If FDIC recognized the fairness of reimbursing the $3 million of

principal, which it clearly did, there is no reason not to recognize the fairness of adding interest

to that same principal. Moreover, it is certainly fair to pay that interest from the receivership

surplus, which the BFS Lit. Fund's efforts helped to preserve and protect. *See n.6 supra.* The

contributing shareholders deserve to be fully reimbursed by adding interest to their previous

repayments.

### 2.    <u>Denying interest is inequitable to the contributing shareholders.</u>

In response to Plaintiff's argument that denying interest to the contributing shareholders

results in preferential treatment for the Benj. Franklin shareholders who *declined* to contribute

money over the years, Pl. MSJ at 26, FDIC counters that all shareholders were intended to be the

beneficiaries of the Claims Court action and that the shareholders were earlier told by one of the

derivative shareholder plaintiffs that non-contributors would not be "sanctioned." Def. Opp. at

20. But all of the Benj. Franklin shareholders will still be equal beneficiaries of any Claims

Court damages paid in that case, which is unrelated to the interest sought here. [19] Moreover, it

was not a "sanction" to repay the cash contributions to the contributors, which FDIC voluntarily

did in 2006, and likewise it will not be a sanction to add interest to that principal. *See Waterview

Management*, 257 F. Supp. 2d at 37 (not a "preference" to order FDIC to pay post-judgment

interest – even though it had no surplus to do so – because such interest was simply "the payment

of a sum that represents only the time value of money.").

---

[19] The FDIC also repeatedly states that interest is not paid on Claims Court damages, Def. Opp. at 2, 18, 20, but this has nothing to do with Plaintiff's entitlement to interest on the contributions made to the BFS Lit. Fund from 1990 to 2006, which will be paid from the Benj. Franklin receivership surplus – not from Claims Court damages.

The plain fact here is that paying the claim for interest sought by the BFS Lit. Fund will simply reduce by about $1 to $2 million, the remaining receivership surplus before it is distributed to all shareholders of Benj. Franklin. Not to do this would penalize the contributing shareholders, particularly those who contributed in the earlier years starting in 1990.[20] Not one shareholder (either contributing or non-contributing) has objected to this proposed payment of interest to the shareholders who contributed to the BFS Lit. Fund.

### 3.    The award of interest should not be reduced by attorneys fees and costs.

Finally, the Plaintiff has requested that, if its MSJ is granted, Plaintiff's attorneys fees and costs also be paid from the receivership surplus so that the payments of interest to the contributing shareholders will not be reduced by the fees and costs related to this litigation. Pl. MSJ at 26-28 (citing supporting case law). The FDIC's only response to this request is its unsupported assertion that this would be "inequitable," Def. Opp. at 21, and thus FDIC has waived any further argument on this subject.[21]

---

[20] *See In re Milwaukee Cheese Wisc., Inc.*, 112 F.3d 845, 849 (7th Cir. 1997) ("the longer the case lasts, the more of the stakes the defendant keeps even if it loses (and the less the victorious plaintiff receives), *unless interest is added*") (emphasis added).

[21] The text of the Def. Opp. does not state what FDIC seeks in its "cross-motion," but FDIC's proposed order submitted with its opposition brief asks the Court to agree that 12 C.F.R. § 360.3 does not permit FDIC's payment of Plaintiff's claim for interest. FDIC's reply brief must be restricted to this single subject (presumably contained in FDIC's cross-motion). *See Charter Oil Co. v. Am. Employers' Ins. Co.*, 69 F.3d 1160, 1170-71 (D.C. Cir. 1995) (an issue was deemed waived by the party that ignored the issue in its first brief but then addressed it "quite seriously" in its reply brief because that "strategy may well have 'sandbagged' the [other party]"); *Public Citizen Health Research Group v. Nat'l Inst. of Health*, 209 F. Supp. 2d 37, 43-44 (D.D.C. 2002) (new arguments in reply brief do not permit the other party "to competently respond"); *GLF Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 197 (D.D.C. 2003) ("Our local rules contemplate only three filings when a motion is filed, the motion, the opposition and the reply to the opposition." If the last pleading raises new matters, it is an unauthorized surreply.)

Accordingly, Plaintiff reiterates its request that if its MSJ is granted, Plaintiff's attorneys fees and costs be handled in the procedural manner set out in Plaintiff's proposed order and that such fees and costs be ordered paid from the receivership surplus.

**III.**    **CONCLUSION**

It would frustrate the purpose of the receivership claims process to allow the FDIC Receiver to selectively pay interest on some claims, like the post-insolvency interest already paid in this case to the FDIC, the IRS, and other creditors of Benj. Franklin, while continuing to deny Plaintiff's claim.  Moreover, based on the unique facts of this case, the shareholders who funded the BFS Lit. Fund are entitled to an equitable return on their cash contributions, which FDIC acknowledges were used to preserve, protect, and increase the receivership surplus of Benj. Franklin to the benefit of all of its shareholders.  For the reasons set out in the Pl. MSJ and above, the FDIC Receiver should be ordered to calculate and pay the Plaintiff BFS Lit. Fund's claim as well as the Plaintiff's reasonable attorneys fees and costs for this action.

Date:    January 26, 2007                    Respectfully submitted,


                                             /s/  Rosemary Stewart
                                             Rosemary Stewart
                                             Spriggs & Hollingsworth
                                             1350 I Street, N.W.
                                             Washington, DC 20005
                                             202-898-5888 – (Telephone)
                                             202-682-1639 – (Fax)
                                             D.C. Bar No. 204438

                                             Counsel for Plaintiff The Benj. Franklin
                                             Shareholders Litigation Fund

BEFORE THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE BENJ. FRANKLIN SHAREHOLDERS LITIGATION FUND, BY ITS SOLE TRUSTEE, DON S. WILLNER )<br><br>Plaintiff, )<br><br>v. )<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR THE BENJ. FRANKLIN FS&LA, PORTLAND, OREGON )<br><br>Defendant. ) | Civil Action No. 06-01025 (EGS) |

**PART 2 OF PLAINTIFF'S APPENDIX CONTAINING DOCUMENTS
IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Filed:   January 26, 2007

Rosemary Stewart
Spriggs & Hollingsworth
1350 I Street, N.W.
Washington, DC 20005
202-898-5888 – (Telephone)
202-682-1639 – (Fax)
D.C. Bar No. 204438

Counsel for Plaintiff The Benj. Franklin
Shareholders Litigation Fund

## Table of Contents
## to Part 2 of Plaintiff's Appendix

<u>Page Range</u>

One-page FDIC Report (11/22/06) disclosing the amount of post-insolvency
interest ("PII") paid from the Benj. Franklin FS&LA receivership ...................    41

E-mail from FDIC from Counsel Bruce Taylor to Plaintiff's Counsel Rosemary
Stewart clarifying amount of PII received by FDIC . ..............................    42

FDIC brief filed April 1, 1998, in *Waterview Management Co. v. FDIC*,
No. 94-1930 (JR) (D.D.C.) ................................................................    43 – 50

FDIC internal e-mail correspondence from May 1997 regarding post-insolvency
interest on claims in surplus receiverships..............................................    51 – 52

Excerpt from U.S. Department of Justice brief in *Glass v. United* States,
No. 00-5137 (Fed. Cir.) dated November 27, 2000.....................................    53 – 56

**Benjamin Franklin Savings Association - 7166**

**Post Insolvency Interest Paid**

| Date | Amount |
|------|--------|
| 1/26/1995 | 70,576.39 |
| 8/3/1995 | 170,600,000.00 |
| 8/10/1995 | 1,300,000.00 |
| 9/14/1995 | 700,000.00 |
| 9/21/1995 | 9,400,000.00 |
| 10/12/1995 | 1,000,000.00 |
| 10/26/1995 | 700,000.00 |
| 11/9/1995 | 4,600,000.00 |
| 11/24/1995 | 1,000,000.00 |
| 11/30/1995 | 1,200,000.00 |
| 12/7/1995 | 1,400,000.00 |
| 12/14/1995 | 900,000.00 |
| 10/1/1996 | 44,916,488.92 |
| 6/1/1997 | 809,786.69 |
| 11/1/1997 | 17,245.02 |
| 8/17/1998 | 6,808.50 |
| 11/20/1998 | 15,616,967.26 |
| 11/20/1998 | 66.50 |
| 5/29/2001 | 3,684,932.24 |
| 5/23/2001 | 5,891.29 |
| 10/25/2004 | (6,320.00) |
| 10/25/2004 | (7,431.34) |
| 1/25/2005 | (51,800.23) |
| | |
| Total | 257,863,211.24 |

**41**

**From:** Taylor, Bruce C. [BTaylor@FDIC.gov]
**Sent:** Saturday, January 06, 2007 1:01 PM
**To:** Stewart, Rosemary
**Subject:** RE: BF Shareholders Lit. Fund v. FDIC (D.D.C.)

1.    ( Redacted )

2.    Wayne Green provided the following breakdown:

        PII paid to the FDIC – 257,850,511.45
        PII paid to trade creditors – 12,699.79

3.    ( Redacted )

**Stewart, Rosemary**

**From:** Stewart, Rosemary
**Sent:** Friday, January 05, 2007 10:05 AM
**To:** 'BTaylor@fdic.gov'
**Subject:** BF Shareholders Lit. Fund v. FDIC (D.D.C.)

Bruce,

Thanks again for your courtesies to me yesterday when I came to review the FDIC documents we selected earlier.

1.  ( Redacted )

2.  You earlier told me that Wayne Green could provide a breakdown of the PII payments that went to FDIC in the Benj. Franklin receivership and those that went to all other claimants.  See your e-mail to me dated 11/30/06.  Could you please send that to me now?

3.  ( Redacted )

THANKS.

Rosemary Stewart
Spriggs & Hollingsworth
1350 I St. NW
Wash. DC 20005

(202) 898-5888

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WATERVIEW MANAGEMENT COMPANY et al.    )
                                       )
                    Plaintiffs,        )
                                       )
            v.                         )        Case No.: 94-1930 (JR)
                                       )        Judge James Robertson
FEDERAL DEPOSIT INSURANCE CORPORATION, )
        as successor to                )
RESOLUTION TRUST CORPORATION           )
        in its corporate capacity and as )      **FILED**
        Conservator and Receiver for   )
        HomeFed Bank, F.S.B.           )        APR 0 1 1998
                                       )
                    Defendant.         )        NANCY MAYER-WHITTINGTON, CLERK
                                                    U.S. DISTRICT COURT

## DEFENDANT'S OBJECTION TO
## ASSESSMENT OF PREJUDGMENT INTEREST

Defendant Federal Deposit Insurance Corporation ("FDIC"), as receiver for HomeFed

Bank, F.S.B. ("the Receiver"), hereby opposes the assessment of prejudgment interest against the

Receiver in this action.  The assessment of prejudgment interest would be inappropriate based

upon the facts and circumstances presented by this action, and would lead to the Plaintiff being

put in a position superior to that of other HomeFed creditors.  In addition, this brief shall address

the status of the Receiver's Certificates to be delivered to Plaintiff and the anticipated payment to

the Plaintiff, in accordance with instructions of the Court.[1]

---

[1]    Although "FDIC, as conservator for HomeFed Bank, F.S.B." is technically still a
party, such an entity in actuality never existed, and claims the Plaintiff may have had against
RTC as conservator for HomeFed Bank, F.A. have effectively been eliminated by the ruling of
the Court of Appeals, in the same way as were the claims of PortAmerica Development
Company, L.C. HomeFed Bank, F.A. was a pass-through institution created by the RTC, and its
involvement with the matters at issue herein only dealt with what was referred to in the
                                                                        (continued...)

**43**

## I.    FACTUAL BACKGROUND ON PAYMENT BY THE HOMEFED RECEIVERSHIP ON CREDITOR CLAIMS.

As was discussed in open court, judgments against a bank receivership are not necessarily paid on a dollar-for-dollar basis. They are treated as claims against the receivership, and paid with the appropriate Receiver's Certificate. 12 U.S.C. § 194; 12 C.F.R. §360.3. The applicable section of the National Bank Act dealing with payment of claims by an FDIC receivership anticipates a "ratable dividend" of the assets held by the Receiver on all claims which have been proven or adjudicated. 12 U.S.C. § 194.

Upon direction of the Court, counsel for the Defendant investigated payments made by the HomeFed receivership to be able to advise the Court what payments would actually be made to the Plaintiff herein. It had been determined that the HomeFed receivership has paid distributions to creditors in the amount of $71.92 per $100 face value of the Receiver's Certificate. On a judgment of $2.5 million, payment would be made in the amount of $1,798,000.00.

At this time, it is impossible to determine if there will at some point in the future be sufficient assets in the receivership to pay creditors' claims, including that of the Plaintiff, in full. The main reason for that is HomeFed is one of the institutions with goodwill claims which are only recently beginning to move forward in the Court of Federal Claims.

----

[1](...continued)
Complaint as "the RTC Agreement." The parties indicated to the Court early on that the correct entity would be named following the Court's ruling on Defendant's Motion to Dismiss. See Joint Report to the Court Pursuant to Look (sic) Rule 206, § 2, March 6, 1995. That became unnecessary based upon the findings of the Court of Appeals. As an additional practical matter, the receivership for HomeFed Bank, F.A. is without assets in any event, such that a judgment against it is not recoverable.

In United States v. Winstar Corporation, 518 U.S. ___, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996), a split Supreme Court affirmed a decision of the Court of Appeals for the Federal Circuit and held that the government had breached contractual obligations to certain thrift institutions to permit counting of supervisory goodwill and capital credits toward the regulatory capital requirements. The Court remanded the action for a determination of damages. Other similar actions, stayed pending the Supreme Court's ruling, were also effectively allowed to move forward.

Although the plaintiffs in the Winstar case were the owners of the institutions at issue, on remand the receiverships have intervened or sought to intervene on behalf of the creditors of the various institutions. Depending upon on how damages are calculated and whether the Court of Claims awards damages to the HomeFed receivership, it is possible that there will be sufficient funds to pay all claims of creditors in full, including that of the Plaintiff.

Because the goodwill cases are just beginning to move through the Court of Claims, and there will likely be additional appeals in the future, complete resolution of this matter is several years away. As a result, Defendant at this time cannot give the Court any indication of whether or not there will be sufficient funds to make full payment to the Plaintiff and when any such payment can be made. Defendant can only certify at this time to payments made to other creditors of HomeFed with whom Plaintiff will receive equal treatment.

## II.    PREJUDGMENT INTEREST SHOULD NOT BE ASSESSED AGAINST THE RECEIVER.

It has long been established that post-insolvency interest is not recoverable, because that would violate the rules of "ratable" distribution. See United States ex rel. White v. Knox, 111 U.S. 784, 786, 4 S.Ct. 686, 686-87, 28 L.Ed. 603 (1884); Citizens State Bank of Lometa v.

45

FDIC, 946 F.2d 408, 416 (5th Cir. 1991); Bank One, TX, N.A. v. Prudential Insurance Company of America, 878 F.Supp. 943, 954 (N.D.Tex. 1995). The exceptions to this rule are where the assets of the receivership are sufficient to pay all provable claims in full, or where the receiver is shown to be unreasonable or otherwise at fault denying the claim. Ticonic National Bank v. Sprague, 303 U.S. 406, 58 S.Ct. 612, 614, 82 L.Ed. 926 (1938); Lometa, supra, at 416-17; Fash v. First National Bank, 89 F.2d 110, 112 (10th Cir. 1937).

At the present time, neither of those exceptions apply herein. The HomeFed receivership does not have sufficient funds to pay all of the claims, although that may be affected by the goodwill cases, discussed above. In addition, the RTC was legally entitled to repudiate the contract at issue and there was a legitimate question as to whether Plaintiff had suffered any damages, as was determined by the Court of Appeals, such that there is no question of an unreasonable denial of the claim.

While not following specifically the ratable distribution system of the National Bank Act, the regulations applicable to claims against the RTC establish a similar system of paying certain claims at an equal percentage based upon the amount of assets available to the receivership. This is subject to a priority classification defined in the regulations.

The principal judgment herein, exclusive of prejudgment interest, would be a priority 6 claim, 12 C.F.R. § 360.3 (a)(6), as a claim which would have accrued and become unconditionally fixed on or before the date of default. Priority 6 claims, like ratable distributions, generally are paid on a percentage of face value of the claim based upon the assets available if there are insufficient assets to pay the claims in full.

The denial of prejudgment interest would be consistent with rulings under the National Bank Act, the priority rankings of the regulations, and the very statute which served as the basis for trial in this action. As has been established clearly in this case, 12 U.S.C. § 1821(e)(3)(A) provides that damages are "limited to actual direct compensatory damages" determined as of "the date of the appointment of the conservator or receiver." As a result, Plaintiff has no claim for anything other than the present value of its damages as of July 6, 1992.

This would include prejudgment interest. The statute permits damages to be determined only as of the date of receivership. "The determination of whether prejudgment interest should be awarded requires a two-step analysis: does the federal act creating the cause of action preclude an award of prejudgment interest, and if not, does an award of prejudgment interest further the congressional policies of the federal act." Carpenters District Council v. Dillard Dept. Stores, Inc., 15 F.3d 1275, 1288 (5th Cir 1994). Since the statute prescribes the measure of damages in the situation presented herein, prejudgment interest cannot be part of the claim.

## III.   AN AWARD OF PREJUDGMENT INTEREST WOULD PUT PLAINTIFF IN A SUPERIOR POSITION TO OTHER CREDITORS.

In many ways, bank receiverships are similar to bankruptcy estates. Both presume that the entity involved does not have sufficient assets to pay its creditors. In each situation, the assets are distributed to creditors based upon certain criteria having been established. All similarly situated creditors are to be treated equally.

In both settings, interest stops accruing once the applicable statute is invoked, with a bank at the time of receivership and in a bankruptcy situation following the filing of the petition. Like in bankruptcy, certain creditors of receiverships whose claims are undisputed or who compromise their claims may get paid earlier, while other creditors whose claims are in dispute

47

or choose to litigate the amount do not get paid until the claim is proven. In each situation, however, similarly situated claimants receive the same percentage payment.

The entire theory behind ratable distribution and priority of Receiver's Certificates is to treat all similarly situated claimants equally. The Supreme Court recognized long ago that all a judgment creditor against the receiver would be entitled to is "a share in the proceed of the assets equal to what had been distributed to others during the pendency of his litigation." White v. Knox, 111 U.S. at 786, 4 S.Ct. at 686 (emphasis added).

In many situations, the concept of prejudgment interest creates an apparent conflict between the traditional view of the courts and that of the FDIC as receiver. Courts tend to view the concept of prejudgment interest with regard to a specific date, generally the date of a breach of a contract or the date the harm at issue was caused. In contrast, the FDIC as receiver generally views payment of interest or other claims based upon the date of receivership, because of the applicable statutes.

In the instant case, that apparent conflict has been eliminated. Because of the statute and the ruling of the Court of Appeals, the only date under consideration by the Court and the parties is the date of receivership. Since interest does not accrue post-receivership, no prejudgment interest can be awarded.

The regulations address the question of post-receivership interest to be paid on Receiver's Certificates if there are sufficient funds available to make such a payment. The regulations provide that interest after the date of default on priority 6 claims shall be at a specific rate based upon a rolling average rate for certain U.S. Treasury bills. 12 C.F.R. § 360.3(b). Any claims for interest after the date of default on priority 6 claims are categorized as priority 7, 12 C.F.R. §

48

360.3(a)(7).  As a practical matter, priority 7 claims are paid only in a limited number of receiverships.

Therefore, the Plaintiff will receive interest on the dividend on its Receiver's Certificate in accordance with the terms of the regulations and equal in percentage to that of other creditors if sufficient funds become available.  To date, there have been no distributions to HomeFed creditors other than the $71.92 dividend.  An award of prejudgment interest would thus be to a certain degree redundant, in that Plaintiff should receive the same amount whether or not such interest is awarded, giving the same net result.

Accordingly, an award of prejudgment interest would put Plaintiff in a superior position to that of other creditors of HomeFed.  That would defeat what the Supreme Court has noted to be the basis for equitable distribution of receivership assets.  Therefore, Plaintiff's request for prejudgment interest should be denied.

## IV.    CONCLUSION.

Since the statutes and case law do not provide for payment of prejudgment interest to creditors in the position of Plaintiff, no prejudgment interest can be awarded.  If such interest was to be awarded, it would provide Plaintiff a priority position over that of other HomeFed creditors, since interest on the dividends paid on the Receiver's Certificate from the date of the receivership must be paid to all appropriate creditors at the applicable percentage only if sufficient funds are available to make such payment.  Actual payment to Plaintiff is anticipated at a rate of 71.92% of the total amount of the principal judgment.

**49**

Respectfully submitted,

DUANE, MORRIS & HECKSCHER LLP

Of Counsel:
Thomas Reeves
Federal Deposit Insurance Corporation
1717 H Street, N.W.
Washington, D.C. 20434
(202) 736-0403

_____
Jeffrey P. Bloom        #358116
1667 K Street, N.W., Suite 700
Washington, D.C. 20006
(202) 776-7800
Counsel for Defendant

### CERTIFICATE OF SERVICE

I hereby certify that on this __1__ day of April, 1998 the foregoing Defendant's Objection

to Assessment of Prejudgment Interest was sent by hand delivery to Rodney F. Page, Esquire,

Bryan Cave LLP, 700 13th Street, N.W., Washington, D.C. 20005-3960, counsel for the

Plaintiff.

_____
Jeffrey P. Bloom

50

```
To:              James P. Barron@DOF@Hartford,Carl Cempe@DOF@Hartford,Arnold L. D
                 ford,Anne M. Terrall@DAS Claims@Hartford
Cc:              Mitchell J. Ashear@DAS Exec@Hartford
Bcc:
From:            Susan Brown@DOF@Hartford
Subject:         Fwd: meeting Monday, May 19
Date:            Thursday, May 15, 1997  7:40:23 EDT
Attach:
Certify:         N
Priority:        Normal
Defer until:
Expires:
Forwarded by:
```

--------------------------------------------------------------------

Comments:
Please join me on the conference call.  Ann and Mitch, I am not sure who else
should attend from Claims.

Thanks

- - - - - - - - - - - - - Original Message - - - - - - - - - - - - - - -
```
To:              Donald McKinley@LEGAL EXEC@Dallas, Robert G.
                 Clark@LEGAL Recvr Ops@Washington, Rodney D. Ray@LEGAL
                 RLS@Washington, Karen Hughes@DOF EXEC 801@Washington,
                 Dennis Nolan@DOF EXEC 801@Washington, James G.
                 Thompson@DOF EXEC@Dallas, Mitchell Glassman@DAS
                 Exec@Washington, Martin W. Becker@DAS Ops@Washington,
                 Lynn Shibut@DRS Econ@Washington, S. Blair Bean@DRS
                 Stats@Washington
Cc:              William R. Baucum@DOF OPSACCT@Dallas, Susan
                 Brown@DOF@Hartford, Paul L. Sachtleben@DOF EXEC
                 801@Washington
From:            John J. Quinn@EO@Washington
Date:            Wednesday, May 14, 1997 at 1:15:29 pm EDT
Attached:        None
```

Please plan to meet in Room 253 at 801 17th Street at 10:30 a.m. on Monday,
May 19 to discuss RTC and FDIC practices on the compounding of interest on
post-isolvency interest claims in surplus RTC receiverships.  Those in Dallas
will join the meeting through the video-conference facility (at 9:30 CDT).
The meeting will begin after the DOF staff meeting has concluded, and we'll
use the same video hook-up.  This is scheduled to last no longer than one
hour.

This meeting will have two primary obectives.  The first is to define the
current practice for compounding post-insolvency interest in FRF-RTC
receiverships, and to identify the policies that provide the foundation for
the current practice.  Each of you is requested to search for directives,
manuals or other documentation that may have guided practices in the past or
guide our practices today.  Recent efforts to locate such documentation have
not been fruitful, so please check around to see what you might be able to
find.  This issue has been brought to the fore by analysis performed in DRS on
the Benjamin Franklin Savings (Oregon) receivership; we need to nail down the
claims numbers and want to make sure the correct compounding methodology is
used.  This is the more important of the two objectives.

If we have time, a second objective is for staff to develop a preliminary

consensus for a recommendation to the CFO regarding future practices.  There has been an effort underway for over a year to develop a proposal for an FDIC regulation that would clearly define the interest rate and priority scheme to be used in the payment of post-insolvency interest in surplus receiverships. It appears that such a regulation may benefit from addressing explicitly the issue of compounding.  Thus, reaching a consensus would aid the cause of developing a comprehensive post-insolvency interest reg.

Fundamental to each of these objectives is the desire to have everyone reading from the same page with a common understanding of the meaning of what it is we're reading, and that is the spirit which will guide our session.  On that philosophical note...  See you Monday.

Thanks - JQ

# PUBLIC COPY

Excerpt Only

### BRIEF FOR DEFENDANT-APPELLANT, THE UNITED STATES

## IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

### No. 00-5137

**BOBBY J. GLASS, CAROL ROSE (Individually and as Trustee of the Walter Lewis Rose, III Estate Trust), GARY D. STILLWELL and STEPHEN D. STRICKLAND,**

**FILED**

U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

Plaintiffs-Appellees

**NOV 2 7 2000**

and

**JAN HORBALY**
CLERK

**FEDERAL DEPOSIT INSURANCE CORPORATION,**

Plaintiff,

v.

**THE UNITED STATES,**

Defendant-Appellant.

### APPEAL FROM THE UNITED STATES COURT OF FEDERAL CLAIMS IN 92-CV-428, SENIOR JUDGE LOREN A. SMITH AND SENIOR JUDGE LAWRENCE S. MARGOLIS

|  |  |
|---|---|
|  | **DAVID W. OGDEN**<br>**Assistant Attorney General** |
| **Of Counsel:** | **DAVID M. COHEN**<br>**Director** |
| **JEANNE E. DAVIDSON**<br> Deputy Director | **Commercial Litigation Branch**<br>**Civil Division**<br>**United States Department of Justice** |
| **KATHERINE M. KELLY**<br>**KENNETH M. DINTZER**<br>**MICHAEL M. DUCLOS**<br>**WILLIAM G. KANELLIS**<br>**KENNETH KULAK**<br>**Trial Attorneys** | **Attn: Classification Unit**<br>**1100 L Street, N.W.**<br>**Washington, D.C. 20530**<br>**(202) 307-0162** |
| **November 27, 2000** | **Attorneys for Defendant-Appellant** |

53

in its governmental corporate capacity.

In similar circumstances, other courts have recognized this consequence. For example, in <u>FDIC v. Bank of Boulder</u>, 911 F.2d 1466 (10th Cir. 1990), the court stated:

> After FDIC/Corporation acquires the nontransferred assets in the P & A [Purchase and Assumption], it attempts to enforce and liquidate these assets to recoup its cash outlay and thereby minimize the loss to the insurance fund.  <u>In so doing, FDIC/Corporation may bring actions and prosecute claims in its own right</u>.

<u>Id.</u> at 1470 (emphasis added); <u>see</u> <u>FDIC v. Braemoor Assocs.</u>, 686 F.2d 550, 553 (7th Cir. 1982) ("a suit to realize on [a cause of action] would not be a suit in the FDIC's capacity as a receiver"); <u>FDIC v. Ashley</u>, 585 F.2d 157, 162-63 (6th Cir. 1978) (noting FDIC was asserting its own rights and not rights of the receiver); <u>FDIC v. Godshall</u>, 558 F.2d 220, 223 (4th Cir. 1977) (noting that recovery would flow to FDIC's corporate treasury and not to the receivership).

Thus, pursuit of this claim that once belonged to Security cannot benefit the thrift or the Security receivership; it can only benefit the FRF.  As the FRF also will be the source of payment for any judgment obtained against the United States, the FDIC's claim is nothing more than a claim by the FRF against the FRF.[12]

---

[12]    Even if the Court were to assume that recovery on the FDIC's claim would pass to Security's receivership, there still would be no justiciable

**B.    The FDIC And The United States Are Not Independent**

The FDIC's complaint also runs afoul of a second rule of constitutional

justiciability:  a justiciable case requires the presence of two adverse parties who

are independent of one another.  If one party controls the other, or if both parties

are subject to control by the same *dominus litis* (master of the suit), the requisite

adversity is absent and "adjudication must be refused."  Gould v. Control Laser

Corp., 866 F.2d 1391, 1393-94 (Fed. Cir. 1989); South Spring Hill Gold Mining

Co. v. Amador Medean Gold Mining Co., 145 U.S. 300, 301 (1892) (no justiciable

controversy exists where the same person is "the *dominus litis* on both sides").

---

controversy.  The FRF is the largest creditor of the Security receivership as
subrogee to the claims of depositors, as the FDIC admitted to the trial court.
A5001957.  The FRF's claim against the receivership exceeds $15 million, plus
interest, A5001228, and under the statutory distribution scheme, it has priority
over other claims after the expenses of the receivership.  12 U.S.C.
§ 1821(d)(11)(A) (1988 & Supp. II 1990) (applicable to RTC receiverships
pursuant to 12 U.S.C. § 1441a(b)(4)).  Given that the FDIC received only a $2.1
million judgment, the entire judgment will be paid to the FRF to reduce its $15
million claim.  Thus, under this scenario, the FRF, as the payor of the judgment,
would simply be paying itself.

    In the past, the FDIC has argued that the FRF's subrogated claim is entitled
to only a sixth priority in the receivership distribution scheme and would be paid
*pro rata* with unsecured creditors.  The regulation upon which the FDIC relies, 12
C.F.R. § 360.2 (1990), was originally promulgated by the FSLIC, and it is
incompatible with 12 U.S.C. § 1821(d)(11) (1988 & Supp. II 1990), which clearly
accorded the Government's subrogated claim priority over the claims of other
creditors.  Id.

55

Respectfully submitted,

DAVID W. OGDEN
Assistant Attorney General

Of Counsel:

JEANNE E. DAVIDSON
  Deputy Director

KATHERINE M. KELLY
KENNETH M. DINTZER
MICHAEL M. DUCLOS
WILLIAM G. KANELLIS
KENNETH M. KULAK

  Trial Attorneys

DAVID M. COHEN
Director
Commercial Litigation Branch
Civil Division
United States Department of Justice
Attn: Classification Unit
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-0162

November 27, 2000

Attorneys for Defendant-Appellant

56