# STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THE BENJ. FRANKLIN SHAREHOLDERS LITIGATION FUND, BY ITS SOLE TRUSTEE, DON S. WILLNER | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Case No. 06-01025 (EGS) |
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR THE BENJ. FRANKLIN FS&LA, PORTLAND, OREGON | ) ) ) ) ) | |
| Defendant. | ) ) | |

## FDIC-RECEIVER'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT, INCLUDING MEMORANDUM OF POINTS AND AUTHORITIES

Bruce C. Taylor
Federal Deposit Insurance Corporation
550 17th Street, NW
Room VS-E7118
Washington, DC 20429
(703) 562-2436 (Telephone)
(703) 562-2478 (Facsimile)

Counsel for Federal Deposit Insurance Corporation,
as Receiver for The Benj. Franklin FS&LA

Date:   February 9, 2007

## TABLE OF CONTENTS

SUMMARY ................................................................................................................ 1

ARGUMENT ............................................................................................................. 2

I.    The FDIC-Receiver's Payment Of $3 Million To The BFS Lit. Fund
And The Issue Of Interest Arose From The Settlement Of Tax Litigation ............... 2

II.    The Language And Structure Of The Regulation Preclude An Award
Of Interest To The BFS Lit. Fund Under The Circumstances Of This Case ............ 5

III.    FDIC-Receiver's Payment Of Interest To The FDIC As Deposit Insurer
Does Not Entitle The BFS Lit. Fund To Interest ........................................................ 8

IV.    The Designation Of A Substantial Portion Of The IRS Settlement Funds
As Interest Does Not Entitle The BFS Lit. Fund To Interest..................................... 9

V.    The *Bailey* and *Waterview Management* Decisions Do Not Control This Case...... 11

VI.    The BFS Lit. Fund Misconstrues The FDIC-Receiver's Position
On Deference – But There Is No Need For The Court To Reach The Issue ........... 12

VII.    12 U.S.C. § 1821(d)(11) Did Not Trump 12 C.F.R. § 360.3 ................................... 13

VIII. FDIC Debate On Whether To Compound Post Insolvency Interest
Does Not Entitle The BFS Lit. Fund To Interest ..................................................... 15

IX.    Equity – If Applicable – Does Not Entitle the BFS Lit. Fund To Interest ............. 16

X.    The BFS Lit. Fund Is Not Entitled To Attorney's Fees For This Action ................. 18

CONCLUSION........................................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*ABT Associates, Inc. v. JHPIEGO Corp.*,
  9 Fed. Appx. 172, 178 (4th Cir. 2001) ........................................................................ 17

*Bailey v. United States,*
  53 Fed. Cl. 252 (2002) ................................................................................ 9, 11, 12

*Buckhannon Board. and Care Home v. West Virginia Dept. of Health and Human Resources*,
  532 U.S. 598, 121 S.Ct. 1835 (2001) ......................................................................... 18

*Golden Pacific Bancorp v. FDIC*,
  375 F.3d 196 (2nd Cir. 2004) ................................................................................ 8, 9

*In re Franklin Nat'l Bank Securities Litigation*,
  478 F. Supp. 210 (E.D.N.Y. 1979) ............................................................................. 9

*In re Micro-Acoustics Corp.*,
  34 B.R. 279 (Bankr. S.D.N.Y. 1983) .......................................................................... 5

*Morales v. Trans World Airlines*,
  504 U.S. 374, 112 S.Ct. 2031 (1992) .......................................................................... 7

*Nuttelman v. Vossberg*,
  753 F.2d 712 (8th Cir. 1985) ................................................................................... 9

*Penn Central Transportation Co. v. New York*,
  438 U.S. 104, 98 S.Ct. 2646 (1978) ........................................................................... 17

*Phelps Dodge Min. Co., v. NLRB*,
  22 F.3d 1493 (10th Cir. 1994) ................................................................................ 17

*Waterview Management Co. v. FDIC*,
  257 F. Supp. 2d 31 (D.D.C. 2003) ........................................................................ 11, 12

## Statutes

12 U.S.C. § 1819 ......................................................................................................... 8
12 U.S.C. § 1819 (a)(Fourth) ......................................................................................... 11
12 U.S.C. § 1821(a) and (c) ........................................................................................... 8
12 U.S.C. §§ 1821(c)(2)(C) and (c)(3)(C) ...................................................................... 11
12 U.S.C. § 1821(d)(11) ...................................................................................... 13, 15, 17
12 U.S.C. § 1821(e) ............................................................................................... 12, 14
12 U.S.C. § 1823(d)(3) ................................................................................................. 8
FIRREA, Pub. L. 101-73, § 401(h), 103 Stat. 415 (1989),
  (*see* 12 U.S.C. § 1437, Historical and Statutory Notes) ............................................. 14
IRC § 6601 ................................................................................................................. 9

## Other Authorities

Alba Conte, *Attorney Fee Awards* § 3:20 (Thomson-West 1994) .................................... 16
Division of Resolutions and Receiverships, FDIC,
  *Managing The Crisis: The FDIC and RTC Experience, 1980-1990* (1998) ........................ 15

**Regulations**

12 C.F.R. § 360.3 ................................................................................... 13, 15, 16, 19

*12 C.F.R. § 360.3(a)(1) ................................................................................ 5

*12 C.F.R. § 360.3(a)(6) ................................................................................ 8

*12 C.F.R. § 360.3(a)(7) ................................................................................ 5

*12 C.F.R. § 360.3 (a)(10) ............................................................................. 5

12 C.F.R. § 360.7 (2006) ............................................................................... 7

12 C.F.R. § 569.11c (c) (1988) ..................................................................... 14

Regulations Transferred From Federal Savings and Loan Insurance Corporation;
   Redesignation From Chapter V to Chapter III, 54 Fed. Reg. 42799 (Oct. 18, 1989)............... 14

Removal of Regulations Transferred from Federal Savings and Loan Insurance Corporation
   (Federal Home Loan Bank Board), 55 Fed. Reg. 46495 (Nov. 5, 1990) and 55 Fed. Reg.
   34281 (Aug. 22, 1990) ........................................................................... 14

**FDIC-RECEIVER'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
CROSS MOTION FOR SUMMARY JUDGMENT, INCLUDING MEMORANDUM OF
POINTS AND AUTHORITIES**

The FDIC-Receiver submits its reply to the Plaintiff's opposition to the FDIC-Receiver's
cross motion for summary judgment filed January 26, 2007.

## SUMMARY

In reply to the BFS Lit. Fund's opposition, the FDIC-Receiver will show:

o   That the BFS Lit. Fund's claim arose as an accommodation in connection with the
    settlement of tax litigation;

o   That absent the settlement, instead of the FDIC-Receiver paying $3 million to the BFS
    Lit. Fund for distribution to the contributing shareholders before distributions were made
    to all shareholders, the BFS Lit. Fund would have received nothing, and the remaining
    surplus would have been distributed *pro rata* to all shareholders;

o   That contributing to the BFS Lit. Fund to protect their equity interest did not convert the
    contributing shareholders' status as shareholders to that of general creditors or "other
    claimants" under applicable law;

o   That the payment of interest to others does not entitle the BFS Lit. Fund to interest;

o   That the *Bailey* and *Waterview Management* cases do not control this case;

o   That the Court need not reach the issue of deference to rule in favor of the FDIC-
    Receiver;

o   That 12 U.S.C. § 1821(d)(11) did not trump 12 C.F.R. § 360.3;

o   That internal FDIC debate in the 1990s regarding compound interest on post insolvency
    interest has no bearing on whether the BFS Lit. Fund is entitled to interest; and

o   That equity – if applicable – does not entitle the BFS Lit. Fund to interest or attorney's
    fees.

## ARGUMENT

### I.    The FDIC-Receiver's Payment Of $3 Million To The BFS Lit. Fund And The Issue Of Interest Arose From The Settlement Of Tax Litigation

The FDIC-Receiver explained in its opening brief why the FDIC-Receiver's payment of $3 million to the BFS Lit. Fund was made as an accommodation in connection with the settlement of BFS Lit. Fund's proof of claim.[1]  The FDIC-Receiver made the point because it puts in context the BFS Lit. Fund's request for relief.  But the BFS Lit. Fund questions the FDIC-Receiver's statements regarding the genesis of this case and attempts to show that the settlement of the IRS Tax Case[2] had nothing to do with the FDIC-Receiver's payment of $3 million and the issue of interest.[3]  The BFS Lit. Fund's refusal to acknowledge the underpinnings of its proof of claim and the FDIC's payment of $3 million and disallowance of interest, requires the FDIC-Receiver to address again the circumstances that gave rise to the BFS Lit. Fund's proof of claim.

The $3 million payment and the issue of interest are directly addressed in two primary documents already in the record.  First, a letter dated November 8, 2004, to FDIC Senior Counsel Robert Clark from Don Willner (the trustee of the BFS Lit. Fund), contains the following language:

> This letter sets forth my understanding of the following issues that we have discussed relative to our mutual effort *to settle outstanding lawsuits*.
>
>           \* \* \*
>
> 5.  *As part of the proposed Notice to shareholders [in the IRS tax case]*, FDIC and the shareholders whom I represent will *recommend that the following distributions* be made by the Benj. Franklin receivership (*pursuant to FDIC receivership and*

---

[1]  FDIC-Receiver's Opposition and Cross Motion filed January 5, 2007 ("FDIC Opp.") 4-5.

[2]  Consistent with its usage in the FDIC's opening brief, "Tax Case" means *United States v. FDIC*, No. 02-1427 (EGS), the case filed in the U.S. District Court for the District of Columbia by the United States on behalf of the IRS on a $1.2 billion tax claim against the receivership.

[3]  Plaintiff's Opposition and Reply filed January 26, 2007 ("Pl. Opp.") 7 n. 6.

*administrative procedures*), before a partial distribution is made to all Benj. Franklin shareholders:

\* \* \*

b.   *A distribution* to the Benj. Franklin Shareholders Litigation Fund ("Litigation Fund") *to reimburse all contributions to that fund. (This is approximately $3 million* of contributions by about 4,200 shareholders, and I am the sole trustee of the Litigation Fund with fiduciary duties to the contributors.) *This matter will be handled as a claim and will be determined through the receivership process.* The Litigation Fund will submit its claim in the near future. *Interest will be determined under the applicable provisions of the receivership priority system*;

(Emphases added).[4]

The Notice to Shareholders in the IRS tax case referred to above contains the following

provisions:

This Notice . . . *advises you about a proposed settlement of a tax collection lawsuit*, which, if approved by the Court, will indirectly result in a cash distribution to all shareholders of Benj. Franklin.
\* \* \*
*Under the proposed settlement* of the tax collection suit, the FDIC as receiver of Benj. Franklin would pay $50 million for the taxes allegedly owed by the receivership for calendar years 1990 through 2002, which will resolve and close each of those disputed tax years.
\* \* \*
After the $50 million tax payment is made, the receivership's current balance of $93.4 million will be reduced to $43.4 million. *Additional distributions will then be made by the FDIC-Receiver* from the balance in the receivership, which FDIC presently estimates as follows:
\* \* \*
(2) *A distribution of approximately $3 million to the Benj. Franklin Shareholders Litigation Fund* to reimburse all shareholder contributions to that fund. . . . The FDIC also is considering the Litigation Fund's request that interest be paid on the $3 million principal amount. If interest is approved, it could amount to as much as an additional $2 to $3 million to be distributed to the Litigation Fund contributors.

(Emphases added).[5]

---

[4] Pl. App. 29-30.

The BFS Lit. Fund makes clear in its opening brief that the FDIC-Receiver's payment of $3 million to the BFS Lit. Fund was dependent on the settlement of the Tax Case.[6]  In addition, the BFS Lit. Fund admits in its opposition that it didn't consider the receivership surplus as a source of payment until the settlement of the Tax Case seemed likely:

> It was only when the possible *IRS settlement* was first being discussed with shareholders' counsel in 2004 that it became clear that there was another potential source to repay the BFS Lit. Fund contributors.[7]

It is clear that the BFS Lit. Fund's proof of claim depended on the settlement of the Tax Case.

The FDIC-Receiver emphasized in its opening brief that it paid $3 million to the BFS Lit. Fund and considered BFS Lit. Fund's request for interest as an accommodation in connection with the settlement of litigation because the documents show that to be the case.  That is why the FDIC-Receiver notes that the BFS Lit. Fund is neither a creditor of the failed thrift nor a true claimant in the Benj. Franklin receivership.  In fact, the BFS Lit. Fund did not bother to file a proof of claim in the receivership until nearly 15 years after the inception of the receivership, and then only because the FDIC-Receiver agreed to pay through the receivership distribution process the principal amount of the contributions to the fund in connection with the settlement of litigation.

The contributors to the BFS Lit. Fund *are shareholders*.  Contributing to the fund did not alter their status as shareholders.  The contributing shareholders were protecting their capital investment by contributing to the fund.  In such cases, the shareholders are not creditors.  As one bankruptcy court stated:

> There is no compelling reason why a shareholder should be classified any differently from other unsecured creditors when the

---

[5]  Pl. App. 22-23, 25.

[6]  Pl. MSJ 5-6.

[7]  Pl. Opp. 22.  (Emphasis added).

> shareholder's claim relates to matters *other than* reimbursement for
> the loss of the investment in the equity of the corporate debtor.
>
>         \* \* \*
>
> In scrutinizing claims submitted by stockholders in bankruptcy
> cases, courts must view with suspicion the temptation on the part
> of stockholders to lay aside their garb as equity owners and assume
> the role of creditors.[8]

Absent the settlement, the FDIC-Receiver would have distributed available surplus funds *pro rata* to all the shareholders under 12 C.F.R. § 360.3(a)(10). Instead, as part of the settlement, the FDIC-Receiver agreed to pay the BFS Lit. Fund the principal amount of the contributions made by shareholders. Ignoring the settlement completely, the BFS Lit. Fund acts as if it had an absolute right to payment of the $3 million before *pro rata* distributions were made to the entire shareholder class under 12 C.F.R. § 360.3 (a)(10). But absent the FDIC-Receiver's agreement to pay the $3 million principal, the contributing shareholders would have received nothing before the remaining surplus was distributed to all shareholders *pro rata*.

## II.    The Language And Structure Of The Regulation Preclude An Award Of Interest To The BFS Lit. Fund Under The Circumstances Of This Case

The regulation lays out the order in which proven unsecured claims against a failed thrift or the receiver are paid. The FDIC-Receiver – having allowed the BFS Lit. Fund to file a proof of claim – had to place the BFS Lit. Fund's claim somewhere within the regulation's framework. The BFS Lit. Fund's claim comprised attorney's fees and expenses that the FDIC-Receiver deemed as "including the costs, expenses, and debts of the receiver" under 12 C.F.R. § 360.3(a)(1). There are only two other paragraphs that arguably cover the BFS Lit. Fund's claim: (i) 12 C.F.R. § 360.3(a)(7) – "Claims other than those that have accrued and become unconditionally fixed on or before the date of default"[9] – or (ii) 12 C.F.R. § 360.3(a)(10) – "Claims by holders of nonwithdrawable accounts, including stock, which shall have priority

---

[8]  *In re Micro-Acoustics Corp.*, 34 B.R. 279, 282 (Bankr. S.D.N.Y. 1983). (Emphasis added).
[9]  As noted in the FDIC's opening brief, the "date of default" in this case is September 7, 1990. FDIC Opp. 3.

within this paragraph (a)(10) in accordance with the terms of the written instruments that evidence such claims."

The BFS Lit. Fund believes that the catch-all provision of paragraph (a)(7) applies to its proof of claim. But its claim represents attorney's fees and expenses related to litigation that the FDIC-Receiver deemed beneficial to the receivership. Such a claim clearly falls within paragraph (a)(1). The regulation does not contemplate the payment of interest on administrative claims.

The BFS Lit. Fund claims that to deny it interest fails to compensate the contributing shareholders for the time-value of money. Again, an examination of the circumstances shows otherwise. In the case of the BFS Lit. Fund, any perceived delay in payment had nothing to do with the FDIC-Receiver. In the context of the underlying circumstances, it is not even proper to say that the FDIC-Receiver delayed payment. The BFS Lit. Fund was established to fund litigation initially aimed at recovering the stockholders' equity of $181 million and later for damages totaling about $1 billion.[10] The contributing shareholders hoped to recover damages in the Goodwill Case far in excess of their contributions.[11] As noted, the BFS Lit. Fund did not have a right to file a proof of claim in the receivership or look for payment from the receivership until a settlement looked promising in the Tax Case.[12] The FDIC-Receiver allowed the principal portion of the BFS Lit. Fund's proof of claim on May 12, 2006, and on May 24, 2006, sent a check to the fund's trustee for $3,067,159.77.[13]

---

[10] FDIC Opp. 5.
[11] As noted in the FDIC-Receiver's opening brief, "Goodwill Case" refers to *Suess v. United States*, No. 90-981, the breach of contract action against the United States filed by certain shareholders in the U.S. Court of Federal Claims. FDIC. Opp. 5.
[12] *See* Pl. Opp. 22.
[13] Plaintiff's Appendix ("Pl. App.") 32 and 33.

The BFS Lit. Fund continues to insist, however, that it is entitled to interest under paragraph (a)(7). Again, it is improper to classify the BFS Lit. Fund's claim as a paragraph (a)(7) claim under the catch-all provision "Claims other than those that have accrued and become unconditionally fixed." Paragraph (a)(1) specifically covers "the costs, expenses, and debts of the receiver." The BFS Lit. Fund's proof of claim – being for attorney's fees and expenses deemed beneficial to the receivership – clearly fits within paragraph (a)(1). Ordinarily, the specific is favored over the general under the principles of statutory construction.[14] The FDIC-Receiver properly placed the BFS Lit. Fund's proof of claim under paragraph (a)(1) for purposes of payment. And the FDIC-Receiver promptly paid $3 million to the BFS Lit. Fund in accordance with the settlement.[15]

In any event, the language of paragraph (a)(7) clearly provides that interest is payable "on claims under paragraph (a)(6)." The BFS Lit. Fund does not contend that paragraph (a)(6) applies to its proof of claim.[16]

The only other plausible classification for the BFS Lit. Fund's proof of claim is under paragraph (a)(10), which provides for "Claims by holders of nonwithdrawable accounts, including stock, which shall have priority within this paragraph (a)(10) in accordance with the terms of the written instruments that evidence such claims." Under paragraph (a)(10), the contributors to the fund – *as shareholders* – would be paid in proportion to their stock ownership.

There is no super priority for shareholders who may have funded litigation aimed at recovering the value of a failed thrift's stock. At best, if the letters to shareholders requesting

---

[14] *E.g. Morales v. Trans World Airlines*, 504 U.S. 374, 384, 112 S.Ct. 2031, 2037 (1992).

[15] Under the current provision governing the payment of post insolvency interest, the BFS Lit. Fund's principal claim might be entitled to interest from May 11, 2006, the date the FDIC-Receiver formally approved the principal portion of the claim. *See* 12 C.F.R. § 360.7 (2006).

[16] Pl. Opp. 4.

contributions to fund the Goodwill Case were treated as controlling "written instruments" under paragraph (a)(10), the contributing shareholders might claim a right to payment of the principal amount of their contributions before further distributions were made to all shareholders.[17]  But this is by no means clear.  In any event, in connection with the settlement of the Tax Case, the contributing shareholders did receive the principal amount of their contributions before other available funds were distributed *pro rata* to all shareholders.

### III.    FDIC-Receiver's Payment Of Interest To The FDIC As Deposit Insurer Does Not Entitle The BFS Lit. Fund To Interest

The BFS Lit. Fund tries to prove a right to interest by insinuating that the "FDIC" improperly paid "itself" $257 million in interest, while withholding interest from the BFS Lit. Fund.[18]  The BFS Lit. Fund knows that the FDIC is authorized to act in several different capacities by statute.[19]  Specifically, it is normal for the FDIC to serve as the receiver and the insurer in the same bank liquidation.[20]

And as the BFS Lit Fund is aware, the FDIC paid about $2.6 billion in deposit insurance to the Benj. Franklin depositors when the Failed Thrift was placed in receivership.[21]  As the BFS Lit. Fund recognizes – indeed, emphasizes – in its briefs, the FDIC is legally entitled to interest on the amounts it pays to cover insured depositors at failed federally insured financial institutions.  Moreover, 12 C.F.R. § 360.3(a)(6) expressly entitled the FDIC – as subrogee to the depositors of the Failed Thrift – to reimbursement for the principal amount of deposit insurance payments, and paragraph (a)(7) expressly entitled the FDIC as subrogee to interest on deposit insurance payments.  There was nothing improper in the FDIC-Receiver's payment of interest to

---

[17]  See FDIC Opp. 19.
[18]  Pl. Opp. 2.
[19]  12 U.S.C. § 1819; 12 U.S.C. § 1821(a) and (c); and 12 U.S.C. § 1823(d)(3).
[20]  *Golden Pacific Bancorp v. FDIC*, 375 F.3d 196, 199 (2nd Cir. 2004).
[21]  FDIC Ex. 6.  FDIC Exhibits 1-5 accompany the FDIC-Receiver's opening brief.

the FDIC in its capacity as insurer.  The amount of interest is large because the insured deposits at Benj. Franklin totaled over $2.6 billion.  Moreover, the large payment of interest to the FDIC in the Benj. Franklin receivership is nothing unusual.  Because deposits represent the lion's share of an insured institution's liabilities, historically the FDIC as insurer is always the largest creditor in any receivership.[22]

The payment of interest to the FDIC as subrogee has not bearing on the issue of whether the BFS Lit. Fund is entitled to interest.

### IV.     The Designation Of A Substantial Portion Of The IRS Settlement Funds As Interest Does Not Entitle The BFS Lit. Fund To Interest.

The BFS Lit. Fund also attempts to gain traction for its argument by alleging that the FDIC-Receiver paid interest to the IRS as part of the settlement of the Tax Case and that the Receiver's failure to pay interest to the BFS Lit. Fund also somehow violates the law.  As the FDIC-Receiver explained in its opening brief, the IRS's claim accrued interest under the express provisions of IRC § 6601 and that interest became part of the IRS claim, so that designating a substantial portion of the IRS's claim as interest as part of the settlement of the Tax Case has no bearing on the BFS Lit. Fund's claim for interest.[23]  In its opposition, the BFS Lit. Fund disputes the FDIC-Receiver's statement, claiming that IRC § 6601 "says no such thing."[24]  The BFS Lit. Fund is wrong.  Penalties and interest are treated as taxes under IRC § 6601 and therefore subject to the Anti-Injunction Act.[25]

The BFS Lit. Fund's claim that 12 C.F.R. § 360.3 does not contain an exception for settlements is meaningless and ultimately self-defeating.  First, the IRS's claim, with interest and

---

[22]  *See, e.g.*, *Golden Pacific Bancorp v. FDIC*, 375 F.3d 196, 199 (2nd Cir. 2004); *Bailey v. United States*, 53 Fed. Cl. 251, 253 (2002); *In re Franklin Nat'l Bank Securities Litigation*, 478 F. Supp. 210, 213 (E.D.N.Y. 1979).
[23]  FDIC Opp. 14.
[24]  Pl. Opp. 6.
[25]  *Nuttelman v. Vossberg*, 753 F.2d 712, 714 (8th Cir. 1985), citing IRC § 6601(e)(1) and § 6660(a)(2) (West Supp. 1984).

penalties, totaled about $1.2 billion.  The BFS Lit. Fund cannot reasonably believe that the reduction of the IRS's claim to $50 million through settlement and the designation of about $47 million as interest from a total claim of $1.2 billion violates the regulation and entitles the BFS Lit. Fund to interest.

But the BFS Lit. Fund seems to argue that any settlement violates the regulation.[26] Under its theory, the settlement with the IRS would be invalid, thus subjecting the receivership to the original $1.2 billion tax claim.  The FDIC-Receiver's payment of the $3 million to the BFS Lit. Fund was part of the overall terms of the settlement of the Tax Case.  Under the BFS Lit. Fund's theory, the FDIC-Receiver's payment to the BFS Lit. Fund itself would be invalid.

The regulation governs the distribution of unsecured claims.  It does not purport to govern the day-to-day operations of a receivership or how a receiver analyzes litigation risk or structures settlements.

In this case, as noted, in the absence of the settlement of the Tax Case, there would have been nothing to distribute to the shareholders.  As it is, as a result of the settlement, the contributing shareholders received the principal portion of their contributions in full before further distributions were made *pro rata* to all the shareholders.  It hardly seems in the shareholders' best interests to question the authority of the FDIC-Receiver to settle disputes, particularly under the circumstances of this case.

---

[26]  Pl. Opp. 6.

**V.      The *Bailey* and *Waterview Management* Decisions Do Not Control This Case**

The BFS Lit. Fund continues to insist that *Bailey v. United States* and *Waterview Management v. FDIC* support its request for interest.[27]  The FDIC-Receiver showed in its opening brief why *Bailey* and *Waterview Management* are inapplicable.[28]

The FDIC-Receiver reiterates two points with respect to *Bailey*.  The Court of Federal Claims in *Bailey* specifically refers to the existence of a *contract* as the basis for the payment of interest on the RTC's *advancement of funds to cover receivership operations*.[29]  The BFS Lit. Fund conveniently fails to acknowledge this fact.  Because the RTC's right to interest in the receivership addressed in *Bailey* was based in contract, the reference to the statute was unnecessary.  In addition – as noted in the FDIC-Receiver's opening brief – the reference to 12 US.C. § 1821(d)(11) appears to be based on a brief filed by the Department of Justice on behalf of the United States as defendant, not the FDIC, which before being dismissed from the case appeared as a plaintiff as successor to a failed thrift.

As the FDIC-Receiver explained in its opening brief, the FDIC administers the receivership provisions of 12 U.S.C. 1821(d) *et seq*.[30]  In doing so, the FDIC is not subject to any other agency's direction.[31]  Thus, the FDIC is not bound by the Department of Justice's interpretation of an FDIC regulation.  In addition, the FDIC has independent litigating authority and acts through its own attorneys.[32]  The Department of Justice was not representing the FDIC

---

[27] Pl. Opp. 5, 12 (*Bailey*); 13 (*Waterview*).
[28] FDIC Opp. 10-13.
[29] *Bailey v. United States*, 53 Fed. Cl. 252, 254 (2002).
[30] FDIC Opp. 13.
[31] 12 U.S.C. §§ 1821(c)(2)(C)  and (c)(3)(C).
[32] 12 U.S.C. § 1819 (a)(Fourth).

as successor to the failed thrift in *Bailey*, and the citation to 12 U.S.C. § 1821(d)(11) in support of any claim for interest is simply wrong.

The BFS Lit. Fund adds a new point in support of its argument that *Waterview Management* supports its request for interest by citing a brief filed by the FDIC in that case. The BFS Lit. Fund argues that the FDIC's citation to national bank cases in support of its position in *Waterview Management* contradicts the FDIC-Receiver's argument in this case that the national bank cases cited by the BFS Lit. Fund are irrelevant in this case.[33] As noted in its opening brief, the FDIC-Receiver showed that the opinion in *Waterview Management* depended on the measure of damages under a specific statutory damages provision dealing with the repudiation of contracts by a receiver, 12 U.S.C. § 1821(e). The BFS Lit. Fund's reference to the FDIC's brief in the *Waterview Management* case is mere legal legerdemain. The brief filed by the FDIC in the *Waterview Management* case in no way detracts from the fundamental points made by the FDIC-Receiver in this case to the effect that the national bank cases cited by the BFS Lit. Fund are distinguishable from the facts of this case and that the decision in *Waterview Management* ultimately rests on the interpretation of a specific damages statute that is inapplicable to this case.

## VI.    The BFS Lit. Fund Misconstrues The FDIC-Receiver's Position On Deference – But There Is No Need For The Court To Reach The Issue

The FDIC-Receiver's argument that the BFS Lit. Fund is not entitled to interest is firmly rooted in the text of the applicable regulation as applied to the facts of this case. In the alternative, the FDIC-Receiver suggested that if the regulation were considered to be ambiguous, the Court should afford the FDIC's position *Chevron* deference.[34] In its opposition, the BFS Lit. Fund argues that the FDIC-Receiver's staff determination disallowing interest is not entitled to deference. But the FDIC-Receiver is not suggesting that the staff determination reflected in the

---

[33] Pl. Opp. 13.
[34] FDIC Opp. 15-18.

letter disallowing the BFS Lit. Fund's claim for interest is entitled to deference – that determination is entitled to *de novo* review.  The FDIC-Receiver's position is that principles of deference should be applied in the course of *de novo* review if the Court finds that 12 C.F.R. § 360.3 is ambiguous, just as they would if the case had originated in this Court.

But the Court need not reach the issue of deference to rule in favor of the FDIC-Receiver. The text of the regulation is straight forward.  It expressly provides for interest on claims under paragraph (a)(6).  It does not prohibit the payment of interest on other classes of claims, but it doesn't have to.  The structure and language of the regulation show that all claims of a higher priority are paid before claims under paragraph (a)(6).  Interest is not paid on any claims under the regulation unless and until sufficient funds exist to pay all higher claims in full.  In this case, there were no higher claims left to be paid, keeping in mind that the BFS Lit. Fund did not have a claim in the receivership until several years after all other claims had been paid and that the principal portion of the BFS Lit. Fund's proof of claim was paid promptly after the FDIC-Receiver agreed to pay it as part of the tax settlement.

The Court need only review the facts and circumstances of this case and the text of the regulation to decide whether the BFS Lit. Fund is entitled to interest.  That is the type of analysis routinely conducted by the Court.  If, however, the Court deems it necessary to consider the issue of deference, the FDIC-Receiver contends that deference is appropriate for the reasons stated in its opening brief.

### VII.    12 U.S.C. § 1821(d)(11) Did Not Trump 12 C.F.R. § 360.3

With respect to 12 U.S.C. § 1821(d)(11), the BFS Lit. Fund poses two questions which it characterizes as "proper" but which have no bearing on this case:  1) whether the statute trumped the regulation, and 2) whether the FDIC should have amended the regulation following

enactment of the statute.[35]  Aside from being purely speculative, the BFS Lit. Fund's questions
are unfounded in fact or law.

FIRREA provided that the FHLBB's "rules and regulations are enforceable by or against
the FDIC [and other statutory successors to the FHLBB] *until the responsible agency modifies,*
*terminates, sets aside, or supersedes them in accordance with applicable law. . . or by operation*
*of law.*"[36]

The FDIC left the regulation undisturbed except in one respect.  The original
version of the regulation provided:

> If the rejection or repudiation of an unexpired lease or executory contract by the
> receiver gives rise to a claim for damages, such claims, if allowed, *shall be*
> *classified as a claim that has accrued and become unconditionally fixed on or*
> *before the date of default*, and not as an administrative expense of the receiver.[37]

In other words, the regulation treated a repudiation claim as a priority 6 claim, one that
had "accrued and become unconditionally fixed" on or before a thrift had been placed in
receivership.  As such, a repudiation claim was entitled to interest if the receivership had
sufficient funds.  The regulatory repudiation provision, however, was deleted after the passage of
FIRREA, because 12 U.S.C. § 1821(e) "sets forth comprehensive standards governing a
receiver's or conservator's authority to repudiate contracts, including the measure of
damages . . . ."[38]

---

[35]  Pl. Opp. 9-10.
[36]  FIRREA, Pub. L. 101-73, § 401(h), 103 Stat. 415 (1989) (*see* 12 U.S.C. § 1437, Historical and Statutory Notes)
(Emphasis added); *see also* Regulations Transferred From Federal Savings and Loan Insurance Corporation;
Redesignation From Chapter V to Chapter III, 54 Fed. Reg. 42799 (Oct. 18, 1989).
[37]  12 C.F.R. § 569.11c (c) (1988).  (Emphasis added).
[38]  Removal of Regulations Transferred from Federal Savings and Loan Insurance Corporation (Federal Home Loan
Bank Board), 55 Fed. Reg. 46495 (Nov. 5, 1990) and 55 Fed. Reg. 34281 (Aug. 22, 1990).

The regulation has governed the disposition of claims in *no less than 600 receiverships* established before August 10, 1993.[39]  The FDIC is unaware of any reported case that seriously challenges the force and effect of 12 C.F.R. § 360.3.[40]

Insofar as the BFS Lit. Fund argues that it is entitled to interest as a "creditor" or "other claimant" under 12 U.S.C. § 1821(d)(11), it ignores the status of the contributors to the fund – they are shareholders and under the facts of this case they are not creditors or claimants of the receivership.  Thus, under 12 U.S.C. § 1821(d)(11) the contributing shareholders are not entitled to interest on their contributions to the fund before the remaining surplus is distributed to all shareholders.  Just as there is no super priority under 12 C.F.R. § 360.3 for shareholders who may have funded litigation aimed at protecting or recovering their equity interest, there is no super priority under 12 U.S.C. § 1821(d)(11).

### VIII.    FDIC Debate On Whether To Compound Post Insolvency Interest Does Not Entitle The BFS Lit. Fund To Interest

The BFS Lit. Fund points to perceived confusion within the FDIC regarding the issue of interest as a reason for the Court to reject the FDIC-Receiver's position that the BFS Lit. Fund is not entitled to interest.  The BFS Lit. Fund cites an internal FDIC email as proof that the FDIC

---

[39]  Division of Resolutions and Receiverships, Federal Deposit Insurance Corporation, *Managing The Crisis: The FDIC and RTC Experience, 1980-1990*, at 125, Table 1.4-3 (1998) ("*Managing the Crisis*").  For convenience, the table is attached as FDIC Ex. 7.  "Conservatorship Resolved" as used in the table is synonymous with receivership.  *See Managing the Crisis* 61 (final step in the resolution process is closure of institution and appointment of FDIC as receiver).  For convenience, page 61 from *Managing the Crisis* is attached as FDIC Ex. 8.  Table 1.4-3 shows that 607 conservatorships were resolved from August 9, 1998 through 1992.  Because 12 C.F.R. § 360.3 applied to any thrift receivership established before August 10, 1993, the regulation applied to nearly all the receiverships represented in the table.

[40]  The statement cited by the BFS Lit. Fund from *Glass v. United States* – that the FDIC could not rely on 12 C.F.R. § 360.3 to identify priority levels that were incompatible with 12 U.S.C. § 1821(d)(11) – is lifted from another brief filed by the Department of Justice on behalf of the United States as defendant in yet another goodwill case where the FDIC once appeared as a plaintiff as successor to a failed thrift.  The statement is wrong and the FDIC is not bound by it.  Further, the extensive use of the regulation during the early 1990s in hundreds of receiverships belies any suggestion that the regulation was somehow defective.  And the BFS Lit. Fund admits that the Federal Circuit did not address the argument referenced.

did not have a consistent position regarding the payment of interest under 12 C.F.R. § 360.3.[41]

But the BFS Lit. Fund makes too much of the email. The focus of the email is the on the issue of

compounding interest in all receiverships administered by the FDIC, rather than the issue of

when interest is paid under 12 C.F.R. § 360.3, as the BFS Lit. Fund itself notes.[42]

Questions regarding what rate of interest should be paid in various receiverships or

whether to compound interest have no bearing on the core issue of whether the BFS Lit. Fund is

entitled to interest in the first instance.

### IX.     Equity – If Applicable – Does Not Entitle the BFS Lit. Fund To Interest

The regulation supplies the applicable rule of law, and the FDIC-Receiver determined

that the BFS Lit. Fund is not entitled to interest under the regulation. So, the BFS Lit. Fund now

invokes equity in an attempt to show that it is unfair to deny it interest.

The FDIC-Receiver showed in its opening brief why it is not unfair to deny interest to the

BFS Lit. Fund.[43] There are other reasons why it is not unfair to award interest to the BFS Lit.

Fund. The contributing shareholders paid for attorney's fees and legal expenses. In effect, they

are seeking to recover interest on legal fees and expenses. At most, the BFS Lit. Fund is entitled

to interest only from the date this Court approved the settlement in the Tax Case, which included

the FDIC-Receiver's agreement to pay $3 million to the BFS Lit. Fund.[44]

The shareholders got what they paid for: legal services aimed at recovering the value of

their stock. There is no guarantee of recovery of any kind based on stock ownership, regardless

of how much one invests or how much one spends in an effort to protect that interest. The

regulation reflects this universal view of stock ownership by placing stockholders at the end of

---

[41] Pl. Opp. 20 n. 17.
[42] *Id.*; Pl. App. 51.
[43] FDIC Opp. 18-21.
[44] *See* Alba Conte, *Attorney Fee Awards* § 3:20 (Thomson-West 1994).

the distribution line, as does 12 U.S.C. § 1821(d)(11).  Stock ownership entitles a shareholder to

four rights:

1. Proportionate ownership in the undivided assets of the corporation
2. The right to dividends when earned and declared
3. The right to receive notice of elections and meetings
4. The preemptive right to subscribe to additional stock before it is offered to the public[45]

In this case, only the first-listed right is applicable.

The contributing shareholders did not have a reasonable expectation of recovering

interest on top of any award received in the Goodwill Case.[46]  Contrary to the BFS Lit. Fund's

protestations to the contrary, reasonable expectations have an impact on the right to or extent of

recovery.[47]

The contributing shareholders were not sure whether they would recover anything.

Instead, they had the good fortune of being the beneficiaries of the settlement of the Tax Case

and received the principal amount of their contributions before any distributions to other

shareholders.

For all the reasons set out in the FDIC-Receiver's opening brief and the reasons stated

herein, it is not unfair to deny interest to the BFS Lit. Fund.

---

[45]  Charles J. Woelfel, *Encyclopedia of Banking & Finance* 1089 (Probus Pub. Co. Tenth ed. 1994)..

[46]  FDIC Opp. 18-20.

[47]  *See e.g.*, *Penn Central Transportation Co. v. New York*, 438 U.S. 104, 123, 98 S.Ct. 2646, 2659 (1978) (distinct investment-backed expectations a factor in determining whether a taking has occurred); *ABT Associates, Inc. v. JHPIEGO Corp.*, 9 Fed. Appx. 172, 178 (4th Cir. 2001) (recovery disallowed for work on a government bid application because plaintiff did not have reasonable expectation of recovery for bid preparation); *Phelps Dodge Min. Co., v. NLRB*, 22 F.3d 1493, 1496 (10th Cir. 1994) (employee did not have reasonable expectation to payments that were not so fixed in nature and duration to be included as wages or as a term of employment).

**X.     The BFS Lit. Fund Is Not Entitled To Attorney's Fees For This Action**

The BFS Lit. Fund asserts that the FDIC-Receiver is barred from addressing the BFS Lit. Fund's request for attorney's fees related to this action.[48]  But the authority cited by the BFS Lit. Fund hardly applies.  The issue of attorney's fees is not new and was not expensively briefed by the BFS Lit. Fund.  A brief reply on the issue by the FDIC-Receiver cannot reasonably be considered as sandbagging.

In any event, it is no secret that the "American Rule" generally provides that each party is responsible for its own attorney's fees.[49]  This is not a common fund case – the BFS Lit. Fund is asking for attorney's fees solely on behalf of the shareholders who seek interest on the principal amount of their contributions.  An award of attorney's fees would further reduce the funds available for distribution to all shareholders and provide an additional benefit to the contributing shareholders, whose stated purpose in funding litigation was to benefit all shareholders.

The Court should deny the BFS Lit. Fund's request for attorney's fees.

## CONCLUSION

The contributors to the BFS Lit. Fund are shareholders.  They were acting as shareholders when they contributed to the fund in an effort to recover or preserve the value of their shares. They received the principal amount of the funds they contributed for attorney's fees and expenses before *pro rata* distributions were made to all shareholders in connection with the settlement of the Tax Case.  Absent the settlement, the contributing shareholders would have received only a *pro rata* distribution, along with all other shareholders.  The BFS Lit. Fund is not entitled to

---

[48]  Pl. Opp. 24.
[49]  *Buckhannon Board. and Care Home v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 602, 121 S.Ct. 1835, 1839 (2001).

interest under 12 C.F.R. § 360.3 or other authority.  Nor is the BFS Lit. Fund entitled to attorney fees for bringing this action.

For the reasons given in its opening brief and this reply, the FDIC-Receiver requests the Court to deny the BFS Lit. Fund's motion for summary judgment, grant the FDIC-Receiver's cross motion for summary judgment and dismiss the BFS Lit. Fund's complaint, with prejudice.

Respectfully submitted,

Date:  February 9, 2007

 /s/ Bruce C. Taylor
Bruce C. Taylor
Federal Deposit Insurance Corporation
550 17th Street, NW
Room VS-E7118
Washington, DC 20429
(703) 562-2436 (Telephone)
(703) 562-2478 (Facsimile)

Counsel for Federal Deposit Insurance Corporation,
as Receiver for The Benj. Franklin FS&LA