**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
                                   )
BENJ. FRANKLIN SHAREHOLDERS        )
LITIGATION FUND,                   )
                                   )
            Plaintiff,             )
                                   ) Civil Action No. 06-1025 (EGS)
       v.                          )
                                   )
FEDERAL DEPOSIT INSURANCE          )
CORPORATION, AS RECEIVER FOR       )
THE BENJ. FRANKLIN FS&LA,          )
                                   )
            Defendant.             )
                                   )
```

**MEMORANDUM OPINION**

Plaintiff The Benjamin Franklin Shareholders Litigation Fund ("the Litigation Fund") brings this suit against the Federal Deposit Insurance Corporation ("FDIC") in its capacity as receiver for the Benjamin Franklin Savings & Loan Association ("Ben. Franklin"), in order to challenge the FDIC's decision not to pay interest on an approved receivership claim. Currently pending before the Court are the parties' cross-motions for summary judgment. Upon consideration of the motions, the responses and replies thereto, the applicable law, and the entire record, the Court determines that plaintiff is not entitled to interest on its receivership claim. Therefore, for the reasons stated herein, defendant's motion for summary judgment is **GRANTED** and plaintiff's motion for summary judgment is **DENIED.**

1

## BACKGROUND[1]

The Litigation Fund was created in 1990 shortly after Ben. Franklin was placed in receivership. The FDIC, created by Congress in 1933 as a body corporate and authorized by statute to act in several different capacities, currently serves as the receiver for Ben. Franklin. Since its creation, the Litigation Fund has served as the repository of cash contributions made by Ben. Franklin shareholders to fund litigation brought on behalf of Ben. Franklin and its shareholders. Approximately 4200 shareholders of Ben. Franklin contributed money to the Litigation Fund between 1990 and May 2006, which contributions totaled $3,067,159.77 as of May 24, 2006. Don S. Willner, an attorney who practices law in the states of Oregon and Washington, has been the sole trustee of the BFS Litigation Fund since its inception. Willner has also served as the attorney of record in shareholder derivative actions and motions filed on behalf of Ben. Franklin in federal courts.

On July 17, 2002, the Untied States filed suit in this Court against the FDIC, as the Ben. Franklin receiver, seeking more than $1 billion in damages for alleged taxes and penalties. Compl., *United States v. FDIC*, No. 02-1427-EGS (D.D.C. 2002). Between 2002 and 2005, representatives of the FDIC, the Tax

---

[1] Unless otherwise indicated, the facts are drawn from plaintiff's statement of undisputed material facts and were not disputed by defendant. *See* Local Civil Rule 56.1.

Division of the U.S. Department of Justice, the IRS, and several attorneys representing Ben. Franklin shareholders, including Willner, worked together in an effort to reach a settlement concerning the alleged tax liability of the Ben. Franklin receivership. During this negotiation process, the Tax Case was stayed by the Court. Order, No. 02-1427-EGS (D.D.C. Apr. 22, 2003).

On November 8, 2004, Willner wrote a letter to the FDIC setting out points of agreement that had been reached between the FDIC and Willner in his capacity as the attorney of record in the Ben. Franklin shareholder derivative litigation. The letter agreement stated that it memorialized certain understandings "relative to our mutual efforts to settle outstanding lawsuits," including the tax case. In his reply dated November 9, 2004, the FDIC's Senior Counsel Robert G. Clark concurred with Willner's November 8, 2004 letter.

The letter agreement set out the procedure that would be followed to make distributions from the receivership surplus. The distributions were to include an agreed upon tax payment to the IRS and the payment of "reasonable fees and expenses of shareholders' counsel and consultants" related to their work on the tax issues. As relevant to this case, the distributions would also include:

> A distribution to the Benj. Franklin Shareholders Litigation Fund [ ] to reimburse all contributions to

3

>that fund. (This is approximately $3 million of
>contributions by about 4,200 shareholders . . . .)
>This matter will be handled as a claim and will be
>determined through the receivership process.  The
>Litigation Fund will submit its claim in the near
>future.  Interest will be determined under the
>applicable provisions of the receivership priority
>system.

In accordance with the agreement, the Litigation Fund filed its receivership claim in 2005 for a reimbursement of all shareholder contributions made to the Fund and for interest on that amount. This agreement was further memorialized in the notice of proposed settlement that was distributed to the Ben. Franklin shareholders.  Notice to Shareholders, Pl.'s App. at 22-28.  The notice proposed a settlement with the IRS in the amount of $50 million and additional distributions from the receivership.

As of the spring of 2006, the Ben. Franklin receivership reported a surplus in the amount of approximately $94 million. On May 2, 2006, following a fairness hearing advertised to the Ben. Franklin shareholders, this Court approved the settlement of the alleged tax liability for a payment of $50 million to the IRS, leaving an approximately $44 million surplus in the receivership.  *See* Order, *United States v. FDIC*, No. 02-1427-EGS (D.D.C. May 2, 2006).  By letter dated May 24, 2006, the FDIC, in its capacity as the Ben. Franklin receiver, allowed the Litigation Fund's claim for the principal amount of all shareholder contributions made to the Fund in the amount of $3,067,159.77 and sent a check in that amount to the Litigation

4

Fund's Trustee. By letter dated May 11, 2006, the FDIC disallowed the Litigation Fund's claim for interest on the $3,067,159.77 of principal, stating "No interest is due on the Fund's claim because the most appropriate characterization of the Fund's claim is as an administrative claim and, as such, no interest is authorized under the applicable priority of claim, formerly 12 CFR § 569c-11, now found at 12 CFR § 360.3."

Plaintiff timely filed suit in this Court on June 2, 2006, claiming that the FDIC wrongly declined to pay interest on plaintiff's claim, and seeking an order directing the FDIC to pay the requested interest. After a brief amount of discovery, both parties filed motions for summary judgment.

## STANDARD OF REVIEW

Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by

affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp.*, 477 U.S. at 324.

In addition, this Court reviews *de novo* claims filed with, and processed by, the FDIC under its administrative claims process. 12 U.S.C. § 1821(d)(6); *Freeman v. FDIC*, 56 F.3d 1394, 1400 (D.C. Cir. 1995).

## ANALYSIS

When acting as a receiver, the FDIC has the power to "determine claims," and "to the extent funds are available, pay creditor claims which are allowed by the receiver." 18 U.S.C. § 1821(d)(3)(A), (10)(A). In addition, under the statute as it existed in 1990, when Ben. Franklin went into receivership, funds are distributed to shareholders after "all depositors, creditors, other claimants, and administrative expenses are paid." 18 U.S.C. § 1821(d)(11)(B) (1990) (as enacted in 1989 and before amendment in 1993).

Pursuant to the statutory scheme, as it existed in 1990, the FDIC established regulations that provide for the payment of unsecured claims against receivers according to defined and prioritized categories. 12 C.F.R. § 360.3; *Waterview Mgmt. Co. v. FDIC*, 257 F. Supp. 2d 31, 34 (D.D.C. 2003). Both parties agree that section 360.3 applies to the Ben. Franklin receivership. Pl.'s Mot. at 14 n.16; Def.'s Mot. at 1; *see also*

12 C.F.R. § 360.3(f) ("the provisions of this § 360.3 do not apply to any receivership established and liquidation or other resolution occurring after August 10, 1993"). Section 360.3 states, in relevant part:

> (a) Unsecured claims against an association or the receiver that are proved to the satisfaction of the receiver shall have priority in the following order:
>
> (1) Administrative expenses of the receiver, including the costs, expenses, and debts of the receiver; . . .
>
> (6) Claims for withdrawable accounts, including those of the Corporation as subrogee or transferee, and all other claims which have accrued and become unconditionally fixed on or before the date of default . . .;
>
> (7) Claims other than those that have accrued and become unconditionally fixed on or before the date of default, including claims for interest after the date of default on claims under paragraph (a)(6) of this section . . .; . . .
>
> (b) Interest after the date of default on claims under paragraph (a)(6) of this section shall be at a rate or rates adjusted monthly to reflect the average rate for U.S. Treasury bills with maturities of not more than ninety-one (91) days during the preceding three (3) months.

12 C.F.R. § 360.3; *see also Waterview*, 257 F. Supp. 2d at 34 ("There is no statutory requirement that claims be prioritized at all, or that they be assigned priorities in the specific way that the regulations have done."). The question in this case is whether, under this scheme, plaintiff is entitled to interest on its compensation payment for attorney fee contributions.

In support of its position, plaintiff relies on several cases where creditors and depositors received interest on their claims against a receivership. *See, e.g.*, *Golden Pacific Bancorp. v. FDIC*, 375 F.3d 196, 203-04 (2d Cir. 2004) (holding that the FDIC, like other creditors and depositors of the failed bank, was entitled to post-insolvency interest); *FDIC v. Citizens State Bank of Niangua*, 130 F.2d 102, 104-05 (8th Cir. 1942) (same); *FDIC v. Iowa Growthland Financial Corp.*, 523 N.W.2d 591, 594 (Iowa 1994) (same). Plaintiff thus argues that interest should be paid on its claim to similarly account for the time value of money. *See Waterview*, 257 F. Supp. 2d at 36 ("interest compensates for the time value of money, and thus is often necessary for full compensation"). Plaintiff also notes that nothing in the statute or section 360.3 precludes paying interest on its claim.

Defendant contends that plaintiff's allowed compensation claim is properly categorized as an administrative expense ("priority-level one") and therefore does not get reimbursed with interest under section 360.3. *See* 12 C.F.R. § 360.3(a)(1). Defendant points out that priority-level six claims by creditors and debtors, in contrast, are explicitly provided with interest. *See* § 360.3(a)(7), (b). Defendant thus appears to support the broad argument that all claims that fall under priority-level one are not entitled to interest.

In evaluating the FDIC's interpretation of the statute and regulation, the parties dispute how much deference, if any, the FDIC is entitled to.  Courts have held that FDIC's claim-prioritizing regulation, section 360.3, is entitled to some deference under the rule of *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  *See Waterview*, 257 F. Supp. 2d at 36.  On the other hand, an agency is afforded great deference for an interpretation of its own regulation.  *Mistick PBT v. Chao*, 440 F.3d 503, 511 (D.C. Cir. 2006).  Confusing matters though is the fact that this Court's review of the denied claim is supposed to be *de novo*.  *See Freeman v. FDIC*, 56 F.3d at 1400.

The Court need not untangle the question of deference, however, because regardless of whether or not the FDIC is afforded deference, the Court agrees with its determination in this case.  In addition, rather than contemplate the treatment of priority-level one claims generally, the Court's analysis is simplified by only considering plaintiff's particular claim.  Upon close examination of the record, the Court concludes that interest is inappropriate for plaintiff's allowed claim because the claim only became due when the Ben. Franklin-IRS tax settlement was finalized.  The FDIC's obligation to pay the Litigation Fund was intertwined with the Ben. Franklin-IRS tax settlement and interest is unnecessary because the FDIC made the payment almost immediately after the tax settlement was approved.

The documents concerning the settlement make clear its relationship with the payment to the Litigation Fund. The section of Willner's November 2004 letter that discussed the $3 million distribution to the Litigation Fund was describing a recommendation that Willner would make in the notice to shareholders regarding the tax settlement. Willner Letter, Pl.'s App. at 29-30. The notice specifically stated that the distribution to the Litigation Fund would be made *after* the settlement payment to the IRS. Notice to Shareholders, Pl.'s App. at 25. Thus, the FDIC's $3 million payment to the Litigation Fund was contingent upon completion of the settlement in the tax case.

The tax case was completed on May 2, 2006, when this Court approved the settlement. *See* Order, *United States v. FDIC*, No. 02-1427-EGS (D.D.C. May 2, 2006). Therefore, the Litigation Fund was not entitled to payment from the FDIC until May 2, 2006. As the FDIC made its payment immediately thereafter, interest is not appropriate. *See In the Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) ("The cost of delay in receiving money *to which one is entitled* is the loss of the time value of money, and interest is the standard form of compensation for that loss." (emphasis added)).

In cases where creditors or depositors have claims against an institution that date from before the institution goes into

receivership, interest on those claims is appropriate because the institution has delayed making payments that are past due. *See Golden Pacific Bancorp.*, 375 F.3d at 203-04. In this case, plaintiff seeks interest dating from the point at which shareholders made contributions to the Litigation Fund. Contributions were made as early as 1990. The shareholders, however, had no cognizable claim against the receivership until the tax settlement was completed. Viewed in this light, the FDIC appears correct in categorizing plaintiff's allowed claim as an administrative expense because it arose during the receivership, in order to assist with the receivership of assets, and was paid without delay.

Plaintiff attempts to rely on two recent cases, but they support the Court's reasoning. In *Waterview Management*, the court held that the plaintiff was entitled to prejudgment interest on a judgment against the FDIC. *Waterview*, 257 F. Supp. 2d at 36. Because a judgment provides compensation for an injury or obligation that accrued in the past, interest is appropriate as it is with pre-insolvency creditors and depositors. *See id.* (describing interest as compensating for the delay due to the necessity of litigation). As plaintiff's allowed claim did not accrue before May 2006, however, interest is not appropriate here.

In *H.C. Bailey, Jr. v. United States*, 53 Fed. Cl. 251 (Fed. Cl. 2002), the court recognized that the FDIC would pay attorney fees, including interest, on an administrative claim to the receivership. *Id.* at 254 (citing 12 C.F.R. § 360.3(a)(1)). Interest was not automatically provided though, but was being paid "pursuant to a contract of sale." *Id.* If plaintiff's agreement with the FDIC had included an explicit amount of interest on top of the $3 million payment, then the FDIC would have been obligated to pay interest on the allowed claim. The agreement, however, only stated that "[i]nterest will be determined under the applicable provisions of the receivership priority system." Because plaintiff's claim did not become due until May 2006, the FDIC was correct in denying interest under the receivership priority system. Therefore, the Court affirms the FDIC's denial of interest on plaintiff's allowed claim.

## CONCLUSION

The Court concludes that the FDIC correctly denied paying interest on plaintiff's allowed compensation claim. Therefore, defendant's motion for summary judgment is **GRANTED** and plaintiff's motion for summary judgment is **DENIED**. An appropriate Order accompanies this Memorandum Opinion.

**Signed:**   **Emmet G. Sullivan**
              **United States District Judge**
              **August 17, 2007**